Nos. 14-4549, 14-4550

# In the United States Court of Appeals for the Third Circuit

DANIEL BINDERUP,

Plaintiff-Appellee/
Cross-Appellant,

v.

ATTORNEY GENERAL OF THE UNITED STATES, ET AL.,

Defendants-Appellants/
Cross-Appellees.

Appeal from a Judgment of the
United States District Court for the Eastern District of Pennsylvania
The Hon. James Knoll Gardner, District Judge
(Dist. Ct. No. 13-CV-06750-JKG)

## BRIEF FOR THE APPELLEE/CROSS-APPELLANT

Douglas Gould
PIZONKA, RIELLEY, BELLO
  & MCGRORY, P.C.
144 E. DeKalb Pike, Suite 300
King of Prussia, PA 19406
610.992.1300/610.992.1505

Alan Gura
  Counsel of Record
GURA & POSSESSKY, PLLC
105 Oronoco Street, Suite 305
Alexandria, VA 22314
703.835.9085/703.997.7665

March 30, 2015

*Counsel for Appellee/
Cross-Appellant*

# TABLE OF CONTENTS

Table of Contents. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  i

Table of Authorities. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  iii

Introduction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

Jurisdictional Statement. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

Statement of Issues. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

Statement of Related Cases. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5

Statement of the Case. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6

    1.     Daniel Binderup's Personal History. . . . . . . . . . . . . . . . . . . .  6

    2.     The Regulatory Scheme. . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

    3.     Defendants' Thwarting of Plaintiff's Presently
             Intended Transactions. . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11

    4.     Procedural History. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13

Summary of Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13

Standard of Review. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  16

Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  16

    I.     Section 922(g)(1) Does Not Bar Binderup from
           Possessing Firearms. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  16

          A.     Ambiguous Criminal Statutes Are Afforded the
                 Most Lenient Construction. . . . . . . . . . . . . . . . . . . . . .  17

B.    Section 922(g)(1) Does Not Apply to Misdemeanors Capable of Being Punished By Less Than Two Years' Imprisonment. . . . . . . . . . . . 19

C.    Courts Must Avoid Constitutional Questions Where Alternative Statutory Interpretations Raising No Constitutional Concerns Are "Fairly Possible". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

D.    Precedent Predating the Second Amendment Right's Recognition Cannot Support Constitutionally Now-Dubious Interpretations of the Felon-In-Possession Ban. . . . . . . . . . . . . . . . . . 37

II.    The Second Amendment Bars Section 922(g)(1)'s Application Against Daniel Binderup on Account of His Misdemeanor. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

A.    Individuals May Challenge the Constitutionality of Categorical Disarmament Laws, Including Section 922(g)(1), As-Applied to Their Personal Circumstances. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

B.    Section 922(g)(1) Cannot Apply to Individuals Who Distinguish Their Circumstances From Those of Persons Historically Barred from Second Amendment protections. . . . . . . . . . . . . . . . . . . . . . . 46

C.    "Traditional Justifications" Do Not Support "A Finding of Permanent Disability in This Case". . . 53

D.    Binderup Has Presented Sufficient "Facts About Himself" Demonstrating Rehabilitation. . . . . . . . . . 59

Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 66

# TABLE OF AUTHORITIES

## Cases

*Abramski* v. *United States,*
    134 S. Ct. 2259 (2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Adirondack Med. Ctr.* v. *Sebelius,*
    740 F.3d 692 (D.C. Cir. 2014). . . . . . . . . . . . . . . . . . . . . . . . . 26

*Atl. Cleaners & Dyers, Inc.* v. *United States,*
    286 U.S. 427 (1932). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Bond* v. *United States,*
    134 S. Ct. 2077 (2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

*Britt v. State,*
    363 N.C. 546, 681 S.E.2d 320 (N.C. 2009) . . . . . . . . . . . . . 50, 54

*Burrage* v. *United States,*
    134 S. Ct. 881 (2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Coca-Cola Bottling Co.* v. *Coca-Cola Co.,*
    988 F.2d 386 (3d Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

*Comm'r* v. *Lundy,*
    516 U.S. 235 (1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Crandon* v. *United States,*
    494 U.S. 152 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Davis* v. *United States,*
    131 S. Ct. 2419 (2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*District of Columbia* v. *Heller*,
554 U.S. 570 (2008). . . . . . . . . . . . . . . . . . . . . . . 39, 43, 45, 47, 54-56

*Drake* v. *Filko*,
724 F.3d 426 (3d Cir. 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 56

*Dutton* v. *Pennsylvania*,
503 Fed. Appx. 125 (3d Cir. 2012) (per curiam). . . . . . . . . . . . . . 31

*Dutton* v. *Pennsylvania*, No. 11-7285,
2012 U.S. Dist. LEXIS 102653 (E.D. Pa. July 23, 2012). . . . . . . . 31

*Envtl. Def.* v. *Duke Energy Corp.*,
549 U.S. 561 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32, 33

*Estate of Cowart* v. *Nicklos Drilling Co.*,
505 U.S. 469 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Gowder* v. *City of Chicago*,
923 F. Supp. 2d 1110 (N.D. Ill. 2012). . . . . . . . . . . . . . . . . . . . . . 55

*Harris* v. *United States*,
536 U.S. 545 (2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

*In re Mills*,
135 U.S. 263 (1890). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 22

*Iselin* v. *United States*,
270 U.S. 245 (1926) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Jones* v. *United States*,
529 U.S. 848 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Lamie* v. *United States Tr.*,
540 U.S. 526 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Lewis* v. *City of Chicago*,
    560 U.S. 205 (2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Logan* v. *United States*,
    552 U.S. 23 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Nat'l Fed'n of Indep. Bus.* v. *Sebelius*,
    132 S. Ct. 2566 (2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

*Omega Overseas, Ltd.* v. *Griffith*, No. 13-CV-4202,
    2014 U.S. Dist. LEXIS 109781 (S.D.N.Y. Aug. 7, 2014) . . . . . . 33

*PDK Labs. Inc.* v. *United States DEA*,
    362 F.3d 786 (D.C. Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

*Prestol Espinal* v. *AG of the United States*,
    653 F.3d 213 (3d Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Public Citizen, Inc.* v. *Rubber Mfrs. Ass'n*,
    533 F.3d 810 (D.C. Cir.2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Russello* v. *United States*,
    464 U.S. 16 (1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Schrader* v. *Holder*,
    704 F.3d 980 (D.C. Cir. 2012). . . . . . . . . . . . . . . . . . 24, 25, 43, 46

*Shuman ex rel. Shertzer* v. *Penn Manor Sch. Dist.*,
    422 F.3d 141 (3d Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Sorenson* v. *Sec'y of Treasury*,
    475 U.S. 851 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*Suarez* v. *Holder*, No. 14-CV-968-WWC,
    2015 U.S. Dist. LEXIS 19378 (M.D. Pa. Feb. 18, 2015) . . . . 35, 52,
                                         61, 66

*Sykes* v. *United States*,
131 S. Ct. 2267 (2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Tyler* v. *Hillsdale Cnt'y Sheriff's Dep't*,
775 F.3d 308 (6th Cir. 2014). . . . . . . . . . . . . . . . . . . . . . . 43, 45

*United States* v. *Apel*,
134 S. Ct. 1144 (2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*United States* v. *Barton*,
633 F.3d 168 (3d Cir. 2011) . . . . . . . . . . . . . 5, 40-42, 48-55, 61, 63

*United States* v. *Bass*,
404 U.S. 336 (1971). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*United States* v. *Burke*,
781 F.2d 1234 (7th Cir. 1985). . . . . . . . . . . . . . . . . . . . . . . . . 38

*United States* v. *Chester*,
628 F.3d 673 (4th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . 55

*United States* v. *Chovan*,
735 F.3d 1127 (9th Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . 45, 55

*United States* v. *Cleveland Indians Baseball Co.*,
532 U.S. 200 (2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*United States* v. *Coleman*,
158 F.3d 199 (4th Cir. 1998) (en banc). . . . . . . . . . . . . . . . . . . . 25

*United States* v. *Corle*,
222 Fed. Appx. 121 (3d Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . 22

*United States* v. *Denson*,
588 F.2d 1112 (5th Cir. 1979). . . . . . . . . . . . . . . . . . . . . . . . . 23

*United States* v. *Denson*,
603 F.2d 1143 (5th Cir. 1979) (en banc) . . . . . . . . . . . . . . . . . . . . . 23

*United States* v. *Edge Broad. Co.*,
509 U.S. 418 (1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 61, 62

*United States* v. *Essig*,
10 F.3d 968 (3d Cir. 1993). . . . . . . . . . . . . . . . . . . 19, 30, 32, 37-39

*United States* v. *Leuschen*,
395 F.3d 155 (3d Cir. 2005) . . . . . . . . . . . . . . . . . . . . 22, 29, 30, 32

*United States* v. *Locke*,
471 U.S. 84 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*United States* v. *Marzzarella*,
614 F.3d 85 (3d Cir. 2010). . . . . . . . . . . . . . . . . . . . 46, 47, 49, 52

*United States* v. *Moore*,
666 F.3d 313 (4th Cir. 2012). . . . . . . . . . . . . . . . . . . . . . . . . 43, 44

*United States* v. *Nachtigal*,
507 U.S. 1 (1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

*United States* v. *Nieves-Rivera*,
961 F.2d 15 (1st Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 27

*United States* v. *Pruess*,
703 F.2d 242 (4th Cir. 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

*United States* v. *Rehlander*,
666 F.3d 45 (1st Cir. 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . 36, 39

*United States* v. *Rodriguez*,
527 F.3d 221 (1st Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

*United States* v. *Rybar*,
    103 F.3d 273 (3d Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

*United States* v. *Santos*,
    553 U.S. 507 (2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*United States* v. *Schoolcraft*,
    879 F.2d 64 (3d Cir. 1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*United States* v. *Torres-Rosario*,
    658 F.3d 110 (1st Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

*United States* v. *Tot*,
    131 F.2d 261 (3d Cir. 1942). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

*United States* v. *Williams*,
    616 F.3d 685 (7th Cir. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . 43, 51

*Util. Air Regulatory Grp.* v. *EPA*,
    134 S. Ct. 2427 (2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Whitman* v. *United States*,
    135 S. Ct. 132 (2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Statutes and Rules

18 Pa. C.S.A. § 1104(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 7

18 Pa. C.S.A. § 3121(c). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 58

18 Pa. C.S.A. § 3122.1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

18 Pa. C.S.A. § 6105(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

18 Pa. C.S.A. § 6105(d). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

18 Pa. C.S.A. § 6301. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 7

18 Pa. C.S.A. § 6301(a)(1)(i). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

18 Pa. C.S.A. § 6301(a)(1)(ii) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

18 U.S.C. § 2202. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

18 U.S.C. § 921(a)(20). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 19, 30

18 U.S.C. § 921(a)(20)(B). . . . . . . . . 4, 15, 19, 20, 22, 25, 28-30, 32-35, 40

18 U.S.C. § 922(d)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

18 U.S.C. § 922(g)(1). . . 3, 4, 6, 8, 9, 11-16, 19, 22, 24, 25, 30-34, 37, 39-41, 43-49, 51, 54

18 U.S.C. § 922(g)(9) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

18 U.S.C. § 924(a)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

18 U.S.C. § 925(c). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

27 C.F.R. § 478.124. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

28 U.S.C. § 1292(a)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

28 U.S.C. § 1331. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

28 U.S.C. § 1343. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

28 U.S.C. § 1346. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

28 U.S.C. § 2201. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Other Authorities

BALLENTINE'S LAW DICTIONARY (3d. ed. 1969). . . . . . . . . . . . . . . . . . . . 20

BATF FFL Newsletter, May, 2001, Issue I, at 14, available at
    http://www.atf.gov/files/ publications/newsletters/ffl/
    ffl-newsletter-2001-05.pdf (last visited March 30, 2015). . . . . . . 11

BATF FFL Newsletter, September 1999, Issue II, at 2, available at
    http://www.atf.gov/files/publications/ newsletters/ffl/
    ffl-newsletter-1999-09.pdf (last visited March 30, 2015). . . . . . . 11

BLACK'S LAW DICTIONARY (10th ed. 2014). . . . . . . . . . . . . . . . . . . . . . . 20

Brief for the United States,
    *United States* v. *Barton*, 3d Cir. No. 09-2211 (July 2, 2010). . . . . 41

Firearms Transaction Record Part I–Over the Counter, available at
    http://www.atf.gov/files/forms/download/atf-f-4473-1.pdf
    (last visited March 24, 2015). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Henry Campbell Black, A DICTIONARY OF LAW (1st ed. 1891). . . . . . . . 20

Kevin Marshall, *Why Can't Martha Stewart Have a Gun?*,
    32 HARV. J. L. & PUB. POL'Y 695 (2009). . . . . . . . . . . . . . . . . . . . . 53

Louise A. Jackson, CHILD SEXUAL ABUSE
    IN VICTORIAN ENGLAND (2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 57

Norman J. Singer, SUTHERLAND ON STATUTORY
    CONSTRUCTION (7th ed. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . 18, 36

WEBSTER'S NEW INTERNATIONAL DICTIONARY (3d ed. 1961). . . . . . . . . 20

William Blackstone, COMMENTARIES ON THE LAW
    OF ENGLAND (1769). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 57

## INTRODUCTION

"Rape" appears in the Government's opening brief twenty times.

But even were the Government to spell out "rape" two hundred times, or two thousand times, it would not change the fact that Daniel Binderup is not a rapist. Not a common-law rapist, not a "statutory" rapist, not any kind of rapist, either in the only legal system relevant here (Pennsylvania's) or in the various senses that society generally understands that term. Nor is Binderup, as the Government alludes, an "abuser" or "sex offender."

Binderup is, as the record confirms, a non-violent, non-threatening family man and productive member of his community who, regrettably, had an affair nearly twenty years ago with a seventeen-year-old employee. The relationship was consensual, both in fact and under Pennsylvania law. It was, however, illicit, and like most if not all crimes, morally reprehensible. Binderup deserved the punishment meted out for his single misdemeanor conviction: a short sentence of probation (successfully completed long ago), and a fine.

What Daniel Binderup does not deserve is a lifetime deprivation of his fundamental Second Amendment rights. Generalized statistics about what unrelated classes of offenders might do is irrelevant to his as-applied challenge, a topic on which the Government presented no evidence. Indeed, consistent with its position that Binderup's personal circumstances are somehow irrelevant to his as-applied challenge, the Government's Statement of the Case fails to mention the uncontested facts upon which the District Court decided this case.

But the facts matter. Cutting through the rhetoric, the District Court unremarkably applied controlling precedent to the uncontested facts, and reached the only available conclusion: moral disapproval of Binderup's ancient non-violent conduct does not constitutionally sustain a lifetime firearms disability. Tellingly, for all of its relentless emphasis on sex, *not one word* of the Government's brief discusses the critical issue in this as-applied Second Amendment challenge: whether Daniel Binderup's possession of firearms would be in any way dangerous.

But the Government's failure to discuss the facts upon which the decision below relied are not its brief's only unusual features. Five

years ago, the Government conceded to this Court that individuals may bring as-applied constitutional challenges to 18 U.S.C. § 922(g)(1).[1] This Court relied on that concession (among other factors) in reaching that precise holding, and setting out a framework for such as-applied challenges. The Government advised the District Court that this precedent would likely be controlling here. Yet now, the Government has reversed course, and claims that the District Court erred in finding that as-applied challenges are at all available.

The District Court did not err in following this Court's precedent, for which the Government once argued, and which the Government advised the District Court would likely prove controlling on appeal. If the District Court erred at all, it erred only in finding that Section 922(g)(1) reaches Binderup's misdemeanor conviction in the first place.

## JURISDICTIONAL STATEMENT

Plaintiff-Appellee/Cross-Appellant Daniel Binderup invoked the District Court's jurisdiction under 28 U.S.C. §§ 1331, 1343, 1346, 2201, 2202. 2 App. 99. On September 25, 2014, the District Court issued an

---

[1]All further statutory references are to Title 18 of the United States Code unless otherwise noted.

3

order granting in part and denying in part Binderup's motion for summary judgment, affording Binderup declaratory and injunctive relief. 1 App. 90-92. The Government timely noticed an appeal on November 21, 2014, 1 App. 1, and Binderup timely cross-appealed the same day, 1 App. 2. This Court has appellate jurisdiction over these cross-appeals under 28 U.S.C. § 1292(a)(1).

STATEMENT OF ISSUES

1.      Pennsylvania law provides that "corruption of minors" is a first-degree misdemeanor offense. 18 Pa. C.S. § 6301. A violation of this provision is punishable by up to five years in prison, but carries no mandatory minimum sentence. 18 Pa. C.S. § 1104(1).

      Is a violation of 18 Pa. C.S. § 6301 "a crime punishable by imprisonment for a term exceeding one year" within the meaning of 18 U.S.C. § 922(g)(1), a provision which excludes "any State offense classified by the laws of the State as a misdemeanor and punishable by a term of imprisonment of two years or less?" 18 U.S.C. § 921(a)(20)(B). [Ruled upon at 1 App. 18-36.]

2.      In 1998, Daniel Binderup was convicted of one misdemeanor count of "corruption of minors," owing to a consensual affair he

4

conducted with a seventeen-year old employee. The offense did

not involve force, the threat of force, or firearms. Binderup has no

other criminal record, nor does he have any record of violence. He

is a productive and peaceful member of his community, and has

rededicated himself to his family, having successfully raised two

children with his wife of over forty years.

Do traditional justifications for disarmament apply to

Binderup, or did the District Court correctly determine that

Binderup's circumstances are distinguished "from those of persons

historically barred from Second Amendment protections," per

*United States* v. *Barton*, 633 F.3d 168, 174 (3d Cir. 2011)? [Ruled

upon at 1 App. 37-89.]

## STATEMENT OF RELATED CASES

This case is related to *Suarez* v. *Holder*, M.D. Pa. No. 14-CV-968-

WWC, litigated below, on both sides, by the same counsel as litigated

this case. Plaintiff Julio Suarez, like Binderup, was convicted of a

single misdemeanor offense which the Government claims triggers

Section 922(g)(1)'s prohibition. Suarez, like, Binderup, argued that

Section 922(g)(1) does not apply to his misdemeanor conviction, and in the alternative, that application of Section 922(g)(1) violates his Second Amendment rights.

On February 18, 2015, the District Court granted Suarez's motion for summary judgment along the same lines as the decision below here, finding that Section 922(g)(1) applies to Suarez's misdemeanor conviction, but holding that such application violates Suarez's Second Amendment rights.

STATEMENT OF THE CASE

The basic facts were not contested below.

1.        *Daniel Binderup's Personal History*

Daniel Binderup, residing in Manheim, Lancaster County, Pennsylvania, presently intends to purchase and possess a handgun and long gun for self-defense within his own home. 2 App. 122, ¶¶ 1, 2. Binderup is over the age of 21, is not under indictment, has never been convicted of a felony or misdemeanor crime of domestic violence, is not a fugitive from justice, is not an unlawful user of or addicted to any controlled substance, has not been adjudicated a mental defective or committed to a mental institution, has not been discharged from the

Armed Forces under dishonorable conditions, has never renounced his citizenship, and has never been the subject of a restraining order relating to an intimate partner. *Id.* ¶ 3.

On July 15, 1998, Binderup was convicted by the Court of Common Pleas of Lancaster County, Pennsylvania, of one count of 18 Pa. C.S.A. § 6301, Corruption of Minors, a first degree misdemeanor. *Id.* ¶ 4; 2 App. 126. In Pennsylvania, a first degree misdemeanor is punishable by up to five years' imprisonment. 18 Pa. C.S.A. § 1104(1).[2]

The charge stemmed from a fully consensual romantic affair that Binderup had conducted with a 17-year-old female. 2 App. 123 ¶ 5. No allegations existed that the relationship was anything other than fully consensual, *id.*, and under Pennsylvania law, the female in question was old enough to consent to a romantic relationship with Binderup, *see* 18 Pa. C.S.A. § 3122.1. However, as the female was not quite 18 years old, the state prosecuted Binderup for allegedly corrupting her morals.

---

[2]Binderup was charged and convicted under the general "M1"—misdemeanor—provision of 18 Pa. C.S.A. § 6301(a)(1)(i), *not* subdivision (ii) relating to felony non-consensual sex offenses. See, *e.g.*, 2 App. 116 (sentencing order), 2 App. 117 (plea agreement), 2 App. 118 (guilty plea), 2 App. 121 (information).

Binderup pled guilty and was sentenced to three years probation, which he successfully completed; and assessed $1,425.70 in costs and $450 in restitution, which he paid. 2 App. 123 ¶ 6; 2 App. 126, 133.

Binderup acknowledges that his behavior was wrong. 2 App. 123 ¶ 7. Fortunately, his wife forgave him, and they remained happily married through their 40th year together, having successfully raised two children. *Id.*[3] In 2001, Binderup sold his business, a bakery of 12 years that had employed 8 people. He has since successfully operated his own plumbing business. *Id*. Binderup has not been convicted of any further offenses. *Id*. Binderup's conviction disabled him from possessing firearms pursuant to 18 Pa. C.S.A. § 6105(a) and, as interpreted by Defendants' predecessors, Section 922(g)(1). Accordingly, upon his conviction, Binderup immediately sold his firearms to a licensed dealer, and his handgun carry license was revoked. 2 App. 123 ¶ 6.

On June 1, 2009, the Court of Common Pleas of Lancaster County, Pennsylvania, granted Binderup's petition for removal of disqualification from owning or possessing firearms, pursuant to 18 Pa.

_____

[3]This fact was declared on March 7, 2014. The Binderups can represent that they remain happily married.

C.S.A. § 6105(d). *Id*. ¶ 8; 2 App. 134. Referencing the "agreement reached between the Commonwealth and Petitioner [Binderup]," the court ordered and directed that Binderup's firearms disability owing to his Corruption of Minors conviction be "lifted" and that Binderup's "firearms right to possess, use, control, sell, transfer or manufacture under the laws of the Commonwealth of Pennsylvania is hereby granted," although "[t]his relief does not exempt Petitioner from any federal statutes or restrictions." 2 App. 134.

   2.       *The Regulatory Scheme*

Section 922(g)(1) prohibits the possession of firearms by any person convicted of "a crime punishable by imprisonment for a term exceeding one year." A violation of this provision, per Section 924(a)(2), is a felony criminal offense punishable by fine and imprisonment of up to ten years. The term "crime punishable by imprisonment for a term exceeding one year" "does not include . . . (B) any State offense classified by the laws of the State as a misdemeanor and punishable by a term of imprisonment of two years or less." 18 U.S.C. § 921(a)(20).

Section 922(d)(1) prohibits anyone from transferring firearms or ammunition to anyone whom the transferor has reason to know was convicted of "a crime punishable by imprisonment for a term exceeding one year." Violation of this provision, per Section 924(a)(2), is a felony criminal offense punishable by fine and imprisonment of up to ten years.

All firearms purchasers within the United States who do not possess a Federal Firearms License, meaning, virtually all ordinary civilian consumers of firearms, must complete "Form 4473, Firearms Transaction Record Part I – Over-The-Counter," administered under Defendants' authority, in order to purchase a firearm. 27 C.F.R. § 478.124. Question 11(c) on Form 4473 asks:

> Have you ever been convicted in any court of a felony, or any other crime, for which the judge could have imprisoned you for more than one year, even if you received a shorter sentence including probation?

Firearms Transaction Record Part I–Over the Counter, available at http://www.atf.gov/files/forms/download/atf-f-4473-1.pdf (last visited March 24, 2015).

Defendants instruct firearm dealers not to sell firearms to anyone who answers "yes" to this question. Indeed, Defendants instruct firearm dealers to refrain from even running a background check on anyone who answers yes to this question, and simply to deny the transaction on the basis of that answer. BATF FFL Newsletter, May, 2001, Issue I, at 14, available at http://www.atf.gov/files/publications/ newsletters/ffl/ffl-newsletter-2001-05.pdf (last visited March 30, 2015); BATF FFL Newsletter, September 1999, Issue II, at 2, available at http://www.atf.gov/files/publications/newsletters/ffl/ffl-newsletter-1999-09.pdf (last visited March 30, 2015).

3.   *Defendants' Thwarting of Plaintiff's Presently Intended Transactions*

Binderup desires and intends to possess firearms for self-defense and for defense of his family. 2 App. 122 ¶ 2. Binderup refrains from obtaining a firearm only because he reasonably fears arrest, prosecution, incarceration and fine, under Section 922(g)(1), instigated and directed by Defendants, should he follow through with his plan to obtain a firearm. 2 App. 123 ¶ 9.

Considering Defendants' interpretation of federal law, Binderup is unwilling to state on Form 4473 that he has not, in fact, been convicted of a crime punishable by imprisonment for over one year. 2 App. 123 ¶ 10. But should Binderup answer, on Form 4473, that he has been convicted of a crime punishable by imprisonment for over one year, any federal firearms licensee who follows Defendants' directives would refuse to sell Binderup a firearm on account of the fact that Binderup is prohibited from possessing firearms under Section 922(g)(1). Thus, Binderup suffers the on-going harm of being unable to obtain firearms from licensed federal firearms dealers, which Binderup would, in fact, obtain but for Section 922(g)(1)'s enforcement.

On October 5, 2013, Binderup approached a federal firearms licensee, expressed his desire to purchase a firearm, and inquired as to whether it was possible for him to purchase a firearm considering the fact that he had been convicted of a crime that the federal government would assert is punishable by over a year's imprisonment. The dealer confirmed that Binderup could not purchase a firearm. 2 App. 124 ¶ 11.

4. *Procedural History*

On November 21, 2013, Binderup brought this action seeking declaratory and injunctive relief from the Government's application of Section 922(g)(1) against him on account of his misdemeanor conviction. 2 App. 98-108. Binderup asserted that Section 922(g)(1) does not apply to his conviction, and that if it does, such application would be unconstitutional based on his personal circumstances. *Id.*

On September 25, 2014, the District Court decided the case on cross-motions for summary judgment. The Court rejected Binderup's statutory claim, 1 App. 18-36, but afforded him relief on his as-applied constitutional claim, 1 App. 37-89. Timely cross-appeals from this final judgment followed.

SUMMARY OF ARGUMENT

Like other federal appellate courts, this Court has held that the Second Amendment bars Section 922(g)(1)'s application where doing so would be inconsistent with the historical practice of disarming dangerous individuals. Daniel Binderup committed a non-violent misdemeanor offense in the mid-1990s, for which he has been fully

rehabilitated. A state court has determined that Binderup is safe and trustworthy with firearms. However proper the "felon-in-possession" ban might generally be, persisting in barring Binderup's access to firearms on the basis of his long-ago non-violent misdemeanor conviction violates his Second Amendment rights.

And yet, the District Court should have hesitated to reach the constitutional issue, as grave doubt exists whether Section 922(g)(1)'s terms are in the first instance applicable to misdemeanors of this type.

Binderup acknowledges that his statutory argument, the subject of the cross-appeal, contradicts the manner in which courts have uncritically assumed Section 922(g)(1) applies. Indeed, this Court has applied Section 922(g)(1)'s prohibition to a conviction under the same misdemeanor statute that Binderup violated. But "the starting point for interpreting a statute is the language of the statute itself." *Prestol Espinal* v. *AG of the United States*, 653 F.3d 213 (3d Cir. 2011) (citation omitted). The statutory language here, which courts have cited but not much examined, simply does not support that practice.

A consistent, careful reading of the plain statutory text reveals that state misdemeanors lacking a mandatory minimum sentence exceeding two years do not qualify for "felony" treatment. And even if circuit precedent is read to bar that interpretation, such precedent's current validity is questionable, as it preceded the Second Amendment right's recognition, a development that fundamentally alters the manner in which courts construe statutes implicating the right to arms.

The Government believes that Section 922(g)(1)'s prohibition, read in light of Section 921(a)(20)(B)'s exemption, extends to state misdemeanors punishable by sentences *exceeding* two years. This interpretation misreads the plain language of the statutory text. The *exemption* of Section 921(a)(20)(B) does not *include* crimes capable of being punished by more than 2 years; rather, on its face, it *excludes*, from Section 921(g)(1)'s reach of all crimes punishable by over one year in jail, those misdemeanors that are punishable by terms of "less than two years"—at least, if the term "punishable" is given a consistent meaning in both sections. The rule of lenity, and the constitutional avoidance doctrine, compel close scrutiny of the relevant statutory text

before proceeding to the serious constitutional problems presented by barring Binderup's exercise of his fundamental rights.

In either event, however, the outcome is the same. Binderup is entitled to relief barring Section 922(g)(1)'s application against him on account of his 1998 misdemeanor. On either statutory or constitutional grounds, the District Court's decision should be affirmed.

## STANDARD OF REVIEW

This Court "'exercise[s] plenary review over the District Court's grant of summary judgment' and 'appl[ies] the same standard that the District Court should have applied.'" *Shuman ex rel. Shertzer* v. *Penn Manor Sch. Dist.*, 422 F.3d 141, 146 (3d Cir. 2005) (quotation omitted).

## ARGUMENT

I.    SECTION 922(G)(1) DOES NOT BAR BINDERUP FROM POSSESSING FIREARMS.

"A court owes no deference to the prosecution's interpretation of a criminal law." *Whitman* v. *United States*, 135 S. Ct. 352, 352 (2014) (Scalia, J., concerning denial of certiorari). "The Justice Department, of course, has a very specific responsibility to determine for itself what [a] statute means, in order to decide when to prosecute; but we have never

thought that the interpretation of those charged with prosecuting criminal statutes is entitled to deference." *Crandon* v. *United States*, 494 U.S. 152, 177 (1990) (Scalia, J., concurring in the judgment); see *United States* v. *Apel*, 134 S. Ct. 1144, 1151 (2014) ("we have never held that the Government's reading of a criminal statute is entitled to any deference") (citing *Crandon*); cf. *Util. Air Regulatory Grp.* v. *EPA*, 134 S. Ct. 2427, 2446 (2014) ("an agency may not rewrite clear statutory terms to suit its own sense of how the statute should operate").

"The critical point is that criminal laws are for courts, not for the Government, to construe." *Abramski* v. *United States*, 134 S. Ct. 2259, 2274 (2014). "Whether the Government interprets a criminal statute too broadly (as it sometimes does) or too narrowly . . . a court has an obligation to correct its error. . . . Congress [is] the entity whose voice *does* matter . . . ." *Id.*

A.      Ambiguous Criminal Statutes Are Afforded the
         Most Lenient Construction.

"[B]ecause of the seriousness of criminal penalties, and because criminal punishment usually represents the moral condemnation of the community, legislatures and not courts should define criminal activity."

*United States* v. *Bass*, 404 U.S. 336, 348 (1971).

> It is an ancient rule of statutory construction that penal statutes should be strictly construed against the government . . . and in favor of the persons on whom penalties are sought to be imposed . . . any reasonable doubt about the meaning is decided in favor of anyone subjected to a criminal statute.

Norman J. Singer, 3 SUTHERLAND ON STATUTORY CONSTRUCTION § 59:3, at 167-75 (7th ed. 2008) ("SUTHERLAND") (collecting cases); see also *id.* at 187-88 (discussing Supreme Court's adoption of the rule of lenity). Courts construe ambiguous criminal statutes narrowly to avoid "making criminal law in Congress's stead." *United States* v. *Santos*, 553 U.S. 507, 514 (2008).

> In various ways over the years, we have stated that when choice has to be made between two readings of what conduct Congress has made a crime, it is appropriate, before we choose the harsher alternative, to require that Congress should have spoken in language that is clear and definite.

*Bass*, 404 U.S. at 347-48 (quotation omitted). "[A]mbiguity concerning the ambit of criminal statutes should be resolved in favor of lenity." *Jones* v. *United States*, 529 U.S. 848, 858 (2000) (quotation omitted).

B.    Section 922(g)(1) Does Not Apply to Misdemeanors Capable of Being Punished By Less Than Two Years' Imprisonment.

Courts generally refer to Section 922(g)(1) as the "felon in possession" statute, though the statute itself does not use that terminology. See*, e.g.*, *Davis* v. *United States*, 131 S. Ct. 2419, 2425-26 (2011) ("possession of a firearm by a convicted felon"); *Sykes* v. *United States*, 131 S. Ct. 2267, 2270 (2011). Section 921(g) apparently bars firearms possession by anyone convicted of "a crime punishable by imprisonment for a term exceeding one year," implicating all crimes regardless of their classification as felonies or misdemeanors. But "the words of § 922(g)(1) do not always mean what they say." *United States* v. *Essig*, 10 F.3d 968, 971 (3d Cir. 1993). "[C]rime punishable by imprisonment for a term exceeding one year" "does not include . . . (B) any State offense classified by the laws of the State as a misdemeanor and punishable by a term of imprisonment of two years or less." Section 921(a)(20).

Binderup's crime was a misdemeanor for which a person might have received a five year sentence of imprisonment. But Binderup could—and did—receive a sentence "of two years or less." 18 U.S.C. §

921(a)(20)(B). Whether Binderup's conviction qualifies for the two-year exclusion turns on the interpretation of "punishable"—a term lending itself to multiple understandings.

In general terms, "punishable" is defined as "deserving of, or liable to, punishment : capable of being punished by law or right." WEBSTER'S NEW INTERNATIONAL DICTIONARY 1843 (3d ed. 1961). But its meaning is also subject to significant variations. As Black's Law Dictionary recognized, "punishable" means "[l]iable to punishment, whether absolutely or in the exercise of a judicial discretion." Henry Campbell Black, A DICTIONARY OF LAW 966 (1st ed. 1891). Today Black's offers that "punishable" can mean "subject to a punishment" or "giving rise to a specified punishment." BLACK'S LAW DICTIONARY (10th ed. 2014). (emphasis added). Ballentine's adds:

> Where statute makes an offense "punishable" in a certain manner, the use of the word is held to make it a matter of discretion as to whether or not the court will impose the designated punishment.

BALLENTINE'S LAW DICTIONARY (3d. ed. 1969).

If "punishable by a term of imprisonment of two years or less" refers to specific terms that define the sentencing range, Binderup's offense does not qualify for Section 921(a)(20)(B)'s exclusion, because his

offense carried a maximum five year sentence. But if "punishable" means "capable of being punished," then Binderup's offense comes within the meaning of the exclusion, because it was "capable of being punished by" a sentence "of two years or less," as demonstrated by Binderup's actual sentence. "Two years or less" is included within "five years or less," "ten years or less," and "lifetime or less." Under this view, state misdemeanors come within the "felon in possession" ban only if they carry a mandatory minimum sentence exceeding two years, such that they are not "punishable by" a sentence of two years or less.

Federal courts, including the Supreme Court and this Court, have long adopted the latter potentiality-referencing definition when using "punishable by" in connection with sentencing provisions.

On point stands *In re Mills*, 135 U.S. 263 (1890), which examined the scope of offenses "punishable . . . by imprisonment at hard labor."

> An offence which the statute imperatively requires to be punished by imprisonment "at hard labor," and one that must be punished by "imprisonment," but the sentence to which imprisonment the court *may, in certain cases, and in its discretion*, require to be executed in a penitentiary where hard labor is prescribed for convicts, are, each, "punishable" by imprisonment at hard labor. The former offence certainly must be thus punished; *and as the latter may, in the discretion of the court, be so punished, it may, also, and not*

*unreasonably, be held to be "punishable" by* imprisonment at hard labor.

*Id.* at 266 (emphasis added).

[T]he words "punishable . . . by imprisonment at hard labor" . . . embrace offences which, although not imperatively required by statute to be so punished, may, in the discretion of the court, be punished by imprisonment in a penitentiary.

*Id.* at 268.

Similarly, Binderup's misdemeanor "may, in the discretion of the court, [have] be[en] punished by imprisonment," *id.*, for "a term . . . of two years or less," Section 921(a)(20)(B). Binderup was "subject to a punishment" of two years or less. His misdemeanor is thus excluded from Section 922(g)(1)'s scope.

Critically, this Court has adopted the potentiality approach in defining the phrase "crime punishable by imprisonment for a term exceeding one year," as defined in the same-said statute. "[T]he only qualification imposed by § 922(g)(1) is that the predicate conviction carry a *potential* sentence of greater than one year of imprisonment." *United States* v. *Leuschen*, 395 F.3d 155, 158 (3d Cir. 2005) (emphasis added); *United States* v. *Corle*, 222 Fed. Appx. 121, 123 (3d Cir. 2007).

Other federal courts also take the *Mills* approach. The Fifth Circuit once considered a federal statute authorizing suspended sentences and probation for "any offense not punishable by death or life imprisonment." *United States* v. *Denson*, 588 F.2d 1112, 1116 (5th Cir.), *aff'd in part and modified in part in banc*, 603 F.2d 1143, 1145 (1979) (quotation omitted). The court construed this language to mean that "federal courts are without authority to suspend the imposition or execution of punishment and to grant probation to defendants . . . who are convicted of offenses for which death or life imprisonment *may be* imposed as a sentence." *Id.* Indeed, the court thought the matter "so self-evident that it hardly admits of argument," *id.* at 1117 (quotation omitted), basing its decision on the plain meaning rule of statutory construction. The First Circuit agrees: "[t]he word 'punishable' in ordinary English simply means 'capable of being punished.'" *United States* v. *Nieves-Rivera*, 961 F.2d 15, 17 (1st Cir. 1992) (citations omitted).

A recent D.C. Circuit case, in which the Government successfully advanced the "capable of being punished" approach to Section

921(a)(20)(B) that Binderup endorses, produced an internally contradictory but nonetheless instructive outcome. *Schrader* v. *Holder*, 704 F.3d 980 (D.C. Cir. 2012).

In 1968, Navy enlistee Jeff Schrader was convicted of common-law misdemeanor assault in Maryland, owing to a scuffle with a gang member who had previously assaulted him. Over forty years later, the Government disarmed Schrader under Section 922(g)(1), arguing that the common law's lack of statutory sentencing provisions meant that only the Eighth Amendment limited Schrader's potential sentence. Schrader sued, arguing *inter alia* that "punishable" refers to specific statutory terms, and thereby does not extend to common law crimes.

The D.C. Circuit disagreed. After reasoning that because *some* common-law misdemeanor offenses were serious, Congress could not have intended to exclude them from the "felon-in-possession" ban, the court held that "the common-sense meaning of the term 'punishable,' . . . refers to any punishment capable of being imposed, not necessarily a punishment specified by statute." *Schrader*, 704 F.3d at 986. Inexplicably, the court then held that "because [common law] offenses

are also capable of being punished by *more than two years'* imprisonment, they are ineligible for section 921(a)(20)(B)'s misdemeanor exception." *Schrader*, 704 F.3d at 986 (emphasis added). The Fourth Circuit had previously held likewise. *United States* v. *Coleman*, 158 F.3d 199, 203 (4th Cir. 1998) (en banc).

Respectfully, the D.C. Circuit, like the Fourth Circuit before it, misread the statutory text. Where Congress wrote, "two years or less," 18 U.S.C. § 921(a)(20)(B), the court saw the words "more than two years." *Schrader*, 704 F.3d at 986. These are not the same thing. Under the "capable of being punished" approach adopted by the D.C. Circuit for Section 922(g)(1), *id.*, Schrader should have prevailed—a common-law offense is "capable of being punished," *id.*, by "two years or less," Section 921(a)(20)(B), as demonstrated by Schrader's no-jail sentence.

Applying the long-held understanding of "punishable by" as referencing a potential outcome also enjoys the benefit of not adding words to Congress's statute. Section 921(a)(20)(B) does *not* exclude from the "felon" ban those misdemeanors "punishable *only* by a term of imprisonment of two years or less," such that if a misdemeanor is *also*

25

punishable by a term exceeding two years, it falls outside the exclusion. Rather, the text quite plainly provides that the scheme excludes misdemeanors "punishable by" two years or less. Period, full stop.

Courts cannot "engage in a statutory rewrite" by "insert[ing] the word 'only' here and there . . . ." *Adirondack Med. Ctr.* v. *Sebelius*, 740 F.3d 692, 699 (D.C. Cir. 2014); *Public Citizen, Inc.* v. *Rubber Mfrs. Ass'n*, 533 F.3d 810, 817 (D.C. Cir.2008) (footnote omitted) ("Congress knows well how to say that disclosures may be made *only* under specified provisions or circumstances, but it did not do so here").

> What the Government asks is not a construction of a statute, but, in effect, an enlargement of it by the court, so that what was omitted, presumably by inadvertence, may be included within its scope. To supply omissions transcends the judicial function.

*Iselin* v. *United States*, 270 U.S. 245, 251 (1926) (citations omitted). But "[w]ith a plain, nonabsurd meaning in view, we need not proceed in this way. There is a basic difference between filling a gap left by Congress' silence and rewriting rules that Congress has affirmatively and specifically enacted." *Lamie* v. *United States Tr.*, 540 U.S. 526, 538 (2004) (quotation omitted).

A "nonabsurd meaning" is plainly "in view." Indeed, the law makes more sense as written than it would as the Government would rewrite it, reflecting the rather unremarkable concept, championed by the Government in other contexts, that serious crimes carry mandatory minimum sentences. If a misdemeanor can be punished by two years or less, there is no prohibition. If a misdemeanor *cannot* be punished by two years or less, e.g., because it is extremely serious and warrants a mandatory minimum sentence of at least two years, then "felon" treatment applies. Cf. *Nieves-Rivera*, 961 F.2d at 17 ("It makes sense to read the 'sentence suspension' statute as applying only to crimes not 'capable of being punished' with a life term, *i.e.*, crimes not serious enough to warrant life imprisonment.").

This outcome may not provide as harsh a result as the Government might prefer, but it is what Congress has prescribed. In any event, it is not the Court's role to take sides in a policy debate and override the statute's plain meaning simply because the Government asserts that society would benefit by criminalizing yet-more conduct. "The role of th[e] [c]ourt is to apply the statute as it is written— even if we think

some other approach might 'accor[d] with good policy.'" *Burrage* v.

*United States*, 134 S. Ct. 881, 892 (2014) (quoting *Comm'r* v. *Lundy*,

516 U.S. 235, 252 (1996)) (third alteration in original); see also *Lewis* v.

*City of Chicago*, 560 U.S. 205, 217 (2010) ("[I]t is not our task to assess

the consequences of each approach [to interpreting a statute] and adopt

the one that produces the least mischief. Our charge is to give effect to

the law Congress enacted."); *United States* v. *Locke*, 471 U.S. 84, 95

(1985) ("[T]he fact that Congress might have acted with greater clarity

or foresight does not give courts a carte blanche to redraft statutes in

an effort to achieve that which Congress is perceived to have failed to

do").

While the rule of lenity should have compelled courts to take the

"capable of being punished" approach, it does not appear that anyone

has advanced the argument under Section 921(a)(20)(B) until very

recently. A number of decisions have accepted the Government's view,

in dicta or in passing, and never in response to an actual argument.

Especially in light of the constitutional avoidance doctrine, *infra*,

Binderup does not believe these decisions are controlling. But they do warrant acknowledgment, and review.

In dicta, the Supreme Court referenced Section 921(a)(20(B) for the proposition that "[a]n offense classified by a State as a misdemeanor . . . *may* qualify as a 'violent felony' for ACCA-enhancement purposes (or as a predicate for a felon-in-possession conviction under § 922(g)) only if the offense is punishable by more than two years in prison." *Logan* v. *United States*, 552 U.S. 23, 27 (2007) (emphasis added). But then, such an offense may *not* qualify if it is also punishable by *less* than two years' imprisonment. In any event, this was all dicta, because (unlike here) the matter was not contested. Logan should have pressed the matter, but instead, he "acknowledge[d]" that his earlier convictions "facially qualifie[d] as violent felonies under § 921(a)(20)(B) (2000 ed.)." *Logan*, 552 U.S. at 30 (citing Petitioner's Brief). "Thus the sole matter in dispute" was whether his rights had been sufficiently restored. *Id.* at 30-31.

Likewise, pre-*Leuschen*, this Court *assumed*, without examining the meaning of "punishable by," that a misdemeanor's potential five year

term places it within Section 922(g)(1)'s ambit. "Any potential one year/two year conflict between § 922(g)(1) and § 921(a)(20)(B) has no adverse effect on Essig because his state conviction is punishable by imprisonment for up to five years." *Essig*, 10 F.3d at 971. But presciently foreshadowing future cases, this Court cautioned that the conflict between the two sections could become relevant:

> Essig ignores the statute's peculiar equation of one year with two years when state crimes are involved, and so will we hereafter because it has no effect on this case. It is not logically relevant to any of the arguments made by Essig or on his behalf. It may not be possible, however, to ignore it in all cases.

*Id.* at 971 n.9.

Here, it is not possible to ignore "the statute's peculiar equation of one year with two years when state crimes are involved," because Binderup, unlike Essig, has comprehensively raised this issue in the wake of *Leuschen* and intervening developments warranting constitutional avoidance. *Essig* considered only arguments not advanced here: that the "sentence actually imposed" controls the term, *id.* at 973, and that "retention of two of the three core civil rights to which § 921(a)(20) refers" suffices for restoration, *id.* at 975.

This Court similarly acknowledged the Government's theory in *United States* v. *Schoolcraft*, 879 F.2d 64 (3d Cir. 1989). But this, too, was dicta. like Mr. Essig, Mr. Schoolcraft did not make the argument presented here. Rather, he challenged the sufficiency of the evidence against him showing that he had committed a predicate offense under Section 922(g)(1), by erroneously claiming that the Government was "required to show that he had been previously convicted of a felony." *Schoolcraft*, 879 F.2d at 69. Of course, Section 922(g)(1) also applies to misdemeanors, and in any event, Schoolcraft had been convicted of *felony* robbery. *Id.* at 70. The Court noted in passing that the sentencing range for felony robbery carried a maximum seven to twenty years, *id.*, but it did not engage in any discussion of the meaning of "punishable by," which was in any event irrelevant considering the felony classification of Schoolcraft's conviction.[4]

---

[4]A curt, non-precedential case also adopted this view. *Dutton* v. *Pennsylvania*, No. 11-7285, 2012 U.S. Dist. LEXIS 102653 (E.D. Pa. July 23, 2012), *aff'd*, 503 Fed. Appx. 125 (3d Cir. 2012) (per curiam). But this was a *pro se* matter where the plaintiff did not even understand which law purportedly disabled him, claiming that his misdemeanor conviction failed to qualify under Section 922(g)(9) where in fact he was allegedly prohibited by Section 922(g)(1).

While the *Essig* court had the foresight to acknowledge that this interpretive issue was complicated and subject to future litigation, *Leuschen* reached the issue, and defined "punishable," at least as used in Section 922(g)(1), as referencing potential sentences.

*Leuschen*, not *Essig*, should be followed here. As whatever "punishable" means, it must mean the same thing in Section 922(g)(1) that it means in Section 921(a)(20)(B). A "basic canon of statutory construction [holds] that identical terms within an Act bear the same meaning." *Estate of Cowart* v. *Nicklos Drilling Co.*, 505 U.S. 469, 479 (1992) (citations omitted). Just as "differing language" in "two subsections" of a statute should not be given "the same meaning," *Russello* v. *United States*, 464 U.S. 16, 23 (1983), "[u]ndoubtedly, there is a natural presumption that identical words used in different parts of the same act are intended to have the same meaning," *Atl. Cleaners & Dyers, Inc.* v. *United States*, 286 U.S. 427, 433 (1932).

Of course, "[t]here is . . . no effectively irrebuttable presumption that the same defined term in different provisions of the same statute must be interpreted identically. Context counts." *Envtl. Def.* v. *Duke Energy*

*Corp.*, 549 U.S. 561, 575-76 (2007) (quotation omitted). "[T]he presumption is not rigid, and the meaning [of the same words] well may vary to meet the purposes of the law." *United States* v. *Cleveland Indians Baseball Co.*, 532 U.S. 200, 213 (2001) (quotations omitted). But "[w]here two statutes operate in the same area of the law . . . the general rule remains that similar language should be interpreted similarly." *Omega Overseas, Ltd.* v. *Griffith*, No. 13-CV-4202, 2014 U.S. Dist. LEXIS 109781, at *17-*18 (S.D.N.Y. Aug. 7, 2014) (citations omitted).

And here, the context of Sections 922(g)(1) and 921(a)(20)(B) is identical. Both statutes work together to delineate crimes included —and excluded—from the "felon" ban's scope. It is not enough for the Government to respond that "context matters"—that much is known. But it is known as *an exception* to the common sense presumption that identical terms in the same act relating to the same subject share an identical meaning. The Government bears the burden of (1) showing that these two provisions exist in different contexts, and (2) explaining

how those different contexts would inform completely different meanings of the term "punishable by."

This much, the Government cannot do. The provisions exist in the same context—indeed, one defines the other—and they mean the exact same thing. Cf. *Sorenson* v. *Sec'y of Treasury*, 475 U.S. 851, 860 (1986) ("that both subsections concern the tax-refund treatment of '[overpayments]' is especially damaging to any claim" of different contextual meanings). It cannot be that "punishable" means "capable of being punished" when looking to include offenses in a criminal prohibition, but refers to specific terms of punishment when defining an exclusion from that same prohibition. And while either definition achieves the same effect if used in Section 922(g)(1), which speaks of a "term *exceeding* one year" (emphasis added), the different definitions yield different results when utilized in Section 921(a)(20)(B)'s context, referring to "a term of imprisonment of two years *or less*" (emphasis added).

The District Court did not so much disagree with Binderup's statutory arguments, as it found them foreclosed by the precedent

reviewed *supra*. See 1 App. 29 ("based upon the case law"); 1 App. 31 ("[g]iven the consistent interpretation and application of 'punishable by'); 1 App. 33 ("the case law . . . leaves no doubt"). In the related *Suarez* case, the court declined to state whether cases referencing Section 921(a)(20)(B)'s application to misdemeanors capable of being punished by imprisonment of two years or less did so merely in dicta, but found that "the word punishable, as used in § 921(a)(20)(B), means the maximum punishment a court is capable of imposing." *Suarez* v. *Holder*, No. 14-CV-968-WWC, 2015 U.S. Dist. LEXIS 19378, at *7 & n.4 (M.D. Pa. Feb. 18, 2015) (other footnote omitted). While Binderup acknowledges that to some people's ears, this usage of "punishable" reasonably appears sensible, the precedent discussed *supra* nonetheless reveals that "punishable by" references *a* possibility, not necessarily the maximum possible sentencing outcome.

C.      Courts Must Avoid Constitutional Questions Where Alternative Statutory Interpretations Raising No Constitutional Concerns Are "Fairly Possible."

As shown below, applying the felon-in-possession ban against Binderup raises serious constitutional questions. This is reason alone to

construe the ban narrowly in light of the two-year misdemeanor exemption. "[I]t is a well-established principle governing the prudent exercise of this Court's jurisdiction that normally the Court will not decide a constitutional question if there is some other ground upon which to dispose of the case." *Bond* v. *United States*, 134 S. Ct. 2077, 2087 (2014) (quotation and citations omitted). "[W]hen a statute is susceptible of two constructions, by one of which grave and doubtful constitutional questions arise and by the other of which such questions are avoided, our duty is to adopt the latter." *Harris* v. *United States*, 536 U.S. 545, 555 (2002) (quotation omitted).

"[T]he fact that one among alternative constructions would involve serious constitutional difficulties is reason to reject that interpretation in favor of another." 2A SUTHERLAND § 45.11, at 87 (collecting cases); see *United States* v. *Rehlander*, 666 F.3d 45, 49 (1st Cir. 2012) ("statutes are to be read to avoid serious constitutional doubts").

Accordingly, "[t]he question is not whether" an alternative statutory interpretation "is the most natural interpretation of the [law], but only whether it is a 'fairly possible' one. As we have explained, 'every

reasonable construction must be resorted to, in order to save a statute from unconstitutionality.'" *Nat'l Fed'n of Indep. Bus.* v. *Sebelius*, 132 S. Ct. 2566, 2594 (2012) (Roberts, C.J.) (quotations omitted); cf. *PDK Labs. Inc.* v. *United States DEA*, 362 F.3d 786, 799 (D.C. Cir. 2004) (Roberts, J., concurring in part and concurring in the judgment) ("if it is not necessary to decide more, it is necessary not to decide more").

D.     Precedent Predating the Second Amendment Right's Recognition Cannot Support Constitutionally Now-Dubious Interpretations of the Felon-In-Possession Ban.

The constitutional avoidance doctrine also informs the courts' understanding of what constitutes precedent. Older precedent can be effectively undermined by new constitutional considerations. Thus, even if *Essig* controlled the question of whether Binderup's offense triggers Section 922(g)(1) prior to the Supreme Court's recent revival of the Second Amendment, this Court should consider what effect these recent, significant decisions have on the vitality of *Essig*, which was decided without their benefit.

"[T]he district court is bound by the decision of the court of appeals *absent intervening Supreme Court precedent . . . .*" *Coca-Cola Bottling*

*Co.* v. *Coca-Cola Co.*, 988 F.2d 386, 411 n.25 (3d Cir. 1993) (emphasis added). "A court need not blindly follow decisions that have been undercut by subsequent cases . . . ." *United States* v. *Burke*, 781 F.2d 1234, 1239 n.2 (7th Cir. 1985) (citations omitted). Indeed, a failure to recognize that intervening Supreme Court precedent rendered obsolete a circuit court decision has supplied grounds for summary reversal. *United States* v. *Nachtigal*, 507 U.S. 1 (1993).

Obsolescence can come not only by way of directly controlling new precedent, but also in (admittedly rare) cases where "authority that postdates the original decision, although not directly controlling, nevertheless offers a sound reason for believing that the former panel, in light of fresh developments, would change its collective mind." *United States* v. *Rodriguez*, 527 F.3d 221, 255 (1st Cir. 2008). The announcement of, effectively, a new constitutional right would predictably have this effect. When this Court decided *Essig*, circuit precedent had held that the Second Amendment "was not adopted with individual rights in mind." *United States* v. *Tot*, 131 F.2d 261, 266 (3d Cir. 1942), *rev'd on other grounds*, 319 U.S. 463 (1943); see also *United*

*States* v. *Rybar*, 103 F.3d 273, 286 (3d Cir. 1996). The *Essig* court would not have thought of construing Section 922(g)(1) in such manner as to avoid raising difficult Second Amendment questions. Since *Essig*, however, the Supreme Court has corrected the "collective right" error. *District of Columbia* v. *Heller*, 554 U.S. 570 (208).

Directly on-point stands *Rehlander*, supra, 666 F.3d 45, in which a First Circuit panel narrowed its prior construction of a federal firearm prohibition and adopted an alternative statutory construction so as to avoid questions under *Heller*. The Second Amendment "claim is sufficiently powerful that the doctrine of constitutional avoidance requires us to revisit our prior interpretation . . . ." *Id.* at 47. Likewise here, *Essig*'s implicit reading of the two-year misdemeanor exemption as defining a limitation rather than a possibility ("punishable by") sweeps into the "felon-in-possession" ban a wide array of non-violent misdemeanors, committed by people at very low risk of recidivism, who can be expected to present serious Second Amendment claims. The Government may be comfortable with that outcome, but this Court is

not. See *Barton*, supra, 633 F.3d 168 (setting out process for as-applied challenges to Section 922(g)(1)).

The constitutional avoidance doctrine counsels the other, quite fairly possible reading of Section 921(a)(20)(B). And circuit precedent can be no impediment in this regard.

* * *

Binderup's transgression, a state misdemeanor capable of being punished by "a term of imprisonment of two years or less," 18 U.S.C. § 921(a)(20(B), falls outside the reach of Section 922(g)(1).

## II. THE SECOND AMENDMENT BARS SECTION 922(G)(1)'S APPLICATION AGAINST DANIEL BINDERUP ON ACCOUNT OF HIS MISDEMEANOR.

### A. Individuals May Challenge the Constitutionality of Categorical Disarmament Laws, Including Section 922(g)(1), As-Applied to Their Personal Circumstances.

Section 922(g)(1) is generally acknowledged to be constitutional on its face as a presumptively-lawful measure. *Barton*, 633 F.3d at 172.

This much, the parties do not dispute.

But the Government fails to acknowledge, let alone argue under, the framework this Court established to govern *as-applied* challenges to Section 922(g)(1). Without question, the District Court faithfully

applied this framework. The Government's position here represents not only an abandonment of its position below, but also a retreat from its arguments to this Court.

Five years ago, when one James Barton, Jr., challenged Section 922(g)(1)'s application to him as unconstitutional, the Government had this to say:

> The Supreme Court in *Heller* used the term "presumptively" to describe lawful regulatory measures and, by use of this term, the Court thus possibly suggested that, in an exceptional case, a court could consider an "as applied" challenge to these regulations. This interpretation is consistent with the Supreme Court's suggestion that it would consider "the historical justifications for the exceptions we have mentioned if and when those exceptions come before us." *Heller*, 128 S. Ct. at 2821.

Brief for the United States, *United States* v. *Barton*, 3d Cir. No. 09-2211, at 18-19 (July 2, 2010). This Court accepted the concession:

> As the Government concedes, *Heller*'s statement regarding the presumptive validity of felon gun dispossession statutes does not foreclose Barton's as-applied challenge. By describing the felon disarmament ban as "presumptively" lawful, *Heller*, 554 U.S. at 626-27 n.26, the Supreme Court implied that the presumption may be rebutted.

*Barton*, 633 F.3d at 173.

Here, the District Court asked the Government whether its briefing "reflect[s] your assessment and prediction that the Third Circuit would find *Barton* to be controlling in plaintiff's as-applied challenge here?" 2 App. 179. The Government was unsure, but stated that *Barton* "probably" controls. 2 App. 180. The court responded, "Okay. Well, that's honest. I appreciate it." *Id.* And just as this Court accepted the Government's concession in *Barton*, the District Court accepted the Government's concession that *Barton* likely applies. 1 App. 39.

But now, long after *Barton* and contrary to its concession below, the Government offers:

> In recognizing section 922(g)(1) as a "presumptively lawful regulatory measure[]," *Heller*, 554 U.S. at 627 n.26, the Supreme Court did not suggest that the statute nonetheless could be subject to a successful as-applied constitutional challenge, and the Court's decision should not be read to permit such a challenge.

Appellants' Br. at 14.

There is no way to reconcile the Government's *Barton* brief with this statement, which is assuredly wrong—and not only as a matter of this Court's precedent. *All* federal courts that have considered the question apparently agree with this Court that *Heller* recognizes as-applied

challenges to categorical disarmament laws. "*Heller* referred to felon disarmament bans only as 'presumptively lawful,' which, by implication, means that there must exist the possibility that the ban could be unconstitutional in the face of an as-applied challenge." *United States* v. *Williams*, 616 F.3d 685, 692 (7th Cir. 2010).

> [G]iven the 'presumptively lawful' reference in *Heller*—the Supreme Court may be open to claims that some felonies do not indicate potential violence and cannot be the basis for applying a categorical ban. Possibly it might even be open to highly fact-specific objections.

*United States* v. *Torres-Rosario*, 658 F.3d 110, 113 (1st Cir. 2011); see also *United States* v. *Moore*, 666 F.3d 313, 319 (4th Cir. 2012); *Tyler* v. *Hillsdale Cnt'y Sheriff's Dep't*, 775 F.3d 308 (6th Cir. 2014); *Schrader*, 704 F.3d at 991.

The Government now simply ignores this inconvenient precedent, and baldly states that courts have "conclude[d] that the Second Amendment provides no protection to individuals subject to section 922(g)(1) as a result of prior criminal convictions." Appellants' Br. at 12 (citing cases). As recounted *supra*, that is most certainly *not* what courts have concluded. Courts have only rejected *facial* challenges to Section 922(g)(1). Indeed, the first case that the Government cites for

its erroneous assertion, *United States* v. *Pruess*, 703 F.2d 242 (4th Cir. 2012), contradicts it. In *Pruess*, the Fourth Circuit recalled that "we acknowledged . . . that there in theory might be 'an as-applied Second Amendment challenge to 922(g)(1)' that 'could succeed,'" concluding only that the defendant's challenge "is not remotely close" given the particular facts of his lengthy and disturbing criminal history. *Id.* at 247 (quoting *Moore*, 666 F.3d at 320).

The Government nonetheless offers a circular theory by which any legislative act that might violate the Second Amendment is self-constitutionalizing: "[a]s a person disqualified from possessing a firearm because of a prior conviction for a serious criminal offense, Binderup falls outside the scope of the Second Amendment protection." Appellants' Br. at 20. In other words, legislative bodies are empowered to cancel a fundamental right simply by "disqualifying" someone from exercising it. Any crime—a parking meter violation, fishing without a license, jaywalking, removing a mattress tag, etc.—might trigger a permanent lifetime firearms disability, the Second Amendment notwithstanding, so long as Congress labels it a "felony" or otherwise

determines that the offense should carry a lifetime firearms disability. But the Second Amendment "has 'boundaries [that] are defined by the Constitution. They are not defined by Congress.'" *Tyler*, 785 F.3d at 344 (quoting *United States* v. *Chovan*, 735 F.3d 1127, 1148 (9th Cir. 2013) (Bea, J., concurring)). "Constitutional rights are enshrined with the scope they were understood to have when the people adopted them, whether or not future legislatures or (yes) even future judges think that scope too broad." *Heller*, 554 U.S. at 634-35.

The courts' uniform conclusion that individuals may bring as-applied challenges to Section 922(g)(1) is reinforced when considering that Section 922(g)(1)'s presumptive validity depends on the theory that it reflects longstanding regulatory conduct. The same Congress that enacted Section 922(g)(1) also enacted Section 925(c), providing for as-applied relief. Under this provision, prohibited individuals might petition for relief upon showing that

> the circumstances regarding the disability, and the applicant's record and reputation, are such that the applicant will not be likely to act in a manner dangerous to public safety and that the granting of the relief would not be contrary to the public interest.

18 U.S.C. § 925(c). Federal district courts can review the denial of relief

under this provision, *id.*, although Congress currently bars Defendants

from expending any funds to process such claims for relief. See, *e.g.*,

*Schrader*, 704 F.3d at 982-83.

In any event, there can be no dispute that Binderup may challenge

Section 922(g)(1)'s application against him. And notwithstanding the

Government's displeasure, this Court has already issued the framework

for resolving such claims—a framework that the District Courts below,

and in *Suarez*, faithfully followed.

B.     Section 922(g)(1) Cannot Apply to Individuals Who
       Distinguish Their Circumstances From Those of Persons
       Historically Barred from Second Amendment protections.

The Government attempts to frame this case in terms of the two-

step analytical approach adopted in *United States* v. *Marzzarella*, 614

F.3d 85 (3d Cir. 2010), under which courts first determine whether the

challenged law implicates the Second Amendment, and if so, whether it

passes means-ends scrutiny under some heightened standard of review.

This is the wrong test. While *Marzzarella*'s two-step test would be

fine in some facial challenges, where a law's generalized constitutional

merit is at issue and no other method is proper,[5] it is less commonly applicable to an *as applied* challenge, which begins with the assumption that the law implicates the Second Amendment (obviating the need for step one), and usually concedes that the law is generally constitutional (resolving step two). *Marzzarella* itself involved an as-applied challenge, and its two-step methodology may work in some as-applied contexts, but it is plainly unworkable in as-applied challenges to Section 922(g)(1), where determining the extent of the challenger's Second Amendment rights logically resolves the dispute as to whether disarmament is appropriate. For these types of cases, this Court has a very different test:

> *Heller* does not catalogue the facts we must consider when reviewing a felon's as-applied challenge . . . to evaluate [an] as-applied challenge, we look to the historical pedigree of 18 U.S.C. § 922(g) to

---

[5]*Marzzarella*'s two-step approach is also not universally applicable to facial challenges. Some laws fail simply because they are not compatible with the constitutional right. In *Heller*, for example, the Supreme Court struck down Washington, D.C.'s handgun ban because the Second Amendment guarantees a right to possess handguns, and it struck down that city's functional firearms ban because self-defense is the Second Amendment's core purpose. Like the D.C. Circuit that it affirmed, the Supreme Court did not employ any two-step, means-ends analysis.

determine whether the traditional justifications underlying the statute support a finding of permanent disability in this case.

*Barton*, 633 F.3d at 173.

To raise a successful as-applied challenge, [an individual] must present facts about himself and his background that distinguish his circumstances from those of persons historically barred from Second Amendment protections. For instance, a felon convicted of a minor, non-violent crime might show that he is no more dangerous than a typical law-abiding citizen. Similarly, a court might find that a felon whose crime of conviction is decades-old poses no continuing threat to society.

*Id.* at 174.

The Government would like to address this case at a high level of generality, because crime is generally bad and criminals are generally undeserving of relief. But this case does not concern the Government's generalized interest in disarming criminals; it concerns the governmental interest, if any, in disarming *Daniel Binderup*—and in *his* particular circumstances. Consistent with the Government's helpful concession, 2 App. 179-80, the District Court correctly "conclude[d] that *Barton*—the more recent, and directly-on-point precedential Opinion of the Third Circuit—provides the framework governing" as-applied challenges under Section 922(g)(1). 1 App. 60-61.

But after predicting that *Barton* would displace *Marzzarella* for this type of case, the Government has now flip-flopped its position, offering that "[i]n *Barton*, this Court simply resolved the case before it at the first step," Appellants' Br. at 22 (citation omitted), such that even if a misdemeanant can prove that he has a valid Second Amendment right based on his lack of dangerousness, he would nonetheless *invariably lose* at step two because the law is facially constitutional, *id.* at 23 ("even as to laws that actually burden Second Amendment rights, this Court has required only a 'reasonable, not perfect,' fit with an important government interest.") (quoting *Marzzarella*, 614 F.3d at 98).

The argument borders on the disingenuous. *Barton* does not merely establish an elaborate mechanism whereby all as-applied challenges are doomed to a two-step analysis in which Section 922(g)(1)'s facial validity overcomes any personalized circumstances. To the contrary, *Barton*'s text *precludes* that interpretation.

To what purpose "must" an individual covered by Section 922(g)(1) "present facts about himself and his background that distinguish his circumstances from those of persons historically barred from Second

Amendment protections?" *Barton*, 633 F.3d at 174. Not merely to advance to step two, but "[t]o raise *a successful* as-applied challenge . . . ." *Id.* (emphasis added). And there is no doubt as to what this Court meant by a "successful" challenge. A "successful" challenge is one that proves that an individual "is no more dangerous than a typical law-abiding citizen" or "poses no continuing threat to society." *Id.*

And if an individual fits these descriptions, how could the Government possibly carry its burden justifying disarmament under step two? In other words, how does disarming a *harmless* person, and thus eviscerating his Second Amendment rights, advance the Government's interests?

Indeed, *Barton* continued, supplying an example of a "successful" as-applied challenge: "The North Carolina Supreme Court did just that in *Britt v. State*, 363 N.C. 546, 681 S.E.2d 320 (N.C. 2009) . . . ." *Id. Britt* did not conduct or even acknowledge a two-step analysis, and it left nothing unresolved. Britt won. He could not be disarmed. Had Barton made Britt's showing, he would have been "successful" as well, without a two-step analysis.

*Barton* is straightforward: The right to arms is not offended by the disarmament of dangerous people. Congress may enact laws of general application to achieve that result. But because the right to arms does not allow the disarmament of harmless people, Section 922(g)(1) cannot constitutionally be applied to individuals who, though falling within the purview of the general statutory prohibition, demonstrate that they are in fact not dangerous. That is all. There is no second step that can justify the disarmament of citizens after it is established that their possession of arms poses no threat to society.

Binderup is mindful that some courts have applied means-ends scrutiny in the context of an as-applied challenge to Section 922(g)(1). See, *e.g.*, *Williams*, 616 F.3d at 692. But this Court is not among them. There is simply nothing in *Barton* that appears to apply a two-step analysis. But if a two-step *Marzzarella* approach must be harmonized with *Barton*, there are two ways of doing so without, as the Government prefers, having the former precedent swallow the latter. The first approach is to recognize that Section 922(g)(1) implicates

Second Amendment rights at step one, and acknowledge the *Barton* analysis as a form of interest balancing under step two.

*Suarez* applied another approach. That court agreed with the Government's position that a *Barton* analysis speaks to the first prong under *Marzzarella*, and thus "agree[d] with Defendants that, in theory, we should conduct some sort of means-end scrutiny," namely strict, not intermediate scrutiny. *Suarez*, 2015 U.S. Dist. LEXIS 19378 at *18 & n.9.

> However, in the context of an as-applied challenge to § 922(g)(1), if a challenger satisfies *Barton* by demonstrating that he is outside the scope of § 922(g)(1), and thereby shows he is a law-abiding citizen who falls within the core of the Second Amendment's protection, any means-end scrutiny would be fatal in fact.

*Id.* (footnote omitted).

*Suarez* thus accepted Binderup's essential position that a second-step means-ends analysis should not be conducted, because it cannot defeat the rights of a misdemeanant who would prevail under *Barton*.

> As a practical matter . . . an analysis of the second prong of *Marzzarella* is futile. Accordingly, we find that in the context of an as-applied Second Amendment challenge to § 922(g)(1), the analysis begins and ends with *Barton*.

*Id.* at *19 (citation omitted).

C.    "Traditional Justifications" Do Not Support "A Finding of Permanent Disability in This Case."

As this Court recounted, historically, only dangerous people were disarmed, Congress not extending firearms disabilities to non-violent offenders until 1961. *Barton*, 633 F.3d at 173-74.

> For nearly a quarter century, § 922(g)(1) had a narrower basis for a disability, limited to those convicted of a 'crime of violence.' 'Crimes of violence' were commonly understood to include only those offenses ordinarily committed with the aid of firearms.

*Id.* at 174 (quoting Kevin Marshall, *Why Can't Martha Stewart Have a Gun?*, 32 HARV. J. L. & PUB. POL'Y 695, 698 & 702 (2009)) (internal quotation marks omitted).

Plainly, Binderup's offense is not violent, nor does it involve firearms. While *some* non-violent offenses might nonetheless justify a firearms disability, violence is still the touchstone element of these cases. For example, "[c]ourts have held in a number of contexts that offenses relating to drug trafficking and receiving stolen weapons are closely related to violent crime," and those offenses thus support a firearms prohibition. *Barton*, 633 F.3d at 174 (citations omitted). Tradition supports disarmament in such cases:

Debates from the Pennsylvania, Massachusetts and New Hampshire ratifying conventions, which were considered "highly influential" by the Supreme Court in *Heller*, 554 U.S. at 604, also confirm that the common law right to keep and bear arms did not extend to those who were likely to commit violent offenses.

*Id.* at 173.

Trafficking in stolen guns and drugs is obviously linked to violence, even if the conduct is not itself violent.[6] But cheating on one's wife with a 17-year-old employee, reprehensible though it may be, is not in any way linked to violence.

Indeed, the presumption of validity typically extended to Section 922(g)(1) does not even apply here, because Binderup is not a felon. When the Supreme Court spoke of the Second Amendment as securing the rights of "law-abiding, responsible citizens," *Heller*, 554 U.S. at 635, it did not contrast these with "individuals subject to section 922(g)(1) as a result of prior criminal convictions," Appellants' Br. at 12, or with the yet-broader category of "persons with prior criminal convictions for crimes punishable by more than one year's imprisonment," *id.* at 13. Rather, the Supreme Court contrasted "law-abiding, responsible

---

[6]As this Court noted, even the gun rights of drug traffickers may be restored. *Barton*, 633 F.3d at 174 (citing *Britt*, supra).

citizens" with "*felons* and the mentally ill." *Heller*, 554 U.S. at 626 (emphasis added); see *Chovan*, 735 F.3d at 1148 (Bea, J., concurring).

Beyond the fact that in this circuit, as in others, presumptively disarmed "felons" may assert as-applied challenges to Section 922(g)(1), misdemeanants are not considered "felons." For example, as this Court observed, the firearm prohibition leveled at domestic violence misdemeanants, though upheld as constitutional, "was not included in *Heller*'s list of permissible regulations." *Barton*, 633 F.3d at 172 n.2 (citations omitted); see also *Chovan*, 735 F.3d at 1137; *United States* v. *Chester*, 628 F.3d 673, 681-82 (4th Cir. 2010) (misdemeanants not presumptively excluded from Second Amendment rights under *Heller*).

> While the Supreme Court has historically allowed prohibitions as to certain individuals, including felons and those convicted of violent crimes, at the time the Second Amendment was passed and at the time the Fourteenth Amendment was ratified, it was not intended to apply to non-violent misdemeanants, nor has this group of individuals traditionally been barred from exercising their inherent Second Amendment rights.

*Gowder* v. *City of Chicago*, 923 F. Supp. 2d 1110, 1122 (N.D. Ill. 2012).

When *Heller* spoke of "felons," it spoke of a traditional common-law classification known to the Framers, not a late-twentieth century

statute including some vast (if disputed) number of misdemeanor offenses. "*Heller*'s language warns readers not to treat *Heller* as containing broader holdings than the Court set out to establish." *Drake* v. *Filko*, 724 F.3d 426, 431 (3d Cir. 2013).

Courts have rejected extending *Heller*'s "felon" presumption beyond actual felons for good reason. There is no historical support for the sweeping proposition that *any* sort of "prior criminal convictions" triggered disarmament, let alone for life, and the Government does not seek to offer any. Instead, the Government unfortunately persists in analogizing Binderup's conduct to that of a child rapist, drawing upon a 1576 statute making it a felony to have sex with "any woman child under the age of ten years" and prescribing that anyone so convicted "shall suffer as a felon [execution] without allowance of clergy." Appellants' Br. at 15-16 (quotation omitted).

As the District Court correctly found, "the actual conduct for which [Binderup] was convicted . . . was not subject to criminal sanction at, or before, the time of the Founding." 1 App. 69. Blackstone recounts the Elizabethan statute making rape a felony,

> as is also the abominable wickedness of carnally knowing and abusing any woman child under the age of ten years . . . . Sir Matthew Hale is indeed of the opinion that such profilgate actions committed on an infant under the age of *twelve years*, the age of female discretion by the common law, either with or without consent, amount to rape and felony : as well since as before the statute of queen Elizabeth : but that law has in general been held only to extend to infants under *ten* : though it should seem that damsels between *ten* and *twelve* are still under the protection of the statute Westm. 1., the law with respect to their seduction not having been altered by either of the subsequent statutes.

4 William Blackstone, COMMENTARIES ON THE LAW OF ENGLAND 212 (1769). In other words, at common law, sex with girls aged 10-12 was a misdemeanor, and the age of consent was 12—until 1875. See Louise A. Jackson, CHILD SEXUAL ABUSE IN VICTORIAN ENGLAND 13 (2000). The Framers might not have applauded Binderup's conduct, but neither did the law of their time criminalize it, or disarm people for it.

Moreover, the difference between a first and second degree misdemeanor is a difference in degree; the difference between a misdemeanor and a major felony, such as sex with a nine-year-old (!), is a difference in kind. Pennsylvania's Legislature obviously believes that a serious difference exists between Binderup's regrettable conduct, a misdemeanor for which he might have received a sentence no greater

than five years, and the offense for which the common law deprived the condemned of last rites, a first degree felony today, 18 Pa. C.S.A. § 3121(c).[7] As the District Court observed, "[t]he very language of the Corruption of minors statute itself demonstrates that first-degree misdemeanor Corruption of minors is not a sexual offense under Pennsylvania law." 1 App. 80.

> [T]he offense for which plaintiff was convicted in 1997—is decidedly absent from the sexual offenses covered [under the felony provision], and as explained above, is not among the sexual offenses which would trigger an offender's duty to register as a sex-offender.

1 App. 81.

For the same reason, it does not matter whether Binderup's conduct might have elsewhere been prosecuted under statutes that also include more serious crimes, or which would have penalized Binderup more heavily. The constitutional question would always concern Binderup's actual conduct, and the traditional justifications, if any, for disarming him for it. Had Binderup been convicted of a more generalized statute reaching a wider array of conduct, or been treated more harshly by the

---

[7] Binderup's judge, and the prosecution, did not treat the case as they would have likely treated one arising under the 1576 statute.

court, his claim would be unaltered, although Pennsylvania's precise legislating and the court's sentence help place this case in its proper context.

No evidence suggests that historically, people convicted of carrying-on consensual if illicit affairs were disarmed. Binderup's crime, like all crimes, involved bad judgment—it did not involve force, or the threat of force, or the use of a firearm. Nothing about it suggests that Binderup's possession of firearms threatened society in any measure, which may explain why the state court restored Binderup's firearm rights.

### D. Binderup Has Presented Sufficient "Facts About Himself" Demonstrating Rehabilitation.

Binderup's nearly two decades of continuing peaceful conduct confirms his possession of firearms would pose no threat today. He has no criminal convictions aside from this one misdemeanor, has sustained a healthy and stable family environment, and is a productive member of society and entrepreneur.

The District Court's recitation of the record self-evidently confirms that Binderup satisfies the *Barton* criteria:

> Since his November 1997 conviction and 1998 sentencing for Corruption of minors, plaintiff has not been convicted of any further

offenses. Moreover, there is no record evidence suggesting that plaintiff has been arrested or charged with any criminal offense in that nearly-seventeen-year period.

1 App. 64.

> There is simply nothing in the record here which would support a reasonable inference that plaintiff used any violence, force, or threat of force to initiate or maintain the sexual relationship with his seventeen-year-old employee. Moreover, there is no record evidence present here which would support a reasonable inference that plaintiff was convicted of any crime of violence (or that he even engaged in any violent or threatening conduct) before or after his November 1997 conviction for Corruption of minors.

1 App. 65. "In addition to a past devoid of any crimes of violence, plaintiff's past is devoid of any firearms offenses or drug trafficking offenses . . . ." 1 App. 66.

Responding to the Government's inappropriate claim that Binderup is a "sexual predator," the District Court offered:

> [T]here is simply no record evidence which suggests in any way that plaintiff has committed many violent sexual acts. Moreover, there is no record evidence which supports a reasonable inference that he has a propensity to commit violent acts, sexual or otherwise.

1 App. 67-68.

Moreover, in our legal system, primary concern with an individual's threat to the public peace is entrusted to state authorities—and the same authorities that convicted and punished Binderup have

determined that he should have his gun rights restored upon "an agreement reached between the Commonwealth and [Binderup]." 2 App. 134. That restoration is "noteworthy." *Suarez*, 2015 U.S. Dist. LEXIS 19378, at *30 n.16.

In short, Binderup "is no more dangerous than a typical law-abiding citizen," and "poses no continuing threat to society." *Barton*, 633 F.3d at 174. Yet the Government's basic error of denying the existence of as-applied challenges undermines its entire position. Indeed, it appears whether the Government fails to comprehend the nature and purpose of an as-applied Second Amendment challenge, as it urges that "this Court should not limit its analysis only to the interests served by application of section 922(g)(1) to Binderup alone, but should consider the interests served by the statute more generally." Appellants' Br. at 30. This argument, which contradicts *Barton*, relies on an incongruous case applying intermediate scrutiny to a broadcaster's claims under the *Central Hudson* test for commercial speech. *United States* v. *Edge Broad. Co.*, 509 U.S. 418 (1993). The argument is inapposite.

In *Edge*, a radio station lying three miles outside Virginia's border, over 92% of whose listenership were Virginians, challenged a prohibition on airing ads for that state's lottery on account of the station's location in gambling-free North Carolina. *Id.* at 423. But because the station's signal nonetheless reached 127,000 people in nine North Carolina counties, accounting for 11% of that population's radio listening, applying the advertising ban to the station materially advanced the legitimate governmental purpose in reducing gambling solicitations in states that prohibit gambling. *Id.* at 431-32.

*Edge* would have doubtless turned out differently if its North Carolina-based signal reached only Virginians. But firearms prohibitions, unlike radio broadcasts, *are* individually applied. The District Court's judgment here is personalized to Binderup and Binderup alone. Allowing Binderup to have guns does not arm anyone else. Binderup's challenge implicates no "general interests," only the interests, if any, in disarming *him*. The governmental interest in disarming people not named Daniel Binderup is unimpacted and thus irrelevant. When those other people sue, the Government will remain

free to explain why, under *Barton* and as was the case with Mr. Barton, disarming them advances traditional public safety purposes.

Barton's as-applied challenge did not fail because other people were dangerous. Barton's as-applied challenge failed because *he* was dangerous. Unsurprisingly, given *the facts of this case*, this case turned out differently. If the constitutional question is reached, that result should be affirmed.

And yet for all its studied efforts to avoid discussing Binderup's personal circumstances, the Government continues to pile on irrelevant studies about what *other* dissimilar people might do with firearms. The argument that "[c]onvicted offenders as a group–including those convicted of crimes that did not involve violence–present a significant risk of recidivism for violent crime," Appellants' Br. at 28-29, is simply too generalized.

First is the problem of selection bias. The cited evidence relates to a study of individuals released from state prison, who are plainly more likely to be dangerous than people, like Binderup, who were not sent to state prison. This is both because prison inmates might acquire new

criminal skills and inclination while in prison, and perhaps more so, because judges and prosecutors work hard to ensure that prison resources are not wasted on non-dangerous offenders. Binderup is hardly a career criminal.

Indeed, the subjects of these prison studies have little to do with Binderup. In one example, approximately a quarter are alcoholics, "nearly two-thirds of nonviolent offenders . . . had been using illegal drugs in the month preceeding the commitment offense and about 4 in 10 reported using drugs at the time of the offense," "an estimated 95% of nonviolent releasees had an arrest history preceding the arrest which resulted in their imprisonment," and "more than 80%" had a prior conviction. R. 11-4, at 1. If Binderup were a drug-using alcoholic with a record of arrests and convictions, the type of person sent to state prison for his offense, perhaps the Government would have a point. But then it would not need to rely on a bunch of statistics, it could discuss what this Court holds relevant: the Plaintiff.

The various studies that purport to track recidivism by rapists and other sex-offenders released from prison are likewise irrelevant. Lumping Binderup together with such people is, again, simply

inappropriate, detached from the reality of his offense and its treatment under Pennsylvania law.

But the Government's "anyone might recidivate" argument is hardly limited to rapists. It offers that "property offenders—have an even higher recidivism rate than violent offenders, and a *large percentage of the crimes nonviolent recidivists later commit are violent*." Appellants' Br. at 29 (quotation omitted) (emphasis in original). If shoplifters cannot obtain as-applied relief because they might recidivate with a murder, *Barton* is a dead letter.

The Government also persists in advancing a study that "found that the 'denial of handgun purchase is associated with a reduction in risk for later criminal activity of approximately 20% to 30%.'" Appellants' Br. at 28 (quotation omitted). But as the District Court pointed out, the authors "went on to state that '[t]his modest benefit may reflect the fact that the members of both study groups had extensive criminal records and therefore were at high risk for later criminal activity.'" 1 App. 86 (footnote omitted).

Finally, and perhaps most significantly, the authors of the study stated that "[i]n terms of some potentially important differences in

risk for later criminal activity, *this study was too small to determine whether the differences occurred by chance*."

*Id.* (footnote omitted).

Abstract criminology is irrelevant in an as-applied challenge. It is the *plaintiff*'s profile, not society's at-large, that matters. As *Suarez* summed up in likewise refusing the Government's statistical claims,

> While we agree that the generalized results of an empirical study are useful to refute a facial challenge and demonstrate that a statute survives some sort of means-end scrutiny, we do not find that generalized conclusions are particularly useful in as-applied challenges to demonstrate whether Plaintiff, himself, is dangerous or poses a continuing threat. Accordingly, we find the studies of little moment and decline to rely on them to find that Plaintiff is dangerous.

*Suarez*, 2015 U.S. Dist. LEXIS 19378, at *35 (citing the decision below).

CONCLUSION

Daniel Binderup's misdemeanor conviction, punishable by two years imprisonment or less, does not qualify him for a lifetime federal firearms prohibition. Moreover, the prohibition is not constitutionally applicable to Binderup, as his offense does not traditionally justify disarmament, and Binderup's particular circumstances warrant relief in any event. The decision below should be affirmed.

Dated:  March 30, 2015                    Respectfully submitted,

                                          /s/ Alan Gura
Douglas Gould                             Alan Gura
PIZONKA, RIELLEY, BELLO                      Counsel of Record
  & MCGRORY, P.C.                         GURA & POSSESSKY, PLLC
144 E. DeKalb Pike, Suite 300             105 Oronoco Street, Suite 305
King of Prussia, PA 19406                 Alexandria, VA 22314
610.992.1300/610.992.1505                 703.835.9085/703.997.7665

                                          *Counsel for Appellee/*
                                          *Cross-Appellant*

## CERTIFICATION OF BAR MEMBERSHIP

I certify that I am an attorney in good standing of the bar of the Third Circuit.

/s/ Alan Gura
Alan Gura

DATED: March 30, 2015

# CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2)(B) because this brief contains 12,618 words.

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in proportionately spaced typeface using WordPerfect X4 in 14 point Century Schoolbook font.

3. The text of the electronic brief is identical to the text in the paper copies.

4. This file was scanned for viruses using a currently-subscribed Norton 360 Anti-Virus installation and was found to be virus-free.

/s/ Alan Gura_____
Alan Gura
Attorney for Plaintiff-Appellee/Cross-Appellant
Dated: March 30, 2015

## CERTIFICATE OF SERVICE

On this, the 30th day of March, 2015, I electronically filed the attached Brief with the Clerk of the Court for the United States Court of Appeals for the Third Circuit by using the CM/ECF system. Participants in this appeal are registered CM/ECF users who will be served by the CM/ECF system on March 30, 2015.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this the 30th day of March, 2015.


/s/ Alan Gura
Alan Gura