## IN THE UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT
_____

### DANIEL BINDERUP,

Plaintiff-Appellee/
Cross-Appellant,

v.

### ATTORNEY GENERAL OF THE UNITED STATES, ET AL.,

Defendants-Appellants/
Cross-Appellees.
_____

Appeal from a Judgment of the
United States District Court for the Eastern District of Pennsylvania
The Hon. James Knoll Gardner, District Judge (Dist. Ct. No. 13-CV-06750-JKG)
_____

## BRIEF FOR NATIONAL RIFLE ASSOCIATION OF AMERICA AS
## *AMICUS CURIAE* IN SUPPORT OF PLAINTIFF-APPELLEE,
## URGING AFFIRMANCE AS TO COUNT TWO
_____

Stefan B. Tahmassebi
NATIONAL RIFLE ASSOCIATION OF AMERICA
11250 Waples Mill Road
Fairfax, Virginia  22030
(703) 267-1259
stahmassebi@nrahq.org

*Counsel for Amicus Curiae*

April 6, 2015

## RULE 26.1 CORPORATE DISCLOSURE STATEMENT

The National Rifle Association of America (NRA) is a non-profit, tax-exempt corporation organized under Section 501(c)(4) of the Internal Revenue Code. NRA has no parent company and no publicly held company has ten percent or greater ownership in NRA.

# TABLE OF CONTENTS

TABLE OF CONTENTS ..........................................................i

TABLE OF AUTHORITIES ................................................. ii

IDENTITY AND INTERESTS OF *AMICUS CURIAE* ...........................1

STATEMENT OF THE CASE ...................................................1

SUMMARY OF ARGUMENT ...................................................1

ARGUMENT ......................................................................4

    I.    HISTORY OF THE FELON IN POSSESSION
        DISQUALIFICATION ...........................................4

    II.   THE FEDERAL FELON IN POSSESSION DISQUALIFICATION
        IN LIGHT OF HELLER ......................................12

        A.    Heller.......................................................12

        B.    The Strict Scrutiny Standard of Review Applies......................13

        C.    Challenges to the Federal Felon Disqualification....................15

        D.    Facial Versus As-Applied Challenges ......................................16

        E.    Barton Controls .......................................................20

        F.    Binderup Has Met His Burden..................................................24

    III.  THE GOVERNMENT'S CITED CRIMINAL STATUTES AND
        STATISTICS ARE IRRELEVANT IN EVALUATING AN AS-
        APPLIED CHALLENGE ....................................................27

CONCLUSION ......................................................................29

# TABLE OF AUTHORITIES

Cases

*Binderup v. Holder*, No. 13-cv-06750, 2014 U.S. Dist. LEXIS 135110 (E.D. Pa. Sep. 25, 2014) .......................................................................................25

*Caron v. United States*, 524 U.S. 308 (1998) ...........................................6

*Cases v. United States*, 131 F.2d 916 (1st Cir. 1942) .............................13

*District of Columbia v. Heller*, 554 U.S. 570 (2008) ................................ 4, 12-14

*Dutton v. Pennsylvania*, 503 F. App'x 125 (3d Cir. 2012)........................20

*Henderson v. United States*, 135 S. Ct. 402 (Oct. 20, 2014) ....................5

*Lewis v. United States*, 445 U.S. 55 (1980) .............................................13

*McDonald v. City of Chicago*, 561 U.S. 742 (2010) .........................4, 13

*Richardson v. Ramirez*, 418 U.S. 24 (1974) ............................................11

*Robertson v. Baldwin*, 165 U.S. 275 (1897) ..............................................8

*State v. Craig*, 826 N.W.2d 789 (Minn. 2013) .......................................17

*Suarez v. Holder*, Civil No. 1:14-CV-968, 2015 U.S. Dist. LEXIS 19378 (M.D. Penn. February 18, 2015) .......................................................... 15, 21-28

*Tot v. United States,* 319 U.S. 463 (1943) ...............................................13

*Tyler v. Hillsdale County Sheriff's Dep't*, 775 F.3d 308 (6th Cir. 2014) .......5, 6, 14

*United States v. Abner*, 2009 WL 103172 (M.D. Ala. Jan. 14, 2009) ....................20

*United States v. Barton*, 633 F.3d 168 (3rd. Cir. 2011) .................. 16, 20, 21, 23-25

*United States v. Davis*, 2010 U.S. Dist. LEXIS 38750 (W.D. Wis. Apr. 20, 2010)

........................................................................................................19, 20

*United States v. Felici*, 208 F.3d 667 (8th Cir. 2000) ................................................5

*United States v. Henderson*, 555 Fed. App'x. 851 (11th Cir. 2014) .......................5

*United States v. Marcavage*, 609 F.3d 264 (3d Cir. 2010) ....................................27

*United States v. McCane*, 573 F.3d 1037 (10th Cir. 2009) ....................................19

*United States v. Palma*, 760 F.2d 475 (3d Cir. 1985) ............................................27

*United States v. Pruess*, 416 F. App'x. 274 (4th Cir. 2011)...................................18

*United States v. Pruess*, 703 F.3d 242 (4th Cir. 2012) ..........................................19

*United States v. Stanko*, 491 F.3d 408 (8th Cir. 2007) ..........................................12

*United States v. Tot*, 131 F.2d 261 (3d Cir. 1942) .................................................13

*United States v. Williams*, 616 F.3d 685 (7th. Cir. 2010) ................................17, 18

*United States v. Vongxay*, 594 F.3d 1111 (9th Cir. 2010) ....................................16

*United States v. Zaleski*, 2011 U.S. Dist. LEXIS 43336 (D. Conn. Apr. 21, 2011) .5

*United States v. Zaleski*, 686 F.3d 90 (2d Cir. 2012) ..............................................5

Statutes and Rules

18 U.S.C. § 921(a)(20)(A) .......................................................................................12

18 U.S.C. § 922(d)(3) .................................................................................................9

18 U.S.C. § 922(d)(5) .................................................................................................9

18 U.S.C. § 922(d)(6) .................................................................................................9

18 U.S.C. § 922(d)(7) ...............................................................9

18 U.S.C. § 922(g)(3) ...............................................................9

18 U.S.C. § 922(g)(5) ...............................................................9

18 U.S.C. § 922(g)(6) ...............................................................9

18 U.S.C. § 922(g)(7) ...............................................................9

18 U.S.C. § 922(g)(8) .............................................................10

18 U.S.C. § 922(g)(9) .............................................................10

An Act to Strengthen the Federal Firearms Act, Pub. L. No. 87-342, 75 Stat. 757 (1961) ...............................................................................9

Federal Firearms Act, ch. 850 § 1(6), 52 Stat. 1250 (1938) .....................................9

Firearms Owners' Protection Act, Pub. L. No. 99-308, 100 Stat. 226 (1986) .......10

Gun Control Act of 1968, Pub. L. No. 90–351, 82 Stat. 226 (1968) .....................10

Ley Federal de Armas de Fuego y Explosivos [LFAFE] [Federal Firearms and Explosives Law], as amended, art. 26(I)(D), Diario Oficial de la Federación [DO], 11 de Enero de 1972 (Mex.) ..................................................................11

1917 N.Y. Laws 1643 ...............................................................8

Sullivan Law, ch. 195, 1911 N.Y. Laws 442 (1911) ...............................................8

1926 UFA §§ 1, 4.....................................................................9

1 Waffengesetz [Weapons Act], Oct. 16, 2002 BGBl. I at 3972, at §5 nos. (1) and (2) (b,c) (F.R.G.) ..................................................................11

Other Authorities

An Act for the better securing the government by disarming Papists and reputed Papists, 1688, 1 W. & M., Sess. 2, § 1 (Eng.) .........................................................7

Appellee's Br. 8 ......................................................................................................25

David B. Kopel, *Mexico's Gun-Control Laws: A Model for The United States?*, 18 Texas Rev. L. & Pol. 27 (2013)............................................................................11

Evan Bernick, Paul Larkin & Jordan Richardson, The Heritage Foundation, *Is Congress Addressing Our Overcriminalization Problem? Reviewing the Progress of Overcriminalization Task Force* (2014), http://www.heritage.org/research/reports/2014/08/is-congress-addressing-our-overcriminalization-problem-reviewing-the-progress-of-the-overcriminalization-task-force. ...............................................................................................................5

Gene Healy, *Go Directly to Jail: The Criminalization of Almost Everything* (2004) ..............................................................................................................................5

Harvey A. Silverglate, *Three Felonies A Day: How the Feds Target the Innocent* (2011) ....................................................................................................................5

Jeffrey M. Jones, *Public Believes Americans Have Right to Own Guns*, Gallup (Mar. 27, 2008), http://www.gallup.com/poll/105721/public-believes-americans-right-own-guns.aspx.) ..............................................................................................4

4 Journals of the Continental Congress, 205 (1774-1789) ......................................7

Rasmussen Reports, *65% See Gun Rights As Protection Against Tyranny*, Rasmussen Reports (Jan. 18, 2013), http://www.rasmussenreports.com/public_content/politics/current_events/gun_control/65_see_gun_rights_as_protection_against_tyranny. ........................................4

Robert J. Cottrol & Raymond T. Diamond, *The Second Amendment: Toward An Afro-Americanist Reconsideration*, 80 Geo. L.J. 309 (1991) ...................................7

Stefan B. Tahmassebi, *Gun Control and Racism*, 2 Geo. Mason U. Civ. Rts. L.J. 67 (1991) ................................................................................................................7, 8

4 William Blackstone Commentaries, Chapter 29 (5th Edition 1773) ....................6

## IDENTITY AND INTERESTS OF *AMICUS CURIAE*[1]

The National Rifle Association of America was organized in 1871 as a not for profit corporation in accordance with New York law. It is recognized as a § 501(c)(4) entity under the Internal Revenue Code. Its mission includes protecting the right to keep and bear arms. All parties have consented to the filing of this brief. Therefore, a motion for leave to file this brief is not required under Fed. R. App. P. 29(a).

Judgment below as to Count 2 should be upheld.

## STATEMENT OF THE CASE

In the interest of judicial economy, the NRA adopts by reference the Statement of the Case as set forth in Appellee's Brief before this Court.

## SUMMARY OF ARGUMENT

Historically, misdemeanants have not been disqualified from possessing firearms. Violent felons were not disqualified under federal law until 1938. Non-violent felons were not disqualified under federal law until 1961. The current definition of the federal felon prohibition—which now includes anyone convicted of a crime punishable by imprisonment exceeding one year, or two years in the case

---

[1] Pursuant to Fed. R. App. P. 29(c)(5), *amicus* certifies that: (1) no party's counsel authored the brief in whole or in part; (2) no party or party's counsel contributed money that was intended to fund preparing or submitting the brief; and (3) no person other than *amicus*, its members, or its counsel contributed money that was intended to fund preparing or submitting the brief.

of a state misdemeanor—were not enacted until, respectively, 1968 and 1986.[2]  The

felon in possession disqualification as applied to misdemeanants like Binderup is

certainly not one of the longstanding prohibitions referenced by the Supreme Court

in *Heller* and *McDonald*.

Because of the recent statutory amendments, the federal felon prohibition is

now very broad and is not narrowly tailored to prevent only violent felons from

firearm possession, nor is the prohibition limited by time.  Appropriate as-applied

challenges must be allowed, lest government be able to deprive Americans of the

protections afforded by the Second Amendment by simply continuing to expand the

definition of the federal felon prohibition to include anyone who ever received a

speeding ticket.

In regard to challenges to the federal felon in possession statute, courts have

treated facial challenges differently than as-applied challenges.  Courts have also

treated non-violent felons differently than violent felons, and have positively

considered as-applied challenges by rehabilitated non-violent felons with histories

of lawful behavior.  Binderup was convicted of a single non-violent misdemeanor

almost two decades ago and has led an exemplary life since then.  Accordingly, he

---

[2] *Amicus* recognizes that the interpretation of the statute as it relates to
misdemeanors is disputed in this case, but takes no position on that issue here.

is even more qualified to assert such a challenge then the repeat offender ex-felons who were the subjects of previous as applied challenges.

In *Barton*, this Court dismissed the defendant's facial challenge to the federal felon disqualification because *Heller* required that the court "presume, under most circumstances, that felon dispossession statutes regulate conduct which is unprotected by the Second Amendment." However, because the prohibitions discussed in *Heller* are only "presumptively" valid, the presumption could be rebutted in an as-applied challenge.

To raise a successful as-applied challenge, a challenger must present facts about himself and his background that distinguish his circumstances from those of persons historically barred from Second Amendment protections. A felon convicted of a minor, non-violent crime might show that he is no more dangerous than a typical law-abiding citizen. Alternatively, a court might find that a felon whose crime of conviction is decades old poses no continuing threat to society. Binderup has proven that he falls within both of these classes.

In evaluating previous as applied challenges, the Sixth Circuit in *Tyler*, and this Court in *Barton*—as interpreted by *Suarez*—correctly held that the strict scrutiny standard applied in cases such as Binderup's.

**ARGUMENT**

## I. HISTORY OF THE FELON IN POSSESSION DISQUALIFICATION

There is a great misconception in regard to the history of the felon in possession disqualification: namely that the prohibition has been part of American law since time immemorial. Even the United States Supreme Court referenced these supposedly longstanding prohibitions. *District of Columbia v. Heller*, 554 U.S. 570, 626-27 (2008); *McDonald v. City of Chicago*, 561 U.S. 742, 786 (2010).

Most Americans are strongly in favor of Second Amendment rights. ("Two-out-of-three Americans recognize that their constitutional right to own a gun was intended to ensure their freedoms." Rasmussen Reports, *65% See Gun Rights As Protection Against Tyranny*, Rasmussen Reports (Jan. 18, 2013), http://www.rasmussenreports.com/public_content/politics/current_events/gun_cont rol/65_see_gun_rights_as_protection_against_tyranny. A 2008 Gallup Poll showed that 73% of Americans believe that the Second Amendment guarantees the right of individual Americans to own guns (as opposed to just members of state militias). Jeffrey M. Jones, *Public Believes Americans Have Right to Own Guns*, Gallup (Mar. 27, 2008), http://www.gallup.com/poll/105721/public-believes-americans-right-own-guns.aspx.).

However, all parties agree that dangerous criminals should not be allowed to possess firearms. On the other hand, the number of regulatory infractions that are

4

now defined as felonies have been ever increasing, and thus the number of prohibited persons has also been ever increasing.  Harvey A. Silverglate, *Three Felonies A Day: How the Feds Target the Innocent* (2011); Gene Healy, *Go Directly to Jail: The Criminalization of Almost Everything* (2004); Evan Bernick, Paul Larkin & Jordan Richardson, The Heritage Foundation, *Is Congress Addressing Our Overcriminalization Problem?  Reviewing the Progress of Overcriminalization Task Force* (2014), *available at* http://www.heritage.org/research/reports/2014/08/is-congress-addressing-our-overcriminalization-problem-reviewing-the-progress-of-the-overcriminalization-task-force.

Further magnifying the problem is the propensity of the lower federal courts to interpret the term "possession" broadly.  *See, e.g.*, *United States v. Henderson*, 555 Fed. App'x. 851 (11th Cir. 2014), *cert. granted sub nom. Henderson v. United States*, 135 S. Ct. 402 (Oct. 20, 2014) (holding that directing the FBI to transfer firearms to a third party in order to dispose of them after conviction is "constructive possession"); *United States v. Felici*, 208 F.3d 667 (8th Cir. 2000); *United States v. Zaleski*, 2011 U.S. Dist. LEXIS 43336 (D. Conn. Apr. 21, 2011) *aff'd in part, vacated in part,* 686 F.3d 90 (2d Cir. 2012). This has created an ever-expanding population of those prohibited from possessing firearms.

Furthermore, once a person finds himself in the class of prohibited persons, it is very difficult to get out of that class.  *Tyler v. Hillsdale Cnty. Sheriff's Dep't*, 775

F.3d 308, 312 (6th Cir. 2014) ("In 1992, however, Congress defunded the relief-from-disabilities program . . . . Since that time, Congress has affirmatively retained the bar on funding the relief-from-disabilities program"). Furthermore, the Supreme Court's all-or-nothing interpretation of Section 921(a)(20)'s provision on restoration of rights has created substantial obstacles to persons seeking relief under state law. *Caron v. United States*, 524 U.S. 308, 314-17 (1998) (holding that state law restoring firearms rights generally, but not right to carry handguns outside the home, failed to restore rights for purposes of federal law).

With the exception of certain firearms prohibitions that specifically targeted particular groups of people, such as racial minorities, the idea of prohibiting broad classes of persons from possessing firearms is a very recent development in American law. Even prohibiting felons from possessing firearms is a fairly new concept in American law.

Under English common law, there was no mention of whether the right to bear arms extended to felons. This was so because felonies were narrowly defined and reserved for only the gravest crimes. On top of that, many felons were executed. Those convicted felons that were not executed typically had to forfeit personal property, which would, as a matter of course, include weapons. This was sometimes referred to as suffering a "civil death." 4 *William Blackstone Commentaries*, Chapter 29 (5th ed. 1773). However, there was no law prohibiting the subsequent

purchase or possession of new property—including weapons—after the forfeiture. The colonial governments and state governments in the United States followed these traditions.

There were instances of entire classes of persons being denied the right to bear arms. These laws were based on the desire to avoid potential rebellion by specific groups of people. Such laws were not individualized or based on prior criminal behavior. For instance, in England, Catholics were disarmed beginning in 1689 as part of a general denial of their civil liberties, on the theory that Catholics posed a threat to the Protestant monarchy. An Act for the better securing the government by disarming Papists and reputed Papists, 1688, 1 W. & M., Sess. 2, § 1 (Eng.). Under the same theory, once in revolt, some colonies denied certain civil liberties to those who remained loyal to the crown; including the denial of the right to bear arms. 4 *Journals of the Continental Congress* 205 (1774-1789). During colonial times and later, individual states and the United States government prohibited the transfer to and possession of firearms by slaves, African Americans, Native Americans and others. *See* Stefan B. Tahmassebi, *Gun Control and Racism*, 2 Geo. Mason U. C.R. L.J. 67 (1991); Robert J. Cottrol & Raymond T. Diamond, *The Second Amendment: Toward An Afro-Americanist Reconsideration*, 80 Geo. L.J. 309 (1991). In all of these cases, the prohibitions were not based on the prior criminal conviction of

individuals, but were attempts to control or disarm a minority or a suspected anti-government group.

Those restrictions on firearms that did exist in the 18th and 19th centuries focused on the manner of bearing or the misuse of firearms, not on the criminal history of the individual doing so. For instance, some states passed laws against carrying concealed firearms, but there were no laws banning possession of firearms by citizens. *Robertson v. Baldwin*, 165 U.S. 275, 282 (1897).

One of the earliest restrictions on felons owning firearms was New York's Sullivan Law, which, beginning in 1911, required a license to possess a concealable firearm. Sullivan Law, ch. 195, 1911 N.Y. Laws 442 (1911). Beginning in 1917, the license was automatically revoked upon conviction for a felony. 1917 N.Y. Laws 1643 (1917). While the law was facially neutral, it was, in fact, enacted with the purpose of disarming many of Italian heritage in New York City. Stefan B. Tahmassebi, *Gun Control and Racism*, 2 Geo. Mason U. Civ. Rts. L.J. 67, 77 (1991).

The first widespread ban on felon gun ownership is found in the Uniform Firearms Act of 1930 ("UFA"), which banned any person convicted of a "crime of violence" from possessing or carrying "any firearm with a barrel less than twelve inches in length." Under the UFA, "crimes of violence" included murder, manslaughter, rape, assault to do bodily harm, robbery, and burglary. These were crimes that could be committed with the aid of firearms. The UFA did not cover

non-violent felonies, such as counterfeiting, forgery, etc. 1926 UFA §§ 1, 4. Thus, under the UFA, non-violent felons could still purchase and possess firearms and even violent felons could purchase and possess long guns.

The federal restriction on individuals convicted of violent crimes was carried forward into the Federal Firearms Act of 1938. Federal Firearms Act, ch. 850 § 1(6), 52 Stat. 1250, 1250 (1938) ("FFA"). The FFA still did not include a ban on gun ownership by all felons. The disqualification was limited to those convicted of a "crime of violence." The FFA now defined "crime of violence" as "murder, manslaughter, rape, mayhem, kidnapping, burglary, housebreaking," and certain forms of aggravated assault—assault with intent to kill, commit rape, or rob, assault with a dangerous weapon, or assault with intent to commit any offense punishable by imprisonment for more than one year. *Id.*

The ban was not extended to include all felons, even those convicted of non-violent crimes, until the 1961 amendments to the FFA. An Act to Strengthen the Federal Firearms Act, Pub. L. No. 87-342, 75 Stat. 757 (1961).

In the 1968 Gun Control Act ("GCA"), further disqualifications were added to the list of prohibited persons, including persons using or addicted to controlled substances, non-resident aliens, persons having been dishonorably discharged from the U.S. Armed Forces, persons who have renounced their citizenship, etc. 18 U.S.C. §§ 922(d)(3), (d)(5), (d)(6), (d)(7), (g)(3), (g)(5), (g)(6) and (g)(7). In 1994

and 1996, the prohibition was expanded even further to prohibit possession of firearms by people convicted of certain misdemeanors and persons under certain court orders. 18 U.S.C. §§ 922(g)(8) and (g)(9). The end result is a far larger class of individuals—many of whom have never posed a physical threat to others— permanently banned from owning a firearm.

However, historically someone like Binderup—who has only been convicted of a misdemeanor—would not have been disqualified from possessing a firearm. Non-violent felons were not disqualified under federal law until 1961, and the current definitions of the federal felon prohibition—extended so as to include anyone convicted of a crime punishable by imprisonment exceeding one year, or two years in the case of a state misdemeanor, were not enacted until 1968 and 1986, respectively. Gun Control Act of 1968, Pub. L. No. 90–351, 82 Stat. 226 (1968); Firearms Owners' Protection Act, Pub. L. No. 99-308, 100 Stat. 226 (1986). The felon in possession disqualification as applied to misdemeanants like Binderup is certainly not one of the longstanding prohibitions referenced by the Supreme Court in *Heller* and *McDonald*.

Not only is this trend new in the United States, but it is also uncommon in other nation states. For instance, German law provides that persons who have previously been convicted of a serious crime are barred from possessing a firearm for ten years. Only those persons who have been convicted of gun crimes or crimes

in which a victim was seriously injured are banned for life from possessing a firearm. 1 Waffengesetz [Weapons Act], Oct. 16, 2002 BGBl. I at 3972, at §5 nos. (1) and (2) (b,c) (F.R.G.). Even in Mexico, which has strict gun control laws, only convictions of crimes committed with firearms constitute a bar for a firearms permit application. "To apply for a permit in Mexico, . . . [an] applicant must have no criminal convictions involving firearms." David B. Kopel, *Mexico's Gun-Control Laws: A Model for The United States?*, 18 Texas Rev. L. & Pol. 27, 37-38 (2013); Ley Federal de Armas de Fuego y Explosivos [LFAFE] [Federal Firearms and Explosives Law], as amended, art. 26(I)(D), Diario Oficial de la Federación [DO], 11 de Enero de 1972 (Mex.) ("… [n]ot have been convicted of crimes committed with arms … "). In contrast, U.S. federal law imposes a lifetime ban on those convicted of any of the countless state or federal felonies, including nonviolent felonies such as tax evasion and violations of various record-keeping laws.

Ex-felons are sometimes deprived of other rights, such as the right to vote, hold elected office, or practice certain professions. *See e.g.*, *Richardson v. Ramirez*, 418 U.S. 24, 56 (1974) (upholding the prohibition on ex-felons from voting in federal elections). However, the federal firearm prohibition is one of a relatively few rights that ex-felons are prohibited from exercising upon the completion of their sentences. The prohibition on felon gun ownership is broad, covering anyone convicted of almost any felony and some misdemeanors, whether violent or not, and

lasts for a lifetime. The only exceptions to the prohibition are for certain white-collar crimes. 18 U.S.C. § 921(a)(20)(A). This exception has been interpreted nearly to the vanishing point. *See, e.g.*, *United States v. Stanko*, 491 F.3d 408, 418-19 (8th Cir. 2007) (Federal Meat Inspection Act violation was not "offense relating to the regulation of business practices").

Because of its historically recent enactment and amendments, the federal felon prohibition is now very broad and is not narrowly tailored to prevent only violent felons from firearm possession, nor is the prohibition limited by time. Appropriate as-applied challenges must be allowed, lest government be able to deprive Americans of the protections afforded by the Second Amendment by simply continuing to expand the definition of the federal felon prohibition to include anyone who ever received a speeding ticket.

## II. THE FEDERAL FELON IN POSSESSION DISQUALIFICATION IN LIGHT OF HELLER

### A. *Heller*

In 2008, the United States Supreme Court held that the Second Amendment protects an individual's right to keep and bear arms in the home for self-defense. *Heller*, 554 U.S. at 635. In doing so the Court struck down two Washington, D.C. ordinances that banned handgun possession and the possession of operable firearms for defense in the home as violative of the Second Amendment. *Id.* at 574-75, 628-29, 635. While ruling out rational basis scrutiny or an interest-balancing test, the

Court did not apply any particular standard of review, but simply held that these laws were unconstitutional no matter what standard was applied. *Id.* at 628 n.27, 634-35.

Prior to the Supreme Court's *Heller* decision, federal appeals courts had upheld Second Amendment based challenges to the federal firearms prohibitions statute on the grounds that the Second Amendment did not protect an individual right to bear arms. *Cases v. United States*, 131 F.2d 916, 923 (1st Cir. 1942); *United States v. Tot*, 131 F.2d 261, 266 (3d Cir. 1942), *rev'd on other grounds*, 319 U.S. 463 (1943). Of course, the basis upon which these courts rejected the challenges is now invalid in light of the Supreme Court's *Heller* decision.

However, *Heller*, in dicta and without citing any authority, referenced a list of "longstanding" regulations that are "presumptively lawful," and it included in this list the federal felon ban of Section 922(g)(1). *Heller*, 554 U.S. at 626-27, 627 n.26; *McDonald*, 561 U.S. at 786; *Lewis v. United States*, 445 U.S. 55, 64-65 (1980) (in as much as the *Lewis* holding relied on a collective rights theory, it is no longer valid in light of the *Heller* ruling.) There was no further explanation of what constituted "longstanding" or what other indicia made these laws "presumptively lawful." *Heller*, 554 U.S. at 626-27.

## B.    The Strict Scrutiny Standard of Review Applies

Since 2008, cases have been filed bringing Second Amendment challenges to the various federal prohibitions of Section 922(g), including the felon prohibition of

Section 922(g)(1). Various courts have applied different standards of review and have resolved Second Amendment challenges to the prohibitions in a dissimilar manner.

*Heller* clearly rejected rational-basis review as the standard to "evaluate the extent to which a legislature may regulate a specific, enumerated right," including the Second Amendment. *Heller*, 554 U.S. at 628, n.27. *Heller* also rejected Justice Breyer's balancing test. *Id.* at 634-35. Since *Heller*, federal courts have subjected the statute to constitutional review under either the strict or intermediate scrutiny standards.

The Sixth Circuit, when analyzing a constitutional challenge to the Section 922(g)(4) firearms disqualification related to involuntary mental commitments, applied strict scrutiny.

> [S]trict scrutiny over intermediate scrutiny [applies]. In choosing strict scrutiny, we join a significant, increasingly emergent though, as, yet, minority view that concludes that as between intermediate scrutiny and strict scrutiny . . . the latter is more appropriate for assessing a challenge to an enumerated constitutional right, especially in light of *Heller*'s rejection of judicial interest-balancing scrutiny.

*Tyler v. Hillsdale County Sheriff's Dep't*, 775 F.3d 308, 328-29 (6th Cir. 2014).

In a case very similar to Binderup's—an otherwise law-abiding citizen, convicted of a misdemeanor more than two decades ago, bringing a declaratory judgment action challenging 922(g)(1) as applied to him—the United States District Court for the Middle District of Pennsylvania held that the strict scrutiny standard

applied. *Suarez v. Holder*, Civil No. 1:14-CV-968, 2015 U.S. Dist. LEXIS 19378, at *18, n.9 (M.D. Penn. February 18, 2015) (citing *Barton*, 633 F.3d 168, 173 (3d Cir. 2011)).

> We find that, in this context, strict scrutiny would be the appropriate standard. The *Marzzarella* court applied intermediate scrutiny because § 922(k) does not severely limit possession of firearms, only those with obliterated serial numbers. *Marzzarella*, 614 F.3d at 96. But where there is a straight prohibition of firearms possession, as in § 922(g)(1), and not just a regulation of possession, as in § 922(k), a fundamental right is implicated. *See McDonald v. City of Chicago*, 561 U.S. 742, 778, 130 S. Ct. 3020, 177 L. Ed. 2d 894 (2010) (stating the right to bear arms is among fundamental rights). As observed by *Marzzarella*, were there is a straight prohibition of a fundamental right, strict scrutiny is applied. *Marzzarella*, 614 F.3d at 96.

*Id*.

The Sixth Circuit in *Tyler*, and this Court in *Barton*—as interpreted by *Suarez*—correctly held that the strict scrutiny standard applied in cases such as Binderup's.

### C.    Challenges to the Federal Felon Disqualification

In regard to the federal felon in possession statute, federal circuit courts have held that felons may be barred from owning firearms, and even a majority of courts after *Heller* have read the dictum in *Heller* (referencing the longstanding prohibition on felons as being presumptively lawful) as depriving felons of Second Amendment rights.

The Ninth Circuit, for example, citing the *Heller* dicta, concluded that "felons are categorically different from the individuals who have a fundamental right to bear arms . . . ." *United States v. Vongxay*, 594 F.3d 1111, 1115 (9th Cir. 2010) (footnote omitted). *See also*, *United States v. Barton*, 633 F.3d 168, 175 (3rd. Cir. 2011).

However, Binderup is not a convicted felon. He was convicted of a non-violent misdemeanor, which—only because of the peculiar federal definition of Section 920(a)(20) which includes some state misdemeanors—falls within the purview of the federal felony prohibition. *Heller* and *McDonald* address "presumptively lawful" regulations that reflect "the historical understanding 'from Blackstone through the 19th-century cases . . . .'" *Barton*, 633 F.3d at 171. That historical understanding did not include misdemeanor firearms disqualifications.

### D.     Facial Versus As-Applied Challenges

In regard to challenges to the federal felon in possession statute, courts have treated facial challenges differently than as-applied challenges, have treated nonviolent felons differently than violent felons, and have positively considered as-applied challenges by rehabilitated non-violent felons with history of lawful behavior. Clearly, Binderup—who was convicted of a single non-violent misdemeanor almost two decades ago and who has led an exemplary life since then—is even more qualified to assert such a challenge then the ex-felons who were the subject of the below referenced cases.

The federal circuit courts have considered both facial and as-applied challenges to the felon-in-possession statute. Federal circuit courts that have considered facial challenges have rejected them, concluding that a felon retains no Second Amendment right to possess a firearm. *See State v. Craig*, 826 N.W.2d 789, 794 (Minn. 2013) (collecting cases).

However, some courts have held otherwise with regard to as-applied challenges by non-violent felons, thus leaving open the possibility that some nonviolent felons might be found to retain the right to keep and bear arms despite their felony, or to have the ability to regain their rights if they maintain a clean record for long enough after a nonviolent felony.

The Seventh Circuit addressed a Second Amendment challenge brought by a person disqualified under Section 922(g)(1). *United States v. Williams*, 616 F.3d 685 (7th. Cir. 2010). The court upheld a conviction for a felon in possession of a firearm. However, the court qualified its holding by stating the following:

> [T]he government does not get a free pass simply because Congress has established a "categorical ban"; it still must prove that the ban is constitutional, a mandate that flows from Heller itself. Heller referred to felon disarmament bans only as "presumptively lawful," which, by implication, means that there must exist the possibility that the ban could be unconstitutional in the face of an as applied challenge . . . .

*Id.* at 692. In fact, the court went even further: Not only are as-applied challenges possible but Section 922(g)(1) itself may be unconstitutional. "[W]e recognize that

§ 922(g)(1) may be subject to an overbreadth challenge at some point because of its disqualification of all felons, including those who are non-violent." *Id.* at 693.

For Williams, however, there was no chance. "Even if the government may face a difficult burden of proving § 922(g)(1)'s 'strong showing' in future cases, it certainly satisfies its burden in this case, where Williams challenges § 922(g)(1) as it was applied to him. . . . Williams, as a violent felon, is not the ideal candidate to challenge the constitutionality of § 922(g)(1)." *Id.*

In 2011, in *United States v. Pruess*, the Fourth Circuit addressed a Second Amendment challenge by an ex-felon charged with possessing ammunition in violation of Section 922(g)(1). *United States v. Pruess*, 416 F. App'x. 274 (4th Cir. 2011) (per curiam) (unpublished). Pruess argued that after *Heller*, the Section 922(g)(1) prohibition on non-violent felons was unconstitutional under the Second and Fifth Amendments. *Id.* at 274. The Fourth Circuit vacated the district court's judgment for the government and remanded for further proceedings. *Id.* at 275.

> Here, the district court concluded, based on the statement in *Heller* that "nothing in [the] opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons," that § 922(g)(1) was not unconstitutional. *See Heller*, 554 U.S. at 571. However, as we have determined that a district court must conduct an analysis of a challenged regulation in light of Heller, we remand to the district court with instructions to make this determination in accordance with our decision in *Chester*. Accordingly, we vacate the district court's judgment and remand for further proceedings consistent with this opinion.

*Id.*

However, when the case reached the Fourth Circuit again, the Court upheld the conviction, stating that Pruess could not rebut the presumption of lawfulness of the felon-in-possession prohibition as applied to him because of Pruess' repeated violations of the firearms laws, including at least twenty prior convictions, which made it "clear he is hardly 'lawabiding' and 'responsible.' . . . Pruess 'undoubtedly flunks the 'law-abiding responsible citizen' requirement.'" *United States v. Pruess*, 703 F.3d 242, 246 (4th Cir. 2012).

Despite the general rule upholding the felon-in-possession ban, under the right facts and circumstances, an as-applied challenge is possible:

> We now join our sister circuits in holding that application of the felon-in-possession prohibition to allegedly non-violent felons like Pruess does not violate the Second Amendment. Though we acknowledged in *Moore* that there in theory might be "an as applied Second Amendment challenge to 922(g)(1)" that "could succeed," Pruess' challenge, like Moore's, "is not remotely close." *Moore*, 666 F.3d at 320.

*Id.* at 247. (The Court noted that Pruess was a repeat offender and "a collector of dangerous, often stolen weapons and explosives who has repeatedly and flagrantly ignored the laws of the United States." *Id.*)

Other courts have also suggested that some nonviolent felons may indeed retain or regain, after a certain number of years, their Second Amendment rights. *See United States v. McCane*, 573 F.3d 1037, 1049-50 (10th Cir. 2009) (Tymkovich, J., concurring); *United States v. Davis*, 2010 U.S. Dist. LEXIS 38750, *4 (W.D. Wis.

Apr. 20, 2010); *United States v. Abner*, 2009 WL 103172, *1 (M.D. Ala. Jan. 14, 2009).

### E. *Barton* Controls

The Third Circuit has addressed this issue in *Barton*. This Court held that felon disqualification statutes are presumptively lawful as they regulate conduct which falls outside the scope of the Second Amendment's protections. *Barton,* 633 F.3d at 172. However, "[b]y describing the felon disarmament ban as 'presumptively' lawful, the Supreme Court implied that the presumption may be rebutted." *Id.* at 173 (citations omitted).

This Court dismissed Barton's facial challenge to the federal felon disqualification because the holding in *Heller* required that the court "presume, under most circumstances, that felon dispossession statutes regulate conduct which is unprotected by the Second Amendment," and, therefore Section 922(g)(1) was facially constitutional. *Id.* at 172. "To prevail on his facial challenge, Barton must 'establish[] that no set of circumstances exists under which . . . [§ 922(g)(1)] would be valid, i.e., that the law is unconstitutional in all of its applications.'" *Id. See also Dutton v. Pennsylvania*, 503 F. App'x 125, 127 (3d Cir. 2012) (analyzing a facial statutory challenge which did not include an as-applied challenge.)

However, "[w]ith respect to the as-applied challenge to § 922(g)(1), the Third Circuit held that because the prohibitions discussed in Heller are only 'presumptively' valid, the presumption could be rebutted with an as-applied challenge." *Suarez,* at *16.

Addressing Barton's as-applied challenge to Section 922(g)(1), the Court looked to the historical justifications underlying the statute to see whether it supported a permanent disability in Barton's case. *Barton*, 633 F.3d at 173. This Court noted that the first federal statute disqualifying felons from possessing firearms was not enacted until 1938, and that even then, it was limited to violent felons. *Id.* "Congress did not bar non-violent felons from possessing guns until 1961." *Id.*

Thus, in the Third Circuit, an as-applied challenge to the federal felony prohibition may be made.

> To raise a successful as-applied challenge, [a defendant] must present facts about himself and his background that distinguish his circumstances from those of persons historically barred from Second Amendment protections. For instance, a felon convicted of a minor, non-violent crime might show that he is no more dangerous than a typical law-abiding citizen. Similarly, a court might find that a felon whose crime of conviction is decades-old poses no continuing threat to society. The North Carolina Supreme Court did just that in *Britt v. State*, 363 N.C. 546 (2009), finding that a felon convicted in 1979 of one count of possession of a controlled substance with intent to distribute had a constitutional right to keep and bear arms, at least as that right is understood under the North Carolina Constitution.

*Id*. at 174.

In applying *Barton* and *Marzzarella* to a case very similar to Binderup's—an otherwise law-abiding citizen, convicted of a misdemeanor more than two decades ago, bringing a declaratory judgment action—the United States District Court, Middle District of Pennsylvania held as follows:

> We find *Marzzarella* and *Barton* to be harmonious, and reading them together, we find that *Barton* does address the first element of … *Marzzarella*. *Marzzarella* stands for the proposition that there is a two prong test for Second Amendment challenges, and that the prohibitions discussed in *Heller* are presumptively valid because a challenge of them would fail the first prong. *Barton* tells us that a challenger may rebut the presumptive validity through the use of an as applied challenge. If the challenger can demonstrate that his circumstances are different from those historically barred from Second Amendment protections, he establishes that his possession of a firearms is conduct within the Second Amendment's protections and satisfies the first prong. … [I]n the context of § 922(g)(1), if a challenger can show that his circumstances place him outside the intended scope of § 922(g)(1), he establishes, as we read *Barton*, that he is the 'law-abiding citizen' identified in *Heller*. And if he is a law-abiding citizen, the possession of a firearm for protection of hearth and home is not just conduct protected by the Second Amendment, it is the core of the Second Amendment's guarantee. *Heller*, 554 U.S. at 635. Therefore, the first prong of *Marzzarella* would be satisfied.
>
> That leaves us with the question of what to do with the second prong of *Marzzarella*. Because we find that *Marzzarella* sets the framework for Second Amendment challenges, and Barton only speaks to the first prong of *Marzzarella* when asserting as-applied challenges to presumptively valid prohibitions, we agree with Defendants that, in theory, we should conduct some sort of means-end scrutiny. However, in the context of an as-applied challenge to § 922(g)(1), if a challenger satisfies *Barton* by demonstrating that he is outside the scope of § 922(g)(1), and thereby shows he is a law-abiding citizen who falls within the core of the Second Amendment's protection, any means-end scrutiny would be fatal in fact. *See Heller*, 554 U.S. at 628 ("Under any of the standards of scrutiny that we have applied to enumerated

constitutional rights, banning from the home . . . firearm[s] . . . to keep and use for protection of one's home and family would fail constitutional muster."). … [T]herefore, an analysis of the second prong of *Marzzarella* is futile. Accordingly, we find that in the context of an as-applied Second Amendment challenge to § 922(g)(1), the analysis begins and ends with *Barton*. *Accord Dutton v. Pennsylvania*, 503 F. App'x 125, 127 n.1 (3d Cir. 2012) (analyzing as-applied Second Amendment challenges to § 922(g)(1) under Barton).

…

[T]his is why the *Barton* court stated that in order to raise a "successful" as-applied challenge, the challenger need only show his circumstances are distinguishable. If he does make such a showing, he falls back into the core protections of the Second Amendment, and any means-end scrutiny would fail.

*Suarez*, at *17-20.

However, Barton failed to support a factual basis for an effective as-applied challenge. He did not and could argue that he was no more likely than the typical citizen to commit a crime of violence. *Barton*, 633 F.3d at 174. Barton had multiple prior felony convictions, including for possession of cocaine with intent to distribute and for receipt of a stolen firearm. *Id.* at 170. The matter that brought him—once again—to the attention of the police, was his sale of a loaded firearm, with an obliterated serial number, to a confidential informant. *Id.* A search of his residence uncovered seven pistols, five rifles, three shotguns, and ammunition. *Id.* Clearly, he was not rehabilitated. Barton was thus unable to present facts distinguishing his circumstances from those of other felons who were categorically unprotected by the Second Amendment. *Id.* at 174.

## F.  Binderup Has Met His Burden

Binderup's situation is vastly different than that of career criminal Barton. Furthermore, like the successful plaintiff in *Suarez*, Binderup does not possess firearms but wishes to do so lawfully and is bringing a declaratory judgment action—unlike Barton who raised a defense against multiple felon in possession charges.  Also unlike Barton, Binderup is not a criminal defendant currently under an indictment for selling firearms with obliterated serial numbers.  And unlike Barton, Binderup's predicate conviction is not for an inherently violent crime.  *See Suarez*, at *33.

In the present case, Binderup has clearly rebutted the presumption regarding felons (in fact, Binderup is not even a felon).  "A felon convicted of a minor, non-violent crime might show that he is no more dangerous than a typical law-abiding citizen."  633 F.3d at 174.  Binderup demonstrated to the trial court that "he would present no more threat to the community that the average law-abiding citizen." *Barton*, 633 F.3d at 174.

Binderup's conviction was nearly two decades ago and stemmed from a consensual affair with a 17-year-old.  Under Pennsylvania law, the crime of corruption of minors is not treated as a statutory rape, because the age of consent is 16.  Binderup had no previous convictions nor has he had any subsequent convictions, nor has he otherwise run afoul of the law.  He has no history of violence.

He regrets the indiscretion, and his wife and family have forgiven him. He is 59 years old, married for over 40 years, a father of two and a business owner. And upon the predicate conviction, he voluntarily immediately got rid of his firearms and has not possessed any since. *Binderup v. Holder*, No. 13-cv-06750, 2014 U.S. Dist. LEXIS 135110, at *61 (E.D. Pa. Sep. 25, 2014); Appellee's Br. 8.

"According to the Third Circuit, the traditional justification of § 922(g)(1) was the disarmament of individuals likely to commit violent offenses." *Suarez*, at *20 (citing *Barton*, 633 F.3d at 173.) To successfully challenge the application of the prohibition based on the Second Amendment, the plaintiff must present facts about himself and his background that demonstrate that he is not likely to commit violent offenses; i.e., that he is no more dangerous than a typical law-abiding citizen. *Barton*, 633 F.3d at 174. *Barton* stated that a "felon convicted of a minor, non-violent crime," or "a felon whose crime of conviction is decades-old poses no continuing threat to society," may successfully challenge the application of the prohibition. *Id.*

> The traditional justification for § 922(g)(1) was the disarmament of individual's likely to commit violent acts. *Barton*, 633 F.3d at 173. Under Barton, a felon with a minor, non-violent conviction can demonstrate a lack of violent propensity, and therefore outside the intended scope of § 922(g)(1), by showing that he is no more dangerous than a typical law-abiding citizen. *Id.* at 174. Alternatively, a felon can demonstrate that he is outside the intended scope of § 922(g)(1) by showing that his conviction is decades-old and that he poses no continuing threat to society. *Id*. First, we find that Plaintiff satisfies the threshold elements for both of these alternative tests. That is, Plaintiff's

predicate conviction was minor and non-violent, and the conviction is now decades-old. The conviction was minor because he ultimately received only one year of probation. It was for a non-violent offense because it did not involve the use of force, threat of force, coercion, or threats to public safety. And his 1990 conviction is now two and a half decades old.

*Suarez*, at *26-27.

Despite the intervening DUI conviction, the *Suarez* Court held as follows:

[W]e find that Plaintiff has established that he is no more dangerous than a typical law-abiding citizen and poses no continuing threat to society. Therefore, we find that Plaintiff falls outside the intended scope of § 922(g)(1) and is distinguishable from those historically barred from Second Amendment protections.

*Suarez*, at *29.

Like the successful plaintiff in *Suarez*, Binderup's offense was not even a felony but merely a misdemeanor. The other facts that supported Suarez's successful challenge are also present in Binderup's case: an old conviction (Suarez almost 25 years, Binderup 17 years); suspended sentences with no time incarcerated; long marriage (Suarez 20 years, Binderup over 40 years); children (Suarez had three, while Binderup has two); no history of violence; and a Pennsylvania firearm disability removed by a Pennsylvania court. *Suarez*, at *20-21, *25. However, unlike Binderup, Suarez actually had two misdemeanor convictions and one of them involved a firearm. If anything, Binderup is more deserving than Suarez.

There are two ways in which a challenger may fail to show he is not dangerous. One, the challenger's conviction is for acts so violent that even after twenty-five years of non-violent behavior he would continue

to be dangerous and to pose a threat to society.  This is not that case.
Or Two, the facts and circumstances since the conviction show that the
challenger remains dangerous . . . .  We find Plaintiff's background and
circumstance establish that, today, he is not dangerous and does not
pose a risk to society.

*Suarez*, at *34.

As the trial court correctly found, Binderup has also proven that today, he is

not dangerous and does not pose a risk to society.

## III.   THE GOVERNMENT'S CITED CRIMINAL STATUTES AND STATISTICS ARE IRRELEVANT IN EVALUATING AN AS-APPLIED CHALLENGE

The government cites irrelevant and inapplicable crime statistics and criminal

statutes.  As the *Suarez* court held, while such matters may be considered in a

statutory facial challenge, they do not apply in an as-applied review.  *Suarez*, at *35.

"A facial attack tests a law's constitutionality based on its text alone and does

not consider the facts or circumstances of a particular case."  *United States v.*

*Marcavage*, 609 F.3d 264, 273 (3d Cir. 2010) (citing *City of Lakewood v. Plain*

*Dealer Publ'g Co.*, 486 U.S. 750, 770 n.11 (1988)).  "An as-applied attack, in

contrast, does not contend that a law is unconstitutional as written but that its

application to a particular person under particular circumstances deprived that

person of a constitutional right.  *Id*. (citing *Wis. Right to Life, Inc. v. FEC*, 546 U.S.

410, 411-12 (2006) (per curiam)).

The instant case concerns an as-applied challenge, and hypothetical circumstances, such as the consequences if Binderup was convicted under another statute, need not be considered. *See United States v. Palma*, 760 F.2d 475, 477 (3d Cir. 1985) (stating that as-applied challenge considers "particular facts of this case" rather than "hypothesiz[ing]" about "a different defendant under a different set of facts"). The *Suarez* court rightly rejected similar arguments:

> While we agree that the generalized results of an empirical study are useful to refute a facial challenge and demonstrate that a statute survives some sort of means-end scrutiny, we do not find that generalized conclusions are particularly useful in as-applied challenges to demonstrate whether Plaintiff, himself, is dangerous or poses a continuing threat. Accordingly, we find the studies of little moment and decline to rely on them . . . .

*Suarez*, at *35.

## CONCLUSION

Judgment below as to Count 2 should be upheld. Binderup is outside the scope of persons historically prohibited. The statute cannot survive an as applied challenge because Binderup has been a law abiding citizen ever since his misdemeanor conviction almost two decades ago. The arguments put forth by the government do not apply to this case because this is an as-applied challenge and the court need not concern itself with hypothetical possibilities.

Respectfully Submitted,

s/ Stefan B. Tahmassebi
Stefan B. Tahmassebi
NATIONAL RIFLE ASSOCIATION OF AMERICA
11250 Waples Mill Road
Fairfax, Virginia 22030
(703) 267-1259
stahmassebi@nrahq.org

Counsel for *Amicus Curiae*

# CERTIFICATE OF COMPLIANCE

1. I certify that I am an attorney in good standing of the bar of the Third Circuit.

2. This brief complies with the type-volume limitation of Fed. R. App. P. 29(d) and 32(a)(7)(B) because it contains 6,839 words, excluding the parts of the brief exempted under Fed. R. App. P. 32(a)(7)(B)(iii), according to the count of Microsoft Word.

3. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionately spaced typeface using Microsoft Office Word 2013 in 14-point Times New Roman font.

4. This brief complies with 3d Cir. L.A.R. 31.1(c) because the text of the electronic brief is identical to the text in the paper copies.

5. Pursuant to 3d Cir. L.A.R. 31.1(c), this file was scanned for viruses using Trend Office Scan version 8.0 and was found to be virus-free.

Dated: April 6, 2015

s/ Stefan B. Tahmassebi
Stefan B. Tahmassebi

## CERTIFICATE OF SERVICE

On this, the 6th day of April, 2015, I electronically filed the attached Brief with the Clerk of the Court for the United States Court of Appeals for the Third Circuit by using the CM/ECF system. Participants in this appear are registered CM/ECF users who will be served by the CM/ECF system on April 6, 2015.

Dated: April 6, 2015

s/ Stefan B. Tahmassebi

Stefan B. Tahmassebi