# IN THE UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

_____

DANIEL BINDERUP,

Plaintiff-Appellee,

v.

ATTORNEY GENERAL OF THE UNITED STATES, et al.,

Defendants-Appellants.

_____

On Appeal from the United States District Court for the
Eastern District of Pennsylvania (No. 13-6750) (Gardner, J.)

_____

## REPLY AND RESPONSE BRIEF FOR THE APPELLANTS

_____

BENJAMIN C. MIZER
  *Principal Deputy Assistant Attorney
  General*

ZANE D. MEMEGER
  *United States Attorney*

MARK B. STERN
MICHAEL S. RAAB
PATRICK G. NEMEROFF
  *(202) 305-8727*
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7217*
  *U.S. Department of Justice*
  *950 Pennsylvania Ave., N.W.*
  *Washington, D.C.  20530*

# TABLE OF CONTENTS

**Page**

INTRODUCTION AND SUMMARY ............................................................................1

ARGUMENT ...........................................................................................................4

    I.      Binderup Is Subject to the Firearms Prohibition of
           18 U.S.C. § 922(g)(1) Because He Was Convicted of a
           Misdemeanor Punishable by up to Five Years' Imprisonment .................4

    II.     Application of 18 U.S.C. § 922(g)(1) to Binderup Does Not
           Violate the Second Amendment....................................................................9

CONCLUSION .......................................................................................................22

REQUIRED CERTIFICATIONS

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Cases:**                                                                    **Page**

*Clark v. Martinez*,
543 U.S. 371 (2005) ..................................................................9

*Dean v. United States*,
556 U.S. 568 (2009) ..................................................................8

*Dickerson v. New Banner Inst., Inc.*,
460 U.S. 103 (1983) ..................................................................6

*District of Columbia v. Heller*,
554 U.S. 570 (2008) ...........................................................10, 14

*FCC v. Fox Television Stations, Inc.*,
556 U.S. 502 (2009) ..................................................................8

*Hawker v. New York*,
170 U.S. 189 (1898) .......................................................4, 10, 16

*Heller v. District of Columbia*,
670 F.3d 1244 (D.C. Cir. 2011) ..............................................12

*NRA v. ATF*,
700 F.3d 185 (5th Cir. 2012) ............................................10, 11

*Pontarelli v. U.S. Dep't of Treasury*,
285 F.3d 216 (3d Cir. 2002) ...............................................4, 21

*Richards v. Richards*,
1 Grant's Cas. 389 (Pa. 1856) ..................................................12

*Richardson v. Ramirez*,
418 U.S. 24 (1974) ..............................................................4, 10

*Schrader v. Holder*,
704 F.3d 980 (D.C. Cir. 2013) .............................................6, 7

*Tennessee v. Garner,*
471 U.S. 1 (1985) ...........................................................................................15

*United States v. Barton,*
633 F.3d 168 (3d Cir. 2011) ........................................... 3, 11, 17, 19

*United States v. Bena,*
664 F.3d 1180 (8th Cir. 2011) .......................................................9

*United States v. Brown,*
740 F.3d 145 (3d Cir. 2014) .........................................................8

*United States v. Carpio-Leon,*
701 F.3d 974 (4th Cir. 2012) ................................................... 3, 9

*United States v. Chapman,*
666 F.3d 220 (4th Cir. 2012) ......................................................21

*United States v. Chovan,*
735 F.3d 1127 (9th Cir. 2013) ............................................17, 19, 20

*United States v. Coleman,*
158 F.3d 199 (4th Cir. 1998) .......................................................7

*United States v. Doe,*
564 F.3d 305 (3d Cir. 2009) .........................................................8

*United States v. Edge Broad. Co.,*
509 U.S. 418 (1993) .....................................................................20

*United States v. Essig,*
10 F.3d 968 (3d Cir. 1993),
*superseded on other grounds by* L.A.R. 31.3........................... 1, 6

*United States v. Kouevi,*
698 F.3d 126 (3d Cir. 2012) .........................................................8

*United States v. Leuschen,*
395 F.3d 155 (3d Cir. 2005) .........................................................6

*United States v. Marzzarella,*
   614 F.3d 85 (3d Cir. 2010) ............................................................ 2, 11, 18, 20

*United States v. Rene E.,*
   583 F.3d 8 (1st Cir. 2009) .........................................................................10

*United States v. Skoien,*
   614 F.3d 638 (7th Cir. 2010) ............................................................... 12, 17

*United States v. Vongxay,*
   594 F.3d 1111 (9th Cir. 2010) .....................................................................9

*United States v. Williams,*
   616 F.3d 685 (7th Cir. 2010) .....................................................................19

*United States v. Yancey,*
   621 F.3d 681 (7th Cir. 2010) .......................................................................9

**Statutes:**

18 U.S.C. § 921(a)(20) ...............................................................................6

18 U.S.C. § 921(a)(20)(B) ..............................................................1, 2, 5, 6, 8

18 U.S.C. § 922(g)(1) ........................................................................*passim*

18 U.S.C. § 922(g)(9) ............................................................................ 3, 19

28 U.S.C. § 1865(b)(5) ........................................................................... 4, 10

18 Pa. Cons. Stat. Ann. § 1104 ............................................................... 5, 7

18  Pa. Cons. Stat. Ann. § 2504 .................................................................15

18 Pa. Cons. Stat. Ann. § 2701(b)(2) ..................................................... 7, 15

18 Pa. Cons. Stat. Ann. § 2706(d) .............................................................15

18 Pa. Cons. Stat. Ann. § 2707(a) .............................................................15

18 Pa. Cons. Stat. Ann. § 6301 ................................................................... 1, 6

18 Pa. Cons. Stat. Ann. § 6301(a)(1)(i) ..............................................................5

**Other Authorities:**

Don B. Kates, Jr., *The Second Amendment: A Dialogue,*
    Law & Contemp. Probs., Winter 1986, at 146 (1986) ...................................10

Glenn Harlan Reynolds, *A Critical Guide to the Second Amendment,*
    62 Tenn. L. Rev. 461 (1995) ......................................................................9

Lawrence H. Gipson, *Criminal Codes of Pennsylvania,,*
    6 J. Crim. L. & Criminology 329 (1915)....................................................14

Louise A. Jackson, *Child Sexual Abuse In Victorian England* 13 (2000) ...........11

Reva B. Siegel, *"The Rule of Love": Wife Beating as Prerogative And Privacy,*
    105 Yale L.J. 2117 (1996) .......................................................................12

Saul Cornell, *"Don't Know Much About History": The Current Crisis in Second
    Amendment Scholarship,* 29 N. Ky. L. Rev. 657 (2002) ..............................10

Wai-Chee Dimock, *Residues of Justice: Literature, Law, Philosophy* 19-20 (1996),
    *available at* https://books.google.com/books?id=NA-xBttnzN8C&printsec
    =frontcover&dq=isbn:0520202449&hl=en&sa=X&ei=
    ixJWVf7GFoOrggSs04DADA&ved=0CB4Q6AEwAA#v=
    onepage&q&f=false ................................................................................14

# INTRODUCTION AND SUMMARY

I.  Binderup was convicted of corruption of a minor, a first-degree misdemeanor that carries a sentence of up to five years' imprisonment. *See* 18 Pa. Cons. Stat. Ann. § 6301.  He is thus subject to the restrictions of 18 U.S.C. § 922(g)(1), which apply to persons convicted of a "crime punishable by imprisonment for a term exceeding one year."

In his cross-appeal, Binderup argues that he falls within 18 U.S.C. § 921(a)(20)(B), which excepts from the scope of section 922(g)(1) a "State offense classified by the laws of the State as a misdemeanor and punishable by a term of imprisonment of two years or less."  Binderup does not dispute that his crime was punishable by a sentence of up to five years.  He argues, however, that he did not, in fact, serve any prison time, from which he reasons that his crime was also "punishable" by a sentence of less than two years.

Plaintiff's contention cannot be squared with the plain language of the statute and is foreclosed by *United States v. Essig*, 10 F.3d 968 (3d Cir. 1993), in which this Court held that a conviction under 18 Pa. Cons. Stat. Ann. § 6301 was within the ambit of 18 U.S.C. § 922(g)(1), although the individual was sentenced to probation. The Court noted that "the Supreme Court has clearly established that it is the potential sentence that controls and not the one actually imposed." *Id.* at 973.  In other words, the application of section 922(g)(1) depends on the maximum sentence that may be imposed for an offense.  Because Binderup's crime carried a maximum

potential sentence of five years, he does not fall within section 921(a)(20)(B)'s exception and is subject to section 922(g)(1)'s restrictions.

II.  In our opening brief, we showed that application of section 922(g)(1) to Binderup is consistent with "longstanding limitations" that "are exceptions to the right to bear arms," *United States v. Marzzarella*, 614 F.3d 85, 91 (3d Cir. 2010), and that the restriction would in any event survive constitutional scrutiny.

In his appellee brief, plaintiff argues that a criminal conviction cannot be a ground for imposing a firearms disability unless it was historically punished as a felony and could therefore warrant the deprivation of various civil rights, including the right to bear arms.  Binderup states that "at common law, sex with girls aged 10-12 was a misdemeanor, and the age of consent was 12—until 1875," and declares that "the difference between a misdemeanor and a major felony, such as sex with a nine-year-old (!), is a difference in kind."  Binderup Br. 57.  Because a court's inquiry must focus on this historical question, Binderup argues, it would make no difference if Pennsylvania, like other states, categorized his crime as a felony or if he had received the maximum sentence for his crime.

Binderup offers no support for the assertion that a criminal conviction can warrant imposition of a firearms prohibition only if it was punishable as a felony at the time of the framing.  The Second Amendment did not freeze social mores in time. Spousal abuse that would have been legally tolerated at the time of the framing is now a crime that may result in application of the firearms restriction of 18 U.S.C.

2

§ 922(g)(1) or 18 U.S.C. § 922(g)(9). Adultery, on the other hand, for which Binderup might have been severely punished in the late 18th century, no longer triggers criminal sanctions. The right to bear arms is "tied to the concept of a virtuous citizenry," *United States v. Carpio-Leon*, 701 F.3d 974, 979-80 (4th Cir. 2012) (internal quotation marks omitted), and what constitutes a "virtuous citizen" in the eyes of the law is determined by the present-day legislature, not the legislatures of the 1700's.

Binderup relies heavily on *United States v. Barton*, 633 F.3d 168 (3d Cir. 2011), in which this Court stated that an individual bringing an as-applied challenge to section 922(g)(1) "must present facts about himself and his background that distinguish his circumstances from those of persons historically barred from Second Amendment protections," and that "a felon convicted of a minor, non-violent crime might show that he is no more dangerous than a typical law-abiding citizen." *Id.* at 174.

Binderup's offense was not a "minor" crime. It is punishable by up to five years in prison in Pennsylvania and is classified as rape in several other states. Nor does Binderup's repeated emphasis on the "consensual" nature of his sexual conduct bear legal scrutiny. Sex between a 41-year-old man and his 17-year-old employee is not meaningfully consensual under the law of Pennsylvania and many other states. Binderup ignored the legislative judgment when he engaged in criminal conduct and he effectively asks this Court to do so now.

Binderup's contention that he is "harmless," Binderup Br. 50, rests on the same evaluation of his crime, and his argument would apply equally if he had been convicted of having sex with a 13-year-old and had served prison time for the offense. The absence of a "virtuous" character has traditionally been the basis for firearms prohibitions, just as an absence of "good character" as reflected by a felony conviction has long been held to justify exclusion from a chosen profession, *Hawker v. New York*, 170 U.S. 189, 194 (1898), from the franchise, *Richardson v. Ramirez*, 418 U.S. 24, 56 (1974), and from jury service, 28 U.S.C. § 1865(b)(5). It is unclear what standard Binderup would have the Court employ in determining whether he is "harmless," but any inquiry of this nature would necessarily take into account this Court's admonition that "courts possess neither the resources to conduct the requisite investigations nor the expertise to predict accurately which felons may carry guns without threatening the public's safety." *Pontarelli v. U.S. Dep't of Treasury*, 285 F.3d 216, 231 (3d Cir. 2002) (en banc).

## ARGUMENT

### I. Binderup Is Subject to the Firearms Prohibition of 18 U.S.C. § 922(g)(1) Because He Was Convicted of a Misdemeanor Punishable by up to Five Years' Imprisonment.

Federal law provides that "[it] shall be unlawful for any person . . . who has been convicted in any court of[] a crime punishable by imprisonment for a term exceeding one year . . . to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce." 18 U.S.C. § 922(g)(1). A separate

section, 18 U.S.C. § 921(a)(20)(B), provides that "[t]he term 'crime punishable by imprisonment for a term exceeding one year' does not include" a "State offense classified by the laws of the State as a misdemeanor and punishable by a term of imprisonment of two years or less."

Binderup was convicted of corruption of a minor under Pennsylvania law, which the State categorizes as a first-degree misdemeanor that carries a sentence of up to five years' imprisonment. *See* 18 Pa. Cons. Stat. Ann. § 6301(a)(1)(i); *see also id.* § 1104. His offense falls within the plain language of 18 U.S.C. § 922(g)(1) because it was "punishable by imprisonment for a term exceeding one year." Plaintiff contends, however, his conviction falls within the scope of 18 U.S.C. § 921(a)(20)(B) on the theory that his crime was "punishable by a term of imprisonment of two years or less."

Plaintiff's argument cannot be squared with the language of the statute. The crime of which he was convicted carried a maximum sentence of five years. That Binderup did not himself receive a sentence of more than two years has no bearing on the statutory inquiry. Section 922(g)(1) tethers the prohibition on firearms possession to the seriousness of the crime as determined by state legislatures. In general, the prohibition applies to convictions "punishable by imprisonment for a term exceeding one year." Recognizing that a decision to denominate a crime as a "misdemeanor" may in some instances reflect an assessment of its gravity, Congress made the prohibition applicable only to those misdemeanors "punishable by a term of

imprisonment" of more than two years.  18 U.S.C. § 921(a)(20)(B).  Whether an individual has been convicted of a felony or a misdemeanor, the sentence actually imposed does not affect the application of the statute.

This Court reached precisely that conclusion in *United States v. Essig*, 10 F.3d 968 (3d Cir. 1993), *superseded on other grounds by* L.A.R. 31.3, a decision that forecloses plaintiff's argument here.  The Court in that case held that a conviction under the same statute at issue here, 18 Pa. Cons. Stat. Ann. § 6301, fell within the scope of 18 U.S.C. § 922(g)(1), notwithstanding the fact that the petitioner in that case was only sentenced to probation with no prison term.  The defendant in *Essig* argued that "the term 'punishable' in § 921(a)(20) means actually 'punished' by a year or more of incarceration."  10 F.3d at 972.  The Court rejected the contention that "federal law does not deprive a convict of his right to possess a firearm unless his sentence actually imposed a prison term of the required length," noting that "the Supreme Court has clearly established that it is the potential sentence that controls and not the one actually imposed."  *Id.* at 973 (citing *Dickerson v. New Banner Inst., Inc.*, 460 U.S. 103, 113 (1983)); *see also United States v. Leuschen*, 395 F.3d 155, 158 (3d Cir. 2005) ("[T]he only qualification imposed by § 922(g)(1) is that the predicate conviction carry a potential sentence of greater than one year of imprisonment.").

Similarly, the D.C. Circuit has explained that the term punishable "refers to the maximum potential punishment a court can impose," *Schrader v. Holder*, 704 F.3d 980, 986 (D.C. Cir. 2013), and that Congress intended that "certain State misdemeanors—

those punishable by more than two years' imprisonment—fall within the scope of section 922(g)(1)," *id.* at 987. *Accord United States v. Coleman*, 158 F.3d 199, 203-04 (4th Cir. 1998) (en banc) ("[T]he statutory language of § 921(a)(20)(B) unambiguously indicates that the critical inquiry in determining whether a state offense fits within the misdemeanor exception is whether the offense is 'punishable' by a term of imprisonment greater than two years—not whether the offense 'was punished' by such a term of imprisonment.").

Plaintiff argues, however, that his crime "comes within the meaning of the exclusion, because it was 'capable of being punished by' a sentence 'of two years or less,' as demonstrated by Binderup's actual sentence." Binderup Br. 21. This argument would render section 922(g)(1) inapplicable to any crime characterized as a misdemeanor that does not carry a minimum sentence of more than two years (which may well be a null set). Under Binderup's interpretation, section 922(g)(1) would not apply to an individual convicted and sentenced to five years in prison for assault on a child under 12, *see* 18 Pa. Cons. Stat. Ann. § 2701(b)(2), because Pennsylvania law does not establish a mandatory minimum sentence for first degree misdemeanors, *see id.* § 1104. Binderup's argument is precluded by *Essig, Dickerson,* and common sense.

No canon of construction supports adoption of this implausible construction of the statute, and plaintiff's invocation of the rule of lenity and principles of constitutional avoidance is unavailing. The district court correctly observed that "[t]he rule of lenity applies in those situations in which a reasonable doubt persists

about a statute's intended scope even after resort to the language and structure, legislative history, and motivating policies of the statute," and "applies only if there is such grievous ambiguity or uncertainty in a statute that, after seizing everything from which aid can be derived, the Court can make no more than a guess as to what Congress intended." 1 App. 30 (quoting *United States v. Kouevi*, 698 F.3d 126, 138 (3d Cir. 2012) (quoting *United States v. Doe*, 564 F.3d 305, 315 (3d Cir. 2009))). The "simple existence of some statutory ambiguity . . . is not sufficient to warrant application of the rule of lenity, for most statutes are ambiguous to some degree." *Kouevi*, 698 F.3d at 138 (quoting *Dean v. United States*, 556 U.S. 568, 577 (2009)) (internal quotation marks omitted). The rule, which represents an "interpretative method of last resort," *United States v. Brown*, 740 F.3d 145, 151 (3d Cir. 2014), provides no basis for disregarding controlling precedent of the Supreme Court and this Court.

Nor is plaintiff aided by principles of constitutional avoidance. "The so-called canon of constitutional avoidance is an interpretive tool, counseling that ambiguous statutory language be construed to avoid serious constitutional doubts." *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 516 (2009). As discussed in our opening brief and at Point II below, plaintiff raises no serious doubts as to the constitutionality of sections 922(g)(1) and 921(a)(20)(B). In any event, "[t]he canon of constitutional avoidance comes into play only when, after the application of ordinary textual analysis, the statute is found to be susceptible of more than one construction; and the

canon functions as *a means of choosing between them.*" *Clark v. Martinez*, 543 U.S. 371, 384-85 (2005). The district court correctly explained that "although plaintiff disagrees with the case law interpreting the phrase 'punishable by' as used in § 922(g)(1) and § 921(a)(20)(B) and posits an alternative interpretation of that phrase, the case law interpreting and applying the phrase 'punishable by' in those statutory provisions leaves no doubt that the meaning of the phrase 'punishable by' concerns the maximum possible punishment for a particular offense, and does not concern the full range of conceivable punishments permissible for that offense." 1 App. 33.

In sum, plaintiff's conviction falls squarely within the scope of the federal firearms prohibition.

## II. Application of 18 U.S.C. § 922(g)(1) to Binderup Does Not Violate the Second Amendment.

1. Plaintiff does not dispute that, as discussed in our opening brief (Gov't Br. 13), "[m]ost scholars of the Second Amendment agree that the right to bear arms was tied to the concept of a virtuous citizenry and that, accordingly, the government could disarm 'unvirtuous citizens.'" *United States v. Carpio-Leon*, 701 F.3d 974, 979-80 (4th Cir. 2012) (quoting *United States v. Yancey*, 621 F.3d 681, 684-85 (7th Cir. 2010) (quoting *United States v. Vongxay*, 594 F.3d 1111, 1118 (9th Cir. 2010) (citing Glenn Harlan Reynolds, *A Critical Guide to the Second Amendment*, 62 Tenn. L. Rev. 461, 480 (1995)))); *see also United States v. Bena*, 664 F.3d 1180, 1183-84 (8th Cir. 2011) (noting that "[s]cholarship suggests historical support for a common-law tradition that

permits restrictions directed at citizens who are not law-abiding and responsible," and that in "'classical republican philosophy, the concept of a right to arms was inextricably and multifariously tied to that of the 'virtuous citizen', such that 'the right to arms does not preclude laws disarming the unvirtuous (i.e. criminals) or those who, like children or the mentally unbalanced, are deemed incapable of virtue'") (quoting Don B. Kates, Jr., *The Second Amendment: A Dialogue*, Law & Contemp. Probs., Winter 1986, at 146 (1986)); *NRA v. ATF*, 700 F.3d 185, 201 (5th Cir. 2012) (same); *United States v. Rene E.,* 583 F.3d 8, 15-16 (1st Cir. 2009) ("Perhaps the most accurate way to describe the dominant understanding of the right to bear arms in the Founding era is as a civic right. Such a right was not something that all persons could claim, but was limited to those members of the polity who were deemed capable of exercising it in a virtuous manner") (quoting Saul Cornell, *"Don't Know Much About History": The Current Crisis in Second Amendment Scholarship,* 29 N. Ky. L. Rev. 657, 679 (2002)).

In this respect, the right to keep and bear arms is similar to other civic rights that have historically been subject to forfeit by those convicted of crimes, including the right to vote, *Richardson v. Ramirez,* 418 U.S. 24, 56 (1974), the right to serve on a jury, 28 U.S.C. § 1865(b)(5), and the right to participate in various professions, *Hawker v. New York,* 170 U.S. 189, 194 (1898). Accordingly, as the Supreme Court declared in *District of Columbia v. Heller*, 554 U.S. 570, 626-27 n.26 (2008), the "longstanding prohibitions on the possession of firearms by felons" are "presumptively lawful regulatory measures."

Binderup was convicted of corruption of a minor, a crime punishable under Pennsylvania law by up to five years' imprisonment, and, as discussed in our opening brief, his conduct could be the basis for felony conviction under the laws of many states. *See* Gov't Br. 16-19. Binderup's circumstances are not distinguishable "from those of persons historically barred from Second Amendment protection," *United States v. Barton*, 633 F.3d 168, 174 (3d Cir. 2011), and he is subject to "longstanding limitations" that this Court has recognized as "exceptions to the right to bear arms." *United States v. Marzzarella*, 614 F.3d 85, 91 (3d Cir. 2010).

2. Binderup argues, however, that he is constitutionally entitled to possess a firearm because "the actual conduct for which [Binderup] was convicted . . . was not subject to criminal sanction at, or before, the time of the Founding." Binderup Br. 56 (quoting 1 App. 69). He urges that "at common law, sex with girls aged 10-12 was a misdemeanor, and the age of consent was 12—until 1875." Binderup Br. 57 (citing Louise A. Jackson, *Child Sexual Abuse In Victorian England* 13 (2000)). Binderup declares that "the difference between a misdemeanor and a major felony, such as sex with a nine-year-old (!), is a difference in kind," *id.,* and states that "[t]he Framers might not have applauded Binderup's conduct, but neither did the law of their time criminalize it, or disarm people for it," *id.*

Plaintiff's argument is flawed at every level. As the Fifth Circuit observed in *NRA v. ATF*, "*Heller* demonstrates that a regulation can be deemed 'longstanding' even if it cannot boast a precise founding-era analogue." 700 F.3d at 196 (citing

*United States v. Skoien*, 614 F.3d 638, 640-41 (7th Cir. 2010) ("[W]e do take from *Heller* the message that exclusions need not mirror limits that were on the books in 1791."); *cf. Heller v. District of Columbia ("Heller II")*, 670 F.3d 1244, 1253-54 (D.C. Cir. 2011)(relying on early 20th-century state statutes to show that D.C. handgun registration requirement was "longstanding" and did not "impinge upon the right protected by the Second Amendment").

The implications of Binderup's contrary reasoning are sweeping. Under Binderup's analysis, a conviction for sex with a 10-year-old could not constitutionally be the basis of a firearms prohibition because that act was a misdemeanor in the 19th century. And a prohibition based on a conviction for sex with a 12-year-old would be patently unconstitutional because 12 was the age of consent until 1875. By the same reasoning, firearms prohibitions based on a crime of spousal abuse would also be constitutionally suspect since, at common law, "a husband could command his wife's obedience, and subject her to corporal punishment or 'chastisement' if she defied his authority." Reva B. Siegel, *"The Rule of Love": Wife Beating as Prerogative And Privacy*, 105 Yale L.J. 2117, 2123 (1996).[1]

---

[1] *See also id.* at 2125 & n.25 (collecting 19th century cases, including *Richards v. Richards*, 1 Grant's Cas. 389, 392-93 (Pa. 1856) (denying petition for divorce; suggesting that "it is a sickly sensibility which holds that a man may not lay hands on his wife, even rudely if necessary, to prevent the commission of some unlawful or criminal purpose" and further that "some allowance should be made for the frailties of human nature" that "betray[ ]" a man "into the commission of an act, or a harsh

*Continued on next page.*

Binderup makes clear that his analysis would be identical if Pennsylvania classified his crime as a felony instead of a first degree misdemeanor or if he had received the maximum five-year sentence for his crime: "Had Binderup been convicted of a more generalized statute reaching a wider array of conduct, or been treated more harshly by the court, his claim would be unaltered." Binderup Br. 58-59. Plaintiff declares that, regardless of the state's classification of the crime or the penalty imposed, "[t]he constitutional question would always concern Binderup's actual conduct, and the traditional justifications, if any, for disarming him for it." Binderup Br. 58. Plaintiff thus insists that even a firearms prohibition based on a felony conviction that entails a substantial prison sentence fails to pass constitutional muster if the precise conduct would not have been the basis for a felony conviction in the 18th or 19th centuries. Plaintiff offers no support in law or logic for the proposition that commission of a crime deemed morally offensive by 21st century legislatures is a constitutionally infirm basis for restricting possession of firearms, the right to serve on a jury, and other rights of a "virtuous citizenry."

Binderup's appeal to history is particularly anomalous because laws of the colonial period and early republic did not go lightly on "people convicted of carrying-on consensual if illicit affairs." Binderup Br. 59. In Pennsylvania, "[f]rom 1700 to 1810 for the third offense [of adultery] there was a penalty of twenty-one lashes, seven

expression, for which, in a moment after, he might be repentant and sorrowful")).

years' imprisonment and the branding of the letter 'A' on the forehead." Lawrence H. Gipson, *Criminal Codes of Pennsylvania,* 6 J. Crim. L. & Criminology 329 (1915); *see also* Wai-Chee Dimock, *Residues of Justice: Literature, Law, Philosophy* 19-20 (1996) (describing history of similar criminal penalties for adultery in other states).[2] Although plaintiff invokes his own notions of modern morality to make light of his conduct, the historical eras to which plaintiff appeals would treat it far more harshly.

As plaintiff makes clear, his argument does not turn on the classification of his crime as a misdemeanor, and his attempt to rely on that classification does not advance his argument. Binderup turns on its head the Supreme Court's statement that "longstanding prohibitions on the possession of firearms by felons" are "presumptively lawful regulatory measures." *Heller,* 554 U.S. at 626-27 n.26. Binderup urges that "[w]hen *Heller* spoke of 'felons,' it spoke of a traditional common-law classification known to the Framers, not a late-twentieth century statute including some vast (if disputed) number of misdemeanor offenses." Binderup Br. 55-56. As Binderup tacitly acknowledges, and as the Supreme Court was surely aware, the relevant federal statute, 18 U.S.C. § 922(g)(1), does not refer to "felons" or "felonies" and refers, instead, to convictions for "a crime punishable by imprisonment for a term exceeding one year." The Supreme Court in *Heller* was fully aware that

---

[2] *Available at* https://books.google.com/books?id=NA-xBttnzN8C&printsec =frontcover&dq=isbn:0520202449&hl=en&sa=X&ei=ixJWVf7GFoOrggSs04DAD A&ved=0CB4Q6AEwAA#v=onepage&q&f=false.

"numerous misdemeanors involve conduct more dangerous than many felonies."

*Tennessee v. Garner*, 471 U.S. 1, 14 (1985). And, as discussed in our opening brief

(Gov't Br. 19), many serious crimes are classified as misdemeanors under

Pennsylvania law, including involuntary manslaughter, assault on a child under 12,

threats of terrorism, and propelling any "deadly or dangerous missile, or fire bomb"

into an occupied vehicle. *See* 18 Pa. Cons. Stat. Ann. § 2504; *id.* § 2701(b)(2); *id.*

§ 2706(d); *id.* § 2707(a).

3. Plaintiff argues that his past is "devoid of any crimes of violence," Binderup

Br. 60 (quoting 1 App. 66), and that prohibiting his possession of a firearm therefore

will not advance the protection of public safety. Binderup does not contend that

longstanding prohibitions on firearms possession have been limited to persons who

have committed violent crimes, and this strand of his reasoning is untethered to his

primary historical argument that consensual sex with girls older than 12 was not

punishable as a crime in 18th and 19th century America.

Binderup's argument also fundamentally misunderstands the nature of the

statutory prohibition and the respective roles of the legislature and the courts. As

discussed, the commission of serious crimes has been deemed as evidence of poor

character that justifies the forfeiture of various civil rights exercised by the population

generally. As the Supreme Court explained in sustaining a state law that prohibited

felons from practicing medicine, "a state may require good character as a condition of

the practice of medicine" and "it may rightfully determine what shall be the evidences

15

of that character." *Hawker*, 170 U.S. at 195. The government does not have "an arbitrary power in the matter" and cannot "make a conclusive test of that which has no relation to character, but it may take whatever, according to the experience of mankind, reasonably tends to prove the fact and make it a test." *Id.* The Court emphasized that "[i]t is not the province of the courts to say that other tests would be more satisfactory, or that the naming of other qualifications would be more conducive to the desired result." *Id.*

That reasoning applies with full force here. Even Binderup might concede that "consensual" sex between a 40-year-old and a minor may be a sufficiently egregious crime as to warrant forfeiture of the right to bear arms, although plaintiff might accept that conclusion only when the minor is under ten years old. It is not for plaintiff, however, or for a court, to determine whether the age of consent should be nine, eleven, thirteen or seventeen. That is quintessentially a legislative determination. Although Binderup apparently believes that having sex with his 17-year-old employee was a victimless crime, the Pennsylvania legislature, like other legislatures throughout the country, disagrees. In addressing the application of the Second Amendment, a court does not engage in a standardless inquiry into the extent to which sex with a 17-year-old represents a qualitatively different departure from societal norms than sex with a 13-year-old. Instead, it looks to the judgment of the legislature as reflected by the criminalization of the conduct and the punishment attached to the crime.

Binderup's insistence that his is "a minor, non-violent crime," *Barton,* 633 F.3d at 174, disregards the determination of the Pennsylvania legislature (and other legislatures). A crime punishable by up to five years' imprisonment is not a "minor" crime. And it is manifestly not the equivalent of "a parking meter violation, fishing without a license, jaywalking, removing a mattress tag, etc." Binderup Br. 44.[3]

Nor should a court uncritically accept Binderup's assertion that his crime was "non-violent" because the sex was consensual. Sex between a 40-year-old and a 17-year-old is not meaningfully consensual in the eyes of the law, and Binderup's status as the victim's employer further undermines plaintiff's characterization of his conduct. Pennsylvania, unlike several other states, has not classified Binderup's conduct as rape, *see* Gov't Br. 16, but the severity of the maximum sentence attaching to the crime reflects the same judgment regarding the nature of "consent" in these circumstances.

It may be Binderup's position that statutory rape, regardless of the age of the victim, can never be a basis for a firearms prohibition because such crimes do not adequately demonstrate that the perpetrator is likely to use a gun to commit violence. Binderup could claim that he was "harmless," Binderup Br. 50, if he had been

---

[3] Similarly, Binderup's emphasis on the length of time since his conviction ignores Congress's reasonable decision to except only "those individuals with expunged, pardoned, or set aside convictions and those individuals who have had their civil rights restored." *United States v. Chovan*, 735 F.3d 1127, 1139-42 (9th Cir. 2013) (citing *Skoien*, 614 F.3d at 641).

convicted of having sex with a 13-year-old employee for precisely the same reasons that he advances here. But to be "harmless" in the sense proposed by Binderup has never been thought to immunize a criminal to imposition of firearms restrictions.

4. Even if Binderup could establish that he is entitled to assert a Second Amendment right, his challenge would fail under means-end scrutiny. Binderup argues at length, Binderup Br. 46-52, that *Barton* eliminated the two-step inquiry used in analyzing Second Amendment claims, *see Marzzarella*, 614 F.3d at 89, and replaced it with a one-step inquiry under which 18 U.S.C. § 922(g)(1) cannot constitutionally be applied "to individuals who, though falling within the purview of the general statutory prohibition, demonstrate that they are in fact not dangerous." Binderup Br. 51. Thus, plaintiff urges, any person subject to a firearms disability under that provision may petition the Court for a determination that he is not "dangerous."

The Court in *Barton* did not effect the sweeping change in Second Amendment analysis that Binderup proposes, and it did not open the door to ad hoc standardless challenges by all persons within the scope of the statutory prohibition. *Barton* simply applied the first prong of the two-step analysis and did not proceed to the second step of the analysis because it determined that the plaintiff could not assert a Second Amendment right. The Court in *Barton* was, of course, bound by the holding in *Marzzarella* that the "presumptively lawful" firearms restrictions described in *Heller* "are exceptions to the right to bear arms." *Marzzarella*, 614 F.3d at 91. *Barton* did not hold that a felon or misdemeanant can set aside historically recognized disabilities by

asserting that he is not currently dangerous. Its statement that "a felon convicted of a minor, non-violent crime might show that he is no more dangerous than a typical law-abiding citizen," assumes that the predicate crime is not only non-violent but also "minor" so as to distinguish the individual's "circumstances from those of persons historically barred from Second Amendment protections." 633 F.3d at 174. As we have shown, plaintiff's circumstances are not meaningfully distinguishable "from those of persons historically barred form Second Amendment protections." *Id.*

Binderup's assertion that *Marzzarella*'s two-step framework "is plainly unworkable in as-applied challenges to Section 922(g)(1)," Binderup Br. 47, is contradicted by the decisions of courts of appeals engaging in means-end scrutiny to reject as-applied challenges to section 922(g)(1) and other similar firearm restrictions. *See, e.g.*, *United States v. Williams*, 616 F.3d 685, 692 (7th Cir. 2010) (applying intermediate scrutiny to reject as-applied challenge to section 922(g)(1)); *United States v. Chovan*, 735 F.3d 1127, 1139-42 (9th Cir. 2013) (applying intermediate scrutiny to reject as-applied challenge to section 922(g)(9)). As those and other analogous cases demonstrate, the application of means-end scrutiny to Binderup's challenge does not turn on a narrow consideration of "the governmental interest . . . in disarming *Daniel Binderup*—and in *his* particular circumstances." Binderup Br. 48. Whether application of a statute is reasonably related to a compelling interest "cannot be answered by limiting the inquiry to whether the governmental interest is directly advanced as

applied to a single person or entity." *United States v. Edge Broad. Co.*, 509 U.S. 418, 427 (1993).

Rather, because the government has an undisputedly compelling interest in disarming individuals who have proven untrustworthy due to past convictions, the only remaining question for purposes of means-end scrutiny is whether Binderup has identified a meaningful category of individuals as to whom application of section 922(g)(1) does not reasonably serve that interest. *See Chovan*, 735 F.3d at 1142 (rejecting as-applied challenge because "Chovan has not presented evidence to directly contradict the government's evidence that the rate of domestic violence recidivism is high," or "proved that if a domestic abuser has not committed domestic violence for fifteen years, that abuser is highly unlikely to do so again"); *see also Marzzarella,* 614 F.3d at 98 (requiring only that "the fit between the challenged regulation and the asserted objective" be "reasonable, not perfect"). He has not. Numerous studies establish the untrustworthiness of individuals convicted of crimes similar to Binderup's crime. *See* Gov't Br. 28-29, 33-34. And while Binderup points out that many of those individuals had engaged in substance abuse, were imprisoned, or had been subject to multiple arrests, Binderup Br. 64, those statistics only underscore the reasonableness of Congress's decision to impose a firearm restriction on that population.

Binderup nonetheless urges that he is "harmless" because he "Has Presented Sufficient 'Facts About Himself' Demonstrating Rehabilitation." Binderup Br. 59.

This Court should not accept Binderup's invitation to engage in an ad hoc determination of whether Binderup is distinguishable from others convicted of similar crimes based on unverifiable assertions about his personal life.  Binderup's argument disregards this Court's admonition that "courts possess neither the resources to conduct the requisite investigations nor the expertise to predict accurately which felons may carry guns without threatening the public's safety." *Pontarelli v. U.S. Dep't of Treasury*, 285 F.3d 216, 231 (3d Cir. 2002) (en banc).  Because courts "are without the tools necessary to conduct a systematic inquiry into an applicant's background . . . they would be forced to rely primarily—if not exclusively—on information provided by the felon," and, "[a]s few felons would volunteer adverse information, the inquiry would be dangerously one-sided." *Id.* at 231.[4]

Even if Binderup could establish that he is different, that would "not undermine the constitutionality of [the statute] . . . because it [would] merely suggest[] that the fit is not a perfect one; a reasonable fit is all that is required under intermediate scrutiny." *United States v. Chapman*, 666 F.3d 220, 231 (4th Cir. 2012).  Because Binderup cannot identify any meaningful category of individuals into which

---

[4] Plaintiff in *Pontarelli* had pled guilty a decade before this Court's decision "to violating 18 U.S.C. § 666(a)(2) by making cash payments totaling over $1,000 to a public official in exchange for favorable treatment in the award of federally financed housing rehabilitation contracts,"  for which "[h]e was sentenced to three years of probation, fined, and ordered to pay $4,000 in restitution and to perform two hundred hours of community service."  285 F.3d at 218.

he falls and as to whom application of section 922(g)(1) is unreasonable, his as-applied challenge fails.

## CONCLUSION

For the foregoing reasons, the judgment of the district court should be reversed.

Respectfully submitted,

BENJAMIN C. MIZER
   *Principal Deputy Assistant Attorney*
   *General*

ZANE D. MEMEGER
   *United States Attorney*

MARK B. STERN
MICHAEL S. RAAB
PATRICK G. NEMEROFF
   *(202) 305-8727*
   *Attorneys, Appellate Staff*
   *Civil Division, Room 7217*
   *U.S. Department of Justice*
   *950 Pennsylvania Ave., N.W.*
   *Washington, D.C.  20530*

JUNE 2015

## REQUIRED CERTIFICATIONS

I hereby certify that this brief complies with the requirements of Fed. R. App. P. 32(a)(5) and (6) because it has been prepared in 14-point Garamond, a proportionally spaced font. I further certify that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 5,569 words, excluding the parts of the brief exempted under Rule 32(a)(7)(B)(iii), according to the count of Microsoft Word.

I further certify to the following:

As counsel for the federal government, I am not required to be a member of the bar of this Court.

The text of the electronic brief is identical to the text in the paper copies.

The electronic brief has been scanned for viruses and found to be virus free.

/s/ Patrick G. Nemeroff
Patrick G. Nemeroff

## CERTIFICATE OF SERVICE

I hereby certify that on June 3, 2015, I electronically filed the foregoing brief with the Clerk of this Court by using the appellate CM/ECF system. The participants in the case are registered CM/ECF users and service will be accomplished by the appellate CM/ECF system.

/s/ Patrick G. Nemeroff
Patrick G. Nemeroff