Nos.14-4549, 14-4550

# IN THE UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

_____

DANIEL BINDERUP,

              Plaintiff-Appellee/
              Cross-Appellant,

v.

ATTORNEY GENERAL OF THE UNITED STATES, ET AL.,

              Defendants-Appellants/
              Cross-Appellees.

_____

Appeal from a Judgment of the
United States District Court for the Eastern District of Pennsylvania
The Hon. James Knoll Gardner, District Judge (Dist. Ct. No. 13-CV-06750-JKG)

_____

## SUPPLEMENTAL BRIEF AS REQUESTED BY THE COURT ON MAY 9, 2016 FOR NATIONAL RIFLE ASSOCIATION OF AMERICA AS AMICUS CURIAE

_____

Stefan B. Tahmassebi
NATIONAL RIFLE ASSOCIATION OF AMERICA
11250 Waples Mill Road
Fairfax, Virginia 22030
(703) 267-1259
stahmassebi@nrahq.org

*Counsel for Amicus Curiae*

May 17, 2016

# RULE 26.1 CORPORATE DISCLOSURE STATEMENT

The National Rifle Association of America (NRA) is a non-profit, tax-exempt corporation organized under Section 501(c)(4) of the Internal Revenue Code. NRA has no parent company and no publicly held company has ten percent or greater ownership in NRA.

# TABLE OF CONTENTS

TABLE OF CONTENTS ..................................................................................i

TABLE OF AUTHORITIES ........................................................................ ii

INTRODUCTION .........................................................................................1

SUMMARY OF ARGUMENT ......................................................................1

ARGUMENT .................................................................................................1

    I.    *UNITED STATES V. BEAN,* AND *PONTARELLI V. U.S. DEP'T OF THE TREASURY*, ARE INAPPLICABLE TO BINDERUP'S CLAIMS ................................................................................................1

    II.    BINDERUP CHALLENGES § 922(G)(1) AS-APPLIED AND THEREFORE THERE IS NO NEED TO ANALYZE WHETHER THE STATUTE IS FACIALLY VALID. ............................................6

CONCLUSION ............................................................................................10

# TABLE OF AUTHORITIES

**Cases**

*Babcock & Wilcox Co. v. Marshall*, 610 F.2d 1128 (3d Cir. 1979) ........................5

*Binderup v. Holder*, No. 13-CV-06750, 2014 WL 4764424 (E.D. Pa. Sept. 25, 2014) ........................................................................................................................10

*D.C. v. Heller*, 554 U.S. 570 (2008) ...........................................................5, 6, 7, 8

*Jackson-Bey v. Hanslmaier*, 115 F.3d 1091 (2d Cir. 1997) .......................................6

*Loving v. United States*, 517 U.S. 748 (1996) .........................................................4

*Marbury v. Madison*, 5 U.S. 137 (1803) ..................................................................4

*McDonald v. City of Chicago*, 561 U.S. 742 (2010) .......................................5, 6, 7, 8

*Miller v. French*, 530 U.S. 327 (2000) ....................................................................4

*Pontarelli v. U.S. Dep't of the Treasury*, 285 F.3d 216 (3d Cir. 2002) ....1, 2, 3, 4, 6

*Republic Industries, Inc. v. Central Pennsylvania Teamsters*, 693 F.2d 290 (3d Cir. 1982) ............................................................................................................5

*Rice v. United States*, 68 F.3d 702 (3d Cir. 1995) ...................................................7

*United States v. Abner*, 2009 WL 103172 (M.D. Ala. Jan. 14, 2009) ......................8

*United States v. Barton*, 633 F.3d 168 (3d Cir. 2011) ...............................1, 3, 9, 10

*United States v. Bean*, 537 U.S. 71 (2002) .........................................1, 2, 3, 4, 6, 7

*United States v. Davis*, 2010 U.S. Dist. LEXIS 38750 (W.D. Wis. Apr. 20, 2010) ..........................................................................................8

*United States v. Decastro*, 682 F.3d 160 (2d Cir. 2012) ..........................................6

*United States v. Marcavage*, 609 F.3d 264 (3d Cir. 2010) ......................................7

*United States v. McCane*, 573 F.3d 1037 (10th Cir. 2009) ........................................8

*United States v. McGill*, 74 F.3d 64 (5th Cir. 1996) ..................................................7

*United States v. Pruess*, 703 F.3d 242 (4th Cir. 2012) ...............................................3

*United States v. Williams*, 616 F.3d 685 (7th Cir. 2010) ...........................................3

*U.S. Dep't of Treasury, Bureau of Alcohol, Tobacco & Firearms v. Galioto*,
477 U.S. 556 (1986) ......................................................................................................2

**Statutes and Rules**

18 U.S.C. § 921(a)(1) ....................................................................................................2

18 U.S.C. § 922(g)(1) ........................................................... 1, 3, 4, 5, 6, 7, 8, 9, 10

18 U.S.C. § 922(g)(4) ....................................................................................................2

18 U.S.C. § 925(c) ...............................................................................................1, 2, 3, 4, 6

**Other Authorities**

77 Fed. Reg. 58150 ........................................................................................................2

Compl. Prayer for Relief ...............................................................................................7

Karol Mason, Guest Post, *Justice Dept. agency to alter its terminology for released convicts, to ease reentry*, WASH. POST, May 4, 2016, *available at* https://www.washingtonpost.com/news/true-crime/wp/2016/05/04/guest-post-justice-dept-to-alter-its-terminology-for-released-convicts-to-ease-reentry/ ...........9

Michelle Natividad Rodriguez & Beth Avery, *Ban the Box* (April 2016), NELP, *available at* http://www.nelp.org/content/uploads/Ban-the-Box-Fair-Chance-State-and-Local-Guide.pdf ........................................................................................................8

Press Release, White House, FACT SHEET: President Obama Announces New Actions to Promote Rehabilitation and Reintegration for the Formerly-Incarcerated (Nov. 2, 2015), *available at* https://www.whitehouse.gov/the-press-office/2015/11/02/fact-sheet-president-obama-announces-new-actions-promote-rehabilitation ..................................................................................................8

Stefan B. Tahmassebi, *Texas and Federal Firearms Disqualifications, Relief from Disability, and Constitutional Challenges*, Texas Bar CLE, ch. 8, (Sept. 27, 2013) ........................................................................................7, 8

*The ABA National Inventory of Collateral Consequences of Conviction*, http://www.abacollateralconsequences.org/resources/ ............................................9

THE FEDERALIST no. 78 (Alexander Hamilton) (Clinton Rossiter ed., 1961) ...........4

U.S. Const. art. III, § 2 ...............................................................................................4

## INTRODUCTION

The NRA files this supplemental amicus curiae brief in accordance with the Court's request. The interest of the amicus curiae and the statement of the case are briefed in full in the NRA's original amicus brief filed on April 6, 2015.

## SUMMARY OF ARGUMENT

Binderup's claims arise under an as-applied constitutional challenge to 18 U.S.C. § 922(g)(1); therefore, *United States v. Bean,* and *Pontarelli v. U.S. Dep't of the Treasury*—both cases dealing with appeals of an agency action/inaction arising under 18 U.S.C. § 925(c)—are inapplicable.

Binderup's claims do not require this Court to examine whether § 922(g)(1) is generally unconstitutional because of the passage of time or change in circumstances. However, pursuant to this Court's ruling in *United States v. Barton*, the passage of time—along with other positive factors—can make § 922(g)(1) unconstitutional as-applied to Binderup.

## ARGUMENT

**I.**   ***UNITED STATES V. BEAN*, AND *PONTARELLI V. U.S. DEP'T OF THE TREASURY*, ARE INAPPLICABLE TO BINDERUP'S CLAIMS.**

This Court has asked whether the Supreme Court's ruling in *United States v. Bean*, 537 U.S. 71 (2002), and its ruling in *Pontarelli v. U.S. Dep't of the Treasury*, 285 F.3d 216 (3d Cir. 2002), deprive it of subject matter jurisdiction over Binderup's claims. They do not.

1

*Bean* and *Pontarelli* are inapplicable to Binderup's claims. Unlike the plaintiffs in *Bean* and *Pontarelli*, Binderup's claims do not arise under 18 U.S.C. § 925(c), which allows a "prohibited" person to apply, with the Attorney General, "for relief from disabilities imposed by Federal laws with respect to the … possession of firearms …." 18 U.S.C. § 925(c). If the application is denied, the applicant may then file a petition with the United States district court where the applicant resides. *Id*. In 1992, Congress cut off appropriations for ATF to process § 925(c) applications, and a year later authorized ATF to only process applications submitted by corporations.[1] *See e.g*., 77 Fed. Reg. 58150.

The Supreme Court, and this Court, have held that an actual denial by the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") is required before a district court may review an application under § 925(c). *Bean*, 537 U.S. at 77; *see*

---

[1] Congress's allocation for processing a corporation's application but not an individual citizen's application may be unconstitutional. *See U.S. Dep't of Treasury, Bureau of Alcohol, Tobacco & Firearms v. Galioto*, 477 U.S. 556 (1986). A prior version of § 925(c) only allowed felons to apply for relief from disabilities. Galioto was prohibited from possessing under § 922(g)(4) because he had been involuntarily committed to a mental hospital. *Id.* at 557. The trial court ruled that allowing felons to apply for relief from their disability but not allowing persons who were involuntarily committed "violated equal protection principles." *Id.* at 559. In the meantime, Congress amended § 925(c) by allowing all prohibited persons to apply for relief, and the Court vacated the trial court's holding as moot and remanded. *Id.* at 560. Therefore, if distinguishing between felons and persons involuntarily committed violates equal protection, then distinguishing between individuals and corporations might as well. Especially when they are both "persons" under 18 U.S.C. § 921(a)(1).

2

*also Pontarelli*, 285 F.3d at 218. Both *Bean,* and *Pontarelli* ruled that the plaintiff's applications had not been properly denied because they were not processed due to the lack of funding. *Bean*, 537 U.S. at 75-76; *Pontarelli*, 285 F.3d at 218. If Binderup sought relief under § 925(c), the question of whether the Court had jurisdiction over the claims would be applicable. However, he does not, and they are not.

Instead, Binderup is asking the Court to review 18 U.S.C. § 922(g)(1) under the Second Amendment, and declare the provision unconstitutional as-applied to him. This Court can, and should exercise plenary review over Binderup's as-applied constitutional challenge. *See United States v. Barton,* 633 F.3d 168, 170 (3d Cir. 2011) (stating that this Court could exercise plenary review over claims alleging that § 922(g)(1) was unconstitutional). Other circuits have heard challenges, both facial and as-applied, to § 922(g)(1) as well. *See e.g., United States v. Pruess*, 703 F.3d 242, 245-46 (4th Cir. 2012); *United States v. Williams*, 616 F.3d 685, 692 (7th Cir. 2010). In *Barton*, this Court invited claimants like Binderup to pursue as-applied challenges to § 922(g)(1), when it recognized that: "*Heller*'s statement regarding the presumptive validity of felon gun dispossession statutes does not foreclose . . . as-applied challenge[s]. By describing the felon disarmament ban as 'presumptively' lawful . . . the Supreme Court implied that the presumption may be rebutted." 633 F.3d at 173.

Furthermore, a holding that *Bean* and *Pontarelli* deprive this Court of jurisdiction to hear Binderup's challenge to § 922(g)(1) would violate the separation of powers doctrine. "[T]he Constitution prohibits one branch from encroaching on the central prerogatives of another." *Miller v. French*, 530 U.S. 327, 341 (2000) (citing *Loving v. United States,* 517 U.S. 748, 757 (1996)). Article III clearly gives the courts power over "all Cases, in Law and Equity, arising under the Constitution, [or] the laws of the United States." U.S. Const. art. III, § 2; *see also Marbury v. Madison*, 5 U.S. 137, 180 (1803) (stating that courts have the power to void laws that are repugnant to the constitution). It has been understood since before the ratification of the Constitution that the courts must have the power to rule on the constitutionality of statutes and should not be robbed of this ability by Congress.

> If it be said that the legislative body are themselves the constitutional judges of their own powers and that the construction they put upon them is conclusive upon the other departments it may be answered that this cannot be the natural presumption where it is not to be collected from any particular provisions in the Constitution.… [T]he courts were designed to be an intermediate body between the people and the legislature in order, among other things, to keep the latter within the limits assigned to their authority. The interpretation of the laws is the proper and peculiar province of the courts. A constitution is, in fact, and must be regarded by the judges as, a fundamental law. It therefore belongs to them to ascertain its meaning as well as the meaning of any particular act proceeding from the legislative body.

THE FEDERALIST No. 78, at 466 (Alexander Hamilton) (Clinton Rossiter ed., 1961).

*Bean* and *Pontarelli* hold that courts do not have jurisdiction to review an agency decision that did not take place under § 925(c), because Congress has not

appropriated funding to make those decisions. If that deprives this Court of jurisdiction to review § 922(g)(1) (a separate statute that Binderup may be prosecuted under), then Congress has encroached on the central prerogative of the judicial branch. Congress cannot deprive courts of judicial review of a statute that is currently in force, by failing to appropriate funding for another. If this were possible, Congress could foreclose judicial review of all our constitutional rights by prohibiting conduct, but granting a procedure for relief, then not funding that procedure, and thus foreclosing judicial review of the denial of a fundamental right.

Finally, to the extent that this Court believes there may be an administrative exhaustion requirement to § 922(g)(1), this Court has held that there are at least three exemptions to such a requirement:

> (1) when the nonjudicial remedy is clearly shown to be inadequate to prevent irreparable injury; (2) when resort to the nonjudicial remedy would 'clearly and unambiguously violate statutory or constitutional rights[]'; and (3) when exhaustion would be futile.

*Republic Industries, Inc. v. Central Pennsylvania Teamsters*, 693 F.2d 290, 293 (3d Cir. 1982) (internal citations omitted).

Most importantly, "exhaustion of administrative remedies has not been required when the administrative procedure itself is alleged to violate a constitutional right." *Babcock & Wilcox Co. v. Marshall*, 610 F.2d 1128, 1138 (3d Cir. 1979). "[T]he Second Amendment conferred an individual right to keep and bear arms." *D.C. v. Heller*, 554 U.S. 570, 595 (2008); *see also McDonald v.*

5

*Chicago*, 561 U.S. 742 (2010). The continued application of § 922(g)(1) against Binderup raises constitutional questions, and violates his Second Amendment rights.

Furthermore, requiring Binderup to apply for relief under § 925(c) would be a futile gesture. *See e.g., United States v. Decastro*, 682 F.3d 160, 164 (2d Cir. 2012) ("Failure to apply for a license would not preclude Decastro's challenge if he made a 'substantial showing' that submitting an application 'would have been futile.'") (quoting *Jackson–Bey v. Hanslmaier,* 115 F.3d 1091, 1096 (2d Cir.1997)). As the ATF will not process § 925(c) applications, there would be no decision for courts to review, and nothing can be gained by applying. That is the epitome of futility. Therefore, to the extent that this Court believes some form of the exhaustion doctrine is applicable Binderup's claims clearly meet the constitutional and futility exemptions.

*Bean* and *Pontarelli* were decided before *Heller* and *McDonald*, which confirmed a core, fundamental, constitutional right. If, it is argued that *Bean* and *Pontarelli* foreclose judicial review of an infringement of that core, fundamental right, then, to that extent, these earlier cases are inapplicable in the aftermath of *Heller* and *McDonald*, insofar as a Second Amendment challenge is concerned.

**II. BINDERUP CHALLENGES § 922(G)(1) AS-APPLIED AND THEREFORE THERE IS NO NEED TO ANALYZE WHETHER THE STATUTE IS FACIALLY VALID.**

This Court asks whether a facially valid statute without a statute of limitations can become unconstitutionally infirm due to the passage of time or change in circumstance. Because Binderup's challenge to § 922(g)(1) is an as-applied challenge, and not a facial challenge, the Court need not examine this question.

Binderup's challenge to § 922(g)(1) is an as-applied challenge. Compl. Prayer for Relief ¶ 2. He is not challenging its "constitutionality based on its text alone [which] does not consider the facts or circumstances of a particular case." *United States v. Marcavage*, 609 F.3d 264, 273 (3d Cir. 2010). Rather Binderup is challenging the statutory provision as-applied to him—a family man with no record of violence, who is a peaceful and productive citizen. "An as-applied attack … does not contend that a law is unconstitutional as written but that its application to a particular person under particular circumstances deprived that person of a constitutional right." *Id*.

Change in precedent can change or negate a statutory scheme's constitutionality. *Bean* and the various circuit court decisions leading up to it (*e.g.*, *Rice v. United States*, 68 F.3d 702 (3d Cir. 1995); *United States v. McGill*, 74 F.3d 64 (5th Cir. 1996)), were decided prior to the Supreme Court's decision in *Heller*. The Court may question whether § 922(g)(1) is facially valid in light of *Heller* and *McDonald*. *See generally* Stefan B. Tahmassebi, *Texas and Federal Firearms Disqualifications, Relief from Disability, and Constitutional Challenges,* Texas Bar

CLE, ch. 8, pp. 18–21 (Sept. 27, 2013) (discussing the constitutionality of provisions like § 922(g)(1) in light of *Heller* and *McDonald*).

> Other courts have also suggested that some nonviolent felons may indeed retain or regain, after a certain number of years, their Second Amendment rights. *See United States v. Abner*, 2009 WL 103172, *1 (M.D. Ala. Jan. 14, 2009); *United States v. Davis*, 2010 U.S. Dist. LEXIS 38750, *4 (W.D. Wis. Apr. 20, 2010); *United States v. McCane*, 573 F.3d 1037, 1049-50 (10th Cir. 2009) (Tymkovich, J., concurring).

*Id.* at 21.

Furthermore, Americans recently have begun to think more critically about the way individuals with criminal records are treated in our society. For example, President Obama, and many states, counties, and cities (including some counties and cities in Pennsylvania) have changed government (and some private) sector employment practices to ban questions about criminal records on employment applications. *See* Press Release, White House, FACT SHEET: President Obama Announces New Actions to Promote Rehabilitation and Reintegration for the Formerly- Incarcerated (Nov. 2, 2015);[2] Michelle Natividad Rodriguez & Beth Avery, *Ban the Box* (April 2016), NELP.[3] The DOJ Office of Justice Programs has also recently announced that it will change the way they refer to felons "[i]n an effort to solidify principles of individual redemption and second chances that our society stands for[.]" Karol

---

[2] *available at* https://www.whitehouse.gov/the-press-office/2015/11/02/fact-sheet-president-obama-announces-new-actions-promote-rehabilitation.
[3] *available at* http://www.nelp.org/content/uploads/Ban-the-Box-Fair-Chance-State-and-Local-Guide.pdf.

8

Mason, Guest Post, *Justice Dept. agency to alter its terminology for released convicts, to ease reentry*, WASH. POST, May 4, 2016.[4] It is no secret that the collateral consequences that accompany convictions have become an immense problem in the United States. *See The ABA National Inventory of Collateral Consequences of Conviction*,[5] (collecting articles, resources, and studies). Given the changes in society and the historical underpinnings of § 922(g)(1) there appears to be no basis to continually deprive individuals of their constitutional rights after they have proven over the course of time that they are no more dangerous than a law-abiding citizen.

Nevertheless, Binderup has not requested that the Court decide whether the statute as applied to non-violent felons as a group is facially invalid, or requires some sort of limitations period. Therefore, the Court need not reach this question.

Rather, Binderup is arguing that as applied to him—a family man with no felony convictions who has been an upstanding citizen—this statute is unconstitutional. This is the exact type of challenge this Court invited in its decision in *Barton*, when it recognized the fact that the presumptive validity of the felon in possession statutes necessarily implies that the presumption can be rebutted by individuals like Binderup. *See* 633 F.3d at 173. To the extent that this Court should

---

[4] *available at* https://www.washingtonpost.com/news/true-crime/wp/2016/05/04/guest-post-justice-dept-to-alter-its-terminology-for-released-convicts-to-ease-reentry/.
[5] *available at* http://www.abacollateralconsequences.org/*resources/*.

9

consider the passage of time, it does make the continuing prohibition against Binderup's possession of a firearm constitutionally suspect. *See e.g.*, *Binderup v. Holder*, No. 13-CV-06750, 2014 WL 4764424, at *27-31 (E.D. Pa. Sept. 25, 2014) (Recidivism rates decrease with the convict's age, and the passage of time.).

Under any level of scrutiny the government's interest in maintaining the prohibition diminishes every day that Binderup leads an exemplary life, continues to abide by the law, and prove that he is no more dangerous than a typical law-abiding citizen who maintains the individual right guaranteed by the Second Amendment. *United States v. Barton,* 633 F.3d 168, 174 (3d Cir. 2011).

## CONCLUSION

This Court has subject matter jurisdiction over Binderup's claims. The prohibition of § 922(g)(1) is unconstitutional as applied to Binderup.

Respectfully Submitted,

s/ Stefan B. Tahmassebi
Stefan B. Tahmassebi
NATIONAL RIFLE ASSOCIATION OF AMERICA
11250 Waples Mill Road
Fairfax, Virginia  22030
(703) 267-1259
stahmassebi@nrahq.org
Counsel for *Amicus Curiae*

# CERTIFICATE OF COMPLIANCE

1. I certify that I am an attorney in good standing of the bar of the Third Circuit.

2. This brief complies with the type-volume limitation of 10 pages as required by the Court's letter dated May 9, 2016, excluding the parts of the brief exempted under Fed. R. App. P. 32(a)(7)(B)(iii).

3. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionately spaced typeface using Microsoft Office Word 2013 in 14-point Times New Roman font.

4. Per the letter of the Court dated May 9, 2016, no paper copies are required. To the extent paper copies are later required, they will comply with 3d Cir. L.A.R. 31.1(c) because the text of the electronic brief will be identical to the text in any required paper copies.

5. Pursuant to 3d Cir. L.A.R. 31.1(c), this file was scanned for viruses using Trend Micro Office Scan Agent version 11 and was found to be virus-free.

Dated: May 17, 2016

s/ Stefan B. Tahmassebi  
Stefan B. Tahmassebi

# CERTIFICATE OF SERVICE

On this, the 17th day of May, 2016, I electronically filed the attached Brief with the Clerk of the Court for the United States Court of Appeals for the Third Circuit by using the CM/ECF system. Participants in this appeal are registered CM/ECF users who will be served by the CM/ECF system on May 17, 2016.

Dated: May 17, 2016

                                                  s/ Stefan B. Tahmassebi  
                                                  Stefan B. Tahmassebi