**IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT**

Nos. 15-1975 & 15-1976

JULIO SUAREZ,

v.

ATTORNEY GENERAL OF THE UNITED STATES, et al.,

Appellants/Cross-Appellees.

On Appeal from the United States District Court for the
Middle District of Pennsylvania (No. 14-cv-968) (Caldwell, J.)

Nos. 14-4549 & 14-4550

DANIEL BINDERUP,

v.

ATTORNEY GENERAL OF THE UNITED STATES, et al.,

Appellants/Cross-Appellees.

On Appeal from the United States District Court for the
Eastern District of Pennsylvania (No. 13-cv-6750) (Gardner, J.)

**SUPPLEMENTAL BRIEF FOR THE APPELLANTS**

BENJAMIN C. MIZER
  *Principal Deputy Assistant
  Attorney General*

MARK B. STERN
MICHAEL S. RAAB
PATRICK G. NEMEROFF
  *(202) 305-8727
  Attorneys, Appellate Staff
  Civil Division, Room 7217
  U.S. Department of Justice
  950 Pennsylvania Ave., N.W.
  Washington, D.C. 20530*

# TABLE OF CONTENTS

| | | Page(s): |
|---|---|---|
| INTRODUCTION | | 1 |
| DISCUSSION | | 3 |
| I. | Section 925(c) Does Not Deprive This Court of Subject Matter Jurisdiction over Plaintiffs' Challenges | 3 |
| II. | Neither the Passage of Time Nor Any Change in Circumstances Has Rendered Application of Section 922(g)(1) Unconstitutional | 6 |
| CONCLUSION | | 10 |
| REQUIRED CERTIFICATIONS | | |
| CERTIFICATE OF SERVICE | | |

# TABLE OF AUTHORITIES

**Cases:** **Page(s)**

*Arbaugh v. Y&H Corp.*,
　546 U.S. 500 (2006) ...................................................................................................5

*Beecham v. United States*,
　511 U.S. 368 (1994) .................................................................................................10

*De Veau v. Braisted*,
　363 U.S. 144 (1960) ...................................................................................................7

*District of Columbia v. Heller*,
　554 U.S. 570 (2008) ...................................................................................................8

*Doe v. Moore*,
　410 F.3d 1337 (11th Cir. 2005) ..................................................................................7

*Doe v. Tandeske*,
　361 F.3d 594 (9th Cir. 2004) ......................................................................................7

*EPA v. EME Homer City Generation, L.P.*,
　134 S. Ct. 1584 (2014) ................................................................................................5

*Hawker v. New York*,
　170 U.S. 189 (1898) ...................................................................................................7

*In re D.E. v. Central Dauphin Sch. Dist.*,
　765 F.3d 260 (3d Cir. 2014) .......................................................................................5

*Johnson v. Florida*,
　405 F.3d 1214 (11th Cir. 2005) ..................................................................................7

*Pontarelli v. U.S. Dep't of Treasury*,
　285 F.3d 216 (3d Cir. 2002) ...........................................................................1, 2, 5, 9

*Richardson v. Ramirez*,
　418 U.S. 24 (1974) .....................................................................................................7

*Simmons v. Galvin*,
   575 F.3d 24 (1st Cir. 2009) ............................................................................ 6, 7

*Smith v. Doe*,
   538 U.S. 84 (2003) ............................................................................................ 7

*United States v. Bean*,
   537 U.S. 71 (2002) ........................................................................... 1, 2, 3, 4, 9

*United States v. Bena*,
   664 F.3d 1180 (8th Cir. 2011) ........................................................................... 8

*United States v. Carpio-Leon*,
   701 F.3d 974 (4th Cir. 2012) ............................................................................. 8

*United States v. Chapman*,
   666 F.3d 220 (4th Cir. 2012) ............................................................................. 9

*United States v. Chovan*,
   735 F.3d 1127 (9th Cir. 2013) ........................................................................... 9

*United States v. Leuschen*,
   395 F.3d 155 (3d Cir. 2005) ............................................................................ 10

*United States v. Rene E.*,
   583 F.3d 8 (1st Cir. 2009) ................................................................................. 8

*United States v. Rozier*,
   598 F.3d 768 (11th Cir. 2010) ........................................................................... 8

*United States v. Skoien*,
   614 F.3d 638 (7th Cir. 2010) ............................................................................. 9

*United States v. Torres-Rosario*,
   658 F.3d 110 (1st Cir. 2011) ............................................................................ 10

*United States v. Vongxay*,
   594 F.3d 1111 (9th Cir. 2010) ........................................................................... 8

*United States v. Yancey*,
   621 F.3d 681 (7th Cir. 2010) ......................................................................................8

## Constitutions:

Del. Const. art. 5, § 2 ......................................................................................................6

Ky. Const. § 145(1) .........................................................................................................6

Miss. Const. art. 12, § 241 ..............................................................................................6

## Statutes:

Treasury, Postal Service, and General Government Appropriations Act, 1993,
   Pub. L. No. 102-393, 106 Stat. 1729 (1992) ...........................................................3

12 U.S.C. § 1818(e) ........................................................................................................7

12 U.S.C. § 1818(g)(1)(C)(ii) .........................................................................................7

18 U.S.C. § 592 ...............................................................................................................7

18 U.S.C. § 593 ...............................................................................................................7

18 U.S.C. § 921(a)(20) ............................................................................................. 1, 6

18 U.S.C. § 921(a)(20)(B) ...........................................................................................10

18 U.S.C. § 922(g)(1) ............................................................................................ 1, 2, 6

18 U.S.C. § 925(c) .................................................................................................. 1, 3, 4

18 U.S.C. § 1901 ............................................................................................................7

18 U.S.C. § 2071 ............................................................................................................7

18 U.S.C. § 2381 ............................................................................................................7

22 U.S.C. § 2778(g)(4) ..................................................................................................7

28 U.S.C. § 1865(b)(5) ............................................................................................. 6

49 U.S.C. § 31310(c) ................................................................................................ 7

Ala. Code § 15-22-36.1(g) ........................................................................................ 6

Ala. Code § 17-3-33 .................................................................................................. 6

Ariz. Rev. Stat. Ann. § 16-101(1)(5) ........................................................................ 6

Md. Code Ann. Crim. Law § 4-203 .......................................................................... 1

Nev. Rev. Stat. Ann. § 213.157(2) ............................................................................ 6

18 Pa. Stat. Ann. § 6301 ............................................................................................ 1

42 Pa. Stat. Ann § 4502(a)(3) (2001) ...................................................................... 10

Tenn. Code. Ann. § 40-29-204 .................................................................................. 6

**Legislative Materials:**

H.R. Rep. No. 104-183 (1995) ................................................................................. 4

S. Rep. No. 102-353 (1992) .................................................................................. 4, 9

**Other Authority:**

National Inst. of Corrs./Wash. Coll. of Law, *Fifty State Survey of Adult Sex Offender Registration Requirements* (2009), http://www.csom.org/pubs/50%20state%20survey%20adult%20registries.pdf ............................................. 7

# INTRODUCTION

Pursuant to this Court's order of May 9, 2016, appellants respectfully submit this supplemental brief.

Plaintiffs challenge the constitutionality of 18 U.S.C. § 922(g)(1), which prohibits the possession of firearms by persons convicted of serious crimes. Daniel Binderup is subject to section 922(g)(1) because he was convicted under Pennsylvania law of corruption of a minor, which is punishable by up to five years' imprisonment. *See* 18 Pa. Stat. Ann. § 6301. Julio Suarez is subject to section 922(g)(1) because he was convicted under Maryland law of unlawfully carrying a handgun without a license, which is punishable by up to three years' imprisonment. *See* Md. Code Ann. Crim. Law § 4-203. Neither plaintiff qualifies for restoration of his federal firearms rights under 18 U.S.C. § 921(a)(20), because neither has had his conviction expunged, been pardoned, or otherwise had his civil rights fully restored by the state in which he was convicted.

This Court requested supplemental briefing to address two questions:

(1) Whether 18 U.S.C. § 925(c), the Supreme Court's precedent in *U.S. v. Bean*, 537 U.S. 71 (2002), and this Court's precedent in *Pontarelli v. U.S. Dep't of Treasury*, 285 F.3d 216 (3d Cir. 2002), deprive this Court of subject matter jurisdiction over this appeal. Does the ruling in *Bean/Pontrarelli* apply when the felon bypasses application to ATF under 18 U.S.C. § 925(c) and seeks the same relief from the District Court?

(2) At what time does a facially valid statute without a statute of limitations or time limit, as enacted by Congress, become unconstitutionally infirm due to the passage of time or change in circumstances?

As set forth below, section 925(c) does not deprive this Court of subject matter jurisdiction over plaintiffs' challenges. Congress has long barred the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) from considering section 925(c) applications. *See United States v. Bean*, 537 U.S. 71 (2002); *Pontarelli v. U.S. Dep't of Treasury*, 285 F.3d 216 (3d Cir. 2002) (en banc). To the extent an individual otherwise would be required to seek relief under section 925(c) before bringing an as-applied constitutional challenge to section 922(g)(1), that requirement is not jurisdictional and should be excused for futility.

Section 922(g)(1) prohibits the possession of firearms as a consequence for the conviction of a serious crime, and Congress has limited the restoration of federal firearms rights to individuals who have had their civil rights fully restored by the state in which they were convicted. In this respect, section 922(g)(1) resembles other laws that impose consequences for conviction of serious crimes, including restrictions on the right to vote, serve on a jury, serve in public office, or participate in particular professions. Like other civic rights, the right to possess firearms has traditionally been reserved to law-abiding, responsible citizens, and it is appropriately subject to categorical exclusion of individuals convicted of serious crimes. The Second Amendment does not require individualized ad hoc determination of dangerousness as a prerequisite for the ongoing application of section 922(g)(1).

# DISCUSSION

I. **Section 925(c) Does Not Deprive This Court of Subject Matter Jurisdiction over Plaintiffs' Challenges.**

In 18 U.S.C. § 925(c), Congress permitted individuals prohibited from possessing firearms by section 922(g)(1) to apply for relief from that disability. Authority to review such applications was delegated to the Director of ATF, who was authorized to "grant such relief if it is established to his satisfaction that the circumstances regarding the disability, and the applicant's record and reputation, are such that the applicant will not be likely to act in a manner dangerous to public safety and that the granting of the relief would not be contrary to the public interest." 18 U.S.C. § 925(c). If an application was denied, the applicant was permitted to petition a district court for judicial review, *id.*, subject to the Administrative Procedure Act's deferential arbitrary and capricious standard of review, *see United States v. Bean*, 537 U.S. 71, 77 (2002).

In a 1992 annual appropriations statute, Congress provided that "none of the funds appropriated herein shall be available to investigate or act upon applications for relief from Federal firearms disabilities under 18 U.S.C. 925(c)." Treasury, Postal Service, and General Government Appropriations Act, 1993, Pub. L. No. 102-393, 106 Stat. 1729, 1732 (1992). Congress has retained that bar on the use of appropriated funds in each subsequent year, and relief subject to section 925(c) is thus no longer available.

Congress imposed the appropriations bar after concluding that "whether or not [an] applicant is still a danger to public safety . . . . is a very difficult and subjective task which could have devastating consequences for innocent citizens if the wrong decision is made." S. Rep. No. 102-353, at 19 (1992). Observing that ATF spent "approximately 40 man-years . . . annually to investigate and act upon these investigations and applications," Congress concluded that those resources "would be better utilized to crack down on violent crime." *Id.* at 20. A later House Report noted "that too many of these felons whose gun ownership rights were restored went on to commit violent crimes with firearms. There is no reason to spend the Government's time or taxpayer's money to restore a convicted felon's right to own a firearm." H.R. Rep. No. 104-183, at 15 (1995).

In *Bean*, the Supreme Court held that individuals cannot obtain judicial review of a section 925(c) application after ATF fails to act on the application due to the appropriations bar. The Court explained that "[i]naction by ATF does not amount to a 'denial' within the meaning of § 925(c)," and "an actual decision by ATF on an application is a prerequisite for judicial review." 537 U.S. at 75-76. It further noted that "[w]hether an applicant is 'likely to act in a manner dangerous to public safety' presupposes an inquiry into that applicant's background—a function best performed by the Executive, which, unlike courts, is institutionally equipped for conducting a neutral, wide-ranging investigation." *Id.* at 77. It concluded that section 925(c) calls for an "inherently policy-based decision best left in the hands of an agency." *Id.*

4

Before the Supreme Court issued its decision in *Bean*, this Court reached the same conclusion in *Pontarelli v. U.S. Dep't of Treasury*, 285 F.3d 216 (3d Cir. 2002) (en banc). This Court warned that "courts possess neither the resources to conduct the requisite investigations nor the expertise to predict accurately which felons may carry guns without threatening the public's safety." *Id.* at 231. Because courts "are without the tools necessary to conduct a systematic inquiry into an applicant's background . . . they would be forced to rely primarily—if not exclusively—on information provided by the felon," and, "[a]s few felons would volunteer adverse information, the inquiry would be dangerously one-sided." *Id.* (citation and quotation marks omitted)

In these circumstances, where Congress has eliminated any possibility for relief under section 925(c), that provision does not deprive this Court of subject matter jurisdiction over plaintiffs' challenge. To the extent that section 925(c) would require a plaintiff to apply for administrative relief before seeking judicial review of an as-applied constitutional challenge to section 922(g), that requirement is not jurisdictional. *See EPA v. EME Homer City Generation, L.P.*, 134 S. Ct. 1584, 1602-03 (2014); *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 510-16 (2006). And because Congress has foreclosed relief under section 925(c), any prudential exhaustion requirement should be excused for futility. *Cf. In re D.E. v. Central Dauphin Sch. Dist.*, 765 F.3d 260, 276 (3d Cir. 2014) (excusing failure to exhaust where "administrative exhaustion . . . is futile and barred by the express language of the statute").

## II. Neither the Passage of Time Nor Any Change in Circumstances Has Rendered Application of Section 922(g)(1) Unconstitutional.

An individual subject to 18 U.S.C. § 922(g)(1) remains prohibited from possessing firearms until his conviction "has been expunged, or set aside," or the "person has been pardoned or has had civil rights restored . . . unless such pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms." 18 U.S.C. § 921(a)(20).

Federal and state statutes that impose consequences on individuals convicted of serious crimes often specify no time limitation, and courts have rejected constitutional challenges to these disabilities. Federal law disqualifies from federal jury service any individual convicted of a crime punishable by imprisonment for more than one year, as long as "his civil rights have not been restored." 28 U.S.C. § 1865(b)(5). Many states disqualify individuals convicted of serious crimes from the right to vote, and some states significantly restrict the restoration of that right,[1] but such laws have been deemed "presumptively constitutional." *Simmons v. Galvin*, 575

---

[1] *See, e.g.*, Ala. Code §§ 17-3-33, 15-22-36.1(g) (requiring a pardon for certain crimes before restoration of voting rights); Ariz. Rev. Stat. Ann. § 16-101(1)(5) (requiring that individual be "restored to civil rights"); Del. Const. art. 5, § 2 (identifying crimes that are permanently disqualifying); Ky. Const. § 145(1) (permanently disqualifying all felons, unless "restored to their civil rights by executive pardon"); Miss. Const. art. 12, § 241 (identifying crimes that are permanently disqualifying); Nev. Rev. Stat. Ann. § 213.157(2) (requiring individual convicted of certain crimes to petition for restoration of voting rights); Tenn. Code. Ann. § 40-29-204 (imposing lifetime disability on individuals convicted of certain crimes).

F.3d 24, 32 (1st Cir. 2009) (citing *Richardson v. Ramirez*, 418 U.S. 24, 54-55 (1974)); *see also, e.g.*, *Johnson v. State of Florida*, 405 F.3d 1214, 1217 (11th Cir. 2005) ("A state's decision to permanently disenfranchise convicted felons does not, in itself, constitute an Equal Protection violation."). Various federal statutes bar individuals convicted of certain crimes from ever holding federal office, *see* 18 U.S.C. §§ 592, 593, 1901, 2071, 2381, and impose other occupational bars on individuals based on convictions, *see* 12 U.S.C. § 1818(e), (g)(1)(C)(ii) (insured depository institutions); 22 U.S.C. § 2778(g)(4) (arms exporters); 49 U.S.C. § 31310(c) (commercial motor vehicle operators). In rejecting a constitutional challenge to a New York statute that "barr[ed] convicted felons from waterfront union office, unless they are pardoned, or receive a 'good conduct' certificate," the Supreme Court observed that "[b]arring convicted felons from certain employments is a familiar legislative device." *De Veau v. Braisted*, 363 U.S. 144, 158-59 (1960); *see also Hawker v. New York*, 170 U.S. 189, 194 (1898). Many states impose lifetime registration requirements and other restrictions on specified categories of sex offenders,[2] and courts of appeals have rejected challenges to such laws, *see Doe v. Moore*, 410 F.3d 1337, 1347 (11th Cir. 2005); *Doe v. Tandeske*, 361 F.3d 594, 596-97 (9th Cir. 2004); *see also Smith v. Doe*, 538 U.S. 84 (2003) (rejecting Ex Post Facto Clause challenge to sex-offender registration law).

---

[2] *See* Nat'l Inst. Of Corrs./Wash. Coll. Of Law, *Fifth State Survey of Adult Sex Offender Registration Requirements* (2009), http://www.csom.org/pubs/50%20state%20survey%20adult%20registries.pdf.

Like the right to vote, serve on a jury, or hold public office, the right to possess firearms is a civic right that is appropriately subject to categorical exclusion as a result of conviction. *See United States v. Carpio-Leon*, 701 F.3d 974, 979-80 (4th Cir. 2012) (describing historical understanding of "right to bear arms" as "tied to the concept of a virtuous citizenry," such that "the government could disarm 'unvirtuous citizens'" (quoting *United States v. Yancey*, 621 F.3d 681, 684-85 (7th Cir. 2010)); *United States v. Bena*, 664 F.3d 1180, 1183-84 (8th Cir. 2011) (same); *United States v. Rene E.*, 583 F.3d 8, 15-16 (1st Cir. 2009) (describing "longstanding practice of prohibiting certain classes of individuals from possessing firearms")). The Supreme Court in *District of Columbia v. Heller*, 554 U.S. 570 (2008), thus restricted its holding to "the right of law-abiding, responsible citizens to use arms in defense of hearth and home," *id.* at 635, and cautioned that "nothing in [its] opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons," *id.* at 626.

Courts of appeals have recognized that "felons are categorically different from the individuals who have a fundamental right to bear arms." *United States v. Vongxay*, 594 F.3d 1111, 1115 (9th Cir. 2010); *see United States v. Rozier*, 598 F.3d 768, 771 (11th Cir. 2010) (per curiam) (*Heller* "suggests that statutes disqualifying felons from possessing a firearm under any and all circumstances do not offend the Second Amendment."). They have therefore held that Congress may "permissibly create[] a broad statute that only excepts those individuals with expunged, pardoned, or set aside convictions and those individuals who have had their civil rights restored."

8

*United States v. Chovan*, 735 F.3d 1127, 1142 (9th Cir. 2013); *see also United States v. Skoien*, 614 F.3d 638, 641 (7th Cir. 2010) (en banc) ("Congress is not limited to case-by-case exclusions of persons who have been shown to be untrustworthy with weapons, nor need these limits be established by evidence presented in court."); *United States v. Chapman*, 666 F.3d 220, 231 (4th Cir. 2012) (concluding that, although "the prohibitory net cast by [a law] may be somewhat over-inclusive given that not every person who falls [within] it would misuse a firearm," that "does not undermine the constitutionality of [the statute] . . . because it merely suggests that the fit is not a perfect one; a reasonable fit is all that is required under intermediate scrutiny").

Plaintiffs cite no historical precedent in support of their claim that the Second Amendment entitles them to an ad hoc individualized judicial determination of dangerousness as a prerequisite for section 922(g)(1)'s ongoing application to them. And their request for a judicial determination of harmlessness also disregards this Court's admonition that "courts possess neither the resources to conduct the requisite investigations nor the expertise to predict accurately which felons may carry guns without threatening the public's safety." *Pontarelli*, 285 F.3d at 231. Congress barred section 925(c) applications precisely because it concluded that determining "whether or not [an] applicant is still a danger to public safety . . . . is a very difficult and subjective task which could have devastating consequences for innocent citizens if the wrong decision is made." S. Rep. No. 102-353, at 19 (1992); *see also Bean*, 537 U.S. at 77 (describing section 925(c) as an "inherently policy-based decision"). Moreover,

plaintiffs' requested approach, "applied to countless variations in individual circumstances, would obviously present serious problems of administration, consistency and fair warning." *United States v. Torres-Rosario*, 658 F.3d 110, 113 (1st Cir. 2011).

In 18 U.S.C. § 921(a)(20)(B), Congress appropriately deferred to states' judgments of trustworthiness, by permitting individuals convicted of serious crimes to regain their federal firearms rights only if they have had their crime expunged, been pardoned, or otherwise had their civil rights fully restored by their state of conviction. Pennsylvania has chosen not to restore plaintiffs' right to serve on a jury, *see* 42 Pa. Stat. Ann § 4502(a)(3) (2001), and plaintiffs therefore are not eligible to regain their federal firearms rights, *see United States v. Leuschen*, 395 F.3d 155, 159 (3d Cir. 2005).[3] That result reflects Congress's reasonable conclusion that an individual who is insufficiently trustworthy to serve on a jury also should not be entrusted with a gun.

## CONCLUSION

For the foregoing reasons and the reasons discussed in our prior briefs, the judgment of the district courts should be reversed.

---

[3] Moreover, while certain of Julio Suarez's civil rights have been restored by Pennsylvania, Suarez does not claim any of his civil rights have been restored by Maryland, the state in which he was convicted. *See Beecham v. United States*, 511 U.S. 368, 371 (1994) (the section 921(a)(20) "determination is governed by the law of the convicting jurisdiction").

Respectfully submitted,

BENJAMIN C. MIZER
   *Principal Deputy Assistant*
   *Attorney General*

MARK B. STERN
MICHAEL S. RAAB
PATRICK G. NEMEROFF
   *(202) 305-8727*
   *Attorneys, Appellate Staff*
   *Civil Division, Room 7217*
   *U.S. Department of Justice*
   *950 Pennsylvania Ave., N.W.*
   *Washington, D.C. 20530*

MAY 2016

# REQUIRED CERTIFICATIONS

I hereby certify that this brief complies with the requirements of Fed. R. App. P. 32(a)(5) and (6) because it has been prepared in 14-point Garamond, a proportionally spaced font. I further certify to the following:

As counsel for the federal government, I am not required to be a member of the bar of this Court.

The text of the electronic brief is identical to the text in the paper copies.

The electronic brief has been scanned for viruses and found to be virus free.

/s/ *Patrick G. Nemeroff*
Patrick G. Nemeroff

# CERTIFICATE OF SERVICE

I hereby certify that on May 19, 2016, I electronically filed the foregoing brief with the Clerk of this Court by using the appellate CM/ECF system. The participants in the case are registered CM/ECF users and service will be accomplished by the appellate CM/ECF system.

/s/ *Patrick G. Nemeroff*
Patrick G. Nemeroff